*Kershnar v. Kolison*
Motion for Preliminary Injunction

Decl. Adam Steinbaugh

# EXHIBIT 1



State University of New York

# Policies of the

# Board of Trustees

**April 2023**

# State University of New York

**Dr. Merryl H. Tisch**
Chairman

**Dr. John B. King Jr.**
Chancellor

**Jennifer Mero**
Secretary of the Board of Trustees

A full listing of Members of the Board of Trustees and Chancellor's Cabinet is available at
www.suny.edu

Information regarding Policies of the Board of Trustees is available at:

The State University of New York
H. Carl McCall SUNY Building
Office of the Secretary and the Board of Trustees
Albany, New York 12246
518-320-1157
trustees@suny.edu

## Table of Contents

ARTICLE I: CONSTRUCTION AND APPLICATION ............................................................................................... 11
   §1. Construction ......................................................................................................................................... 11
   §2. Application ........................................................................................................................................... 11
ARTICLE II: DEFINITIONS .............................................................................................................................. 11
   §1. Terms ................................................................................................................................................... 11
ARTICLE III: [RESERVED] ............................................................................................................................... 12
ARTICLE IV: UNIVERSITY OFFICERS ............................................................................................................... 12
   TITLE A. CHANCELLOR ................................................................................................................................ 12
      §1. Appointment ..................................................................................................................................... 12
      §2. Chief Executive Officer ....................................................................................................................... 12
      §3. Assignment of Powers and Duties ..................................................................................................... 13
      §4. Committees. ....................................................................................................................................... 13
      §5. Annual Report. ................................................................................................................................... 13
   TITLE B. SECRETARY OF THE STATE UNIVERSITY ........................................................................................ 13
      §1. Appointment. ..................................................................................................................................... 13
      §2. Responsibilities. .................................................................................................................................. 13
   TITLE C. OTHER SENIOR OFFICERS ............................................................................................................. 13
      §1. Appointment. ..................................................................................................................................... 13
      §2. Responsibilities. .................................................................................................................................. 13
   TITLE D.  OTHER OFFICERS AND PROFESSIONAL STAFF ............................................................................. 13
      §1. Designation. ....................................................................................................................................... 13
      §2. Appointment. ..................................................................................................................................... 14
      §3. Responsibilities. .................................................................................................................................. 14
      §4. Appointment of other Professional Staff. .......................................................................................... 14
ARTICLE V: [RESERVED] ................................................................................................................................ 14
ARTICLE VI: UNIVERSITY FACULTY ................................................................................................................ 14
      §1. Composition. ...................................................................................................................................... 14
      §2. Voting Faculty. .................................................................................................................................... 14
      §3. Responsibilities. .................................................................................................................................. 14
ARTICLE VII: UNIVERSITY FACULTY SENATE .................................................................................................. 14
   TITLE A. ESTABLISHMENT AND PURPOSES .................................................................................................. 14
      §1. Name. ................................................................................................................................................. 14
      §2. Purposes. ............................................................................................................................................ 14

TITLE B. MEMBERSHIP ................................................................................................... 15

&sect;1. Composition. ........................................................................................................ 15

&sect;2. Election and Appointment. .................................................................................. 15

&sect;3. Terms. .................................................................................................................. 15

&sect;4. Reelection ............................................................................................................ 15

&sect;5. Vacancies. ............................................................................................................ 15

TITLE C. OFFICERS ........................................................................................................... 15

&sect;1. President of the Senate. ....................................................................................... 15

&sect;2. Vice-President/Secretary. .................................................................................... 16

&sect;3. Vacancies. ............................................................................................................ 16

TITLE D. ORGANIZATION ................................................................................................. 16

&sect;1. Meetings .............................................................................................................. 16

&sect;2. Committees ......................................................................................................... 16

TITLE E. BYLAWS ............................................................................................................. 16

&sect;1. Adoption. ............................................................................................................. 16

TITLE F. AMENDMENTS ................................................................................................... 16

&sect;1. Procedure. ............................................................................................................ 16

ARTICLE VIII: COUNCILS ....................................................................................................... 17

&sect;1. Establishment. ..................................................................................................... 17

&sect;2. Responsibilities. ................................................................................................... 17

&sect;3. Attendance of Faculty and Alumni. ..................................................................... 17

ARTICLE IX: COLLEGE OFFICERS AND ORGANIZATIONS ...................................................... 17

TITLE A. CHIEF ADMINISTRATIVE OFFICER ..................................................................... 17

&sect;1. Appointment ....................................................................................................... 17

&sect;2. Responsibilities. ................................................................................................... 17

&sect;3. Handbook. ........................................................................................................... 18

&sect;4. Annual Reports. ................................................................................................... 18

TITLE B. COLLEGE ADMINSTRATIVE OFFICERS ............................................................... 18

&sect;1. Designation. ......................................................................................................... 18

&sect;2. Appointment. ...................................................................................................... 18

&sect;3. Acting Appointments. .......................................................................................... 18

&sect;4. Service. ................................................................................................................ 18

&sect;5. Responsibilities. ................................................................................................... 18

TITLE C. CHAIRS OF DEPARTMENTS AND DIVISIONS ....................................................... 18

§1. Designation...................................................................................................................................... 18

§2. Terms............................................................................................................................................... 18

§3. Termination of Appointment as Chair .......................................................................................... 19

§4. Responsibilities............................................................................................................................... 19

TITLE D. COLLEGE ADMINISTRATIVE ORGANIZATION ................................................................. 19

§1. Plan.................................................................................................................................................. 19

TITLE E. COLLEGE ADMINISTRATIVE CONFERENCE ...................................................................... 19

§1. Composition..................................................................................................................................... 19

§2. Purpose. .......................................................................................................................................... 19

§3. Meetings.......................................................................................................................................... 19

ARTICLE X: COLLEGE FACULTY ............................................................................................................ 19

§1. Composition..................................................................................................................................... 19

§2. Chair and Presiding Officer........................................................................................................... 19

§3. Voting Faculty................................................................................................................................. 20

§4.  Responsibility. ............................................................................................................................... 20

§5. Bylaws.............................................................................................................................................. 20

ARTICLE XI: APPOINTMENT OF EMPLOYEES .................................................................................... 20

TITLE A. PROCEDURE .......................................................................................................................... 20

§1. Procedure......................................................................................................................................... 20

TITLE B. CONTINUING APPOINTMENT ............................................................................................. 21

§1. Definition......................................................................................................................................... 21

§2. Method of Appointment ................................................................................................................ 21

§3. Eligibility. ....................................................................................................................................... 21

TITLE C. PERMANENT APPOINTMENT .............................................................................................. 22

§1. Definition......................................................................................................................................... 22

§2. Method of Appointment. ............................................................................................................... 22

§3. Initial Appointment. ...................................................................................................................... 23

§4. Eligibility for Initial Permanent Appointment. .......................................................................... 23

§5. Change in Professional Title.......................................................................................................... 24

TITLE D. TERM APPOINTMENT ......................................................................................................... 25

§1. Definition......................................................................................................................................... 25

§2. Eligibility. ....................................................................................................................................... 25

§3. Method of Appointment. ............................................................................................................... 25

§4. Renewal of Term. ........................................................................................................................... 25

§5. Notice. ................................................................................................................... 25

§6. Other Appointments. ............................................................................................ 26

§7. Service Not Credited. ........................................................................................... 31

Title E. Probationary Appointment ............................................................................... 31

§1. Definition. ............................................................................................................ 31

§2. Method of Appointment. ..................................................................................... 31

Title F. Temporary Appointment ................................................................................... 31

§1. Definition. ............................................................................................................ 31

§2. Eligibility. ............................................................................................................. 32

§3. Method of Appointment. ..................................................................................... 32

Title G. Distinguished and University Professors and Distinguished Librarians ............ 32

§1. Appointment. ....................................................................................................... 32

Title H. Appointment Year ............................................................................................. 32

§1. Term of Obligation. .............................................................................................. 32

§2. Professional Obligation ........................................................................................ 32

§3. Appointment Year. ............................................................................................... 32

§4. Other Employment. .............................................................................................. 32

Title I. Academic Freedom ............................................................................................. 32

§1. Academic Freedom. .............................................................................................. 32

Title J. Patents, Inventions, and Copyright Policy ......................................................... 33

§1. Patents and Inventions Policy. ............................................................................. 33

§2. Copyright Policy .................................................................................................... 37

APPENDIX A TO ARTICLE XI PROFESSIONAL TITLES ......................................................... 38

APPENDIX B TO ARTICLE XI ATHLETIC TITLES .................................................................. 39

APPENDIX C TO ARTICLE XI FUNDRAISING TITLES ........................................................... 39

ARTICLE XII: EVALUATION AND PROMOTION OF ACADEMIC AND PROFESSIONAL EMPLOYEES ........................ 39

Title A. Evaluation of Academic Employees ................................................................... 40

§1. Policy. ................................................................................................................... 40

§2. Purpose. ............................................................................................................... 40

§3. Applicability. ........................................................................................................ 40

§4. Criteria. ................................................................................................................ 40

Title B. Promotion of Academic Employees ................................................................... 40

§1. Procedure. ............................................................................................................ 40

§2. Criteria. ................................................................................................................ 41

§3. Length of Service. ................................................................................................................... 41

Title C. Evaluation and Promotion of Professional Employees ............................................................... 41

§1. Policy. ................................................................................................................................... 41

§2. Definitions. ........................................................................................................................... 41

§3. Promotion. ............................................................................................................................ 41

§4. Evaluation. ............................................................................................................................ 42

§5. Criteria. ................................................................................................................................. 42

§6. Action by Chief Administrative Officer. .................................................................................. 43

ARTICLE XIII: LEAVE OF ABSENCE FOR EMPLOYEES IN THE PROFESSIONAL SERVICE .......................... 43

§1. Definitions. ........................................................................................................................... 43

Title A. Vacation Leave: Calendar Year Employees and College Year Employees ................................... 43

§1. Accrual of Vacation Leave. ..................................................................................................... 43

§2. Maximum Accumulation. ....................................................................................................... 46

§3. Authorization for Use ............................................................................................................. 46

§4. Charges .................................................................................................................................. 47

Title B. Vacation Leave: Academic Year Employees .............................................................................. 47

§1. Accrual of Vacation Credit. .................................................................................................... 47

Title C. Sick Leave ............................................................................................................................... 47

§1. Accrual. .................................................................................................................................. 47

§2. Other Sick Leave Credits. ....................................................................................................... 49

§3. Maximum Accumulation. ....................................................................................................... 49

§4. Authorization for Use. ............................................................................................................ 49

§5. Additional Sick Leave. ............................................................................................................ 50

§6. Charges. ................................................................................................................................. 51

Title D. Holiday Leave ......................................................................................................................... 51

§1. Holiday Leave. ........................................................................................................................ 51

Title E. Sabbatical Leave ..................................................................................................................... 52

§1. Policy. ................................................................................................................................... 52

§2. Purpose. ................................................................................................................................ 52

§3. Eligibility ............................................................................................................................... 52

§4. Terms and Conditions. ........................................................................................................... 52

§5. Applications. .......................................................................................................................... 52

§6. Approval. ............................................................................................................................... 52

§7. Leave Credits. ........................................................................................................................ 52

Title F. Other Leaves ................................................................................................... 52

   §1. Approval. ............................................................................................................ 52

   §2. Application. ........................................................................................................ 53

   §3. Leave Credits .................................................................................................... 53

Title G. Disability Leave ............................................................................................... 53

   §1. Disability Leave. ................................................................................................ 53

Title H. Study Leaves for the Chancellor and Chief Administrative Officers .............. 54

   §1. Third Year of Service ......................................................................................... 54

   §2. Five Years of Service. ........................................................................................ 55

Title I. Attendance Records ......................................................................................... 55

   §1. Attendance Records ......................................................................................... 55

Title J. Other Absences ................................................................................................ 55

   §1. Unauthorized Absence. .................................................................................... 55

   §2. Absence. ............................................................................................................ 55

Title K. Limitations ...................................................................................................... 55

   §1. Term Appointments. ........................................................................................ 55

ARTICLE XIV: TERMINATIONS OF SERVICE ................................................................. 56

Title A. Termination at Will ......................................................................................... 56

   §1. Temporary Appointments. ............................................................................... 56

Title B. Automatic Termination ................................................................................... 56

   §1. Term Appointments. ........................................................................................ 56

Title C. Termination for Age or for Physical or Mental Incapacity .............................. 56

   §1. Retirement. ....................................................................................................... 56

ARTICLE XV: RETIREMENT .......................................................................................... 56

Title A. Membership in Retirement Systems ............................................................... 56

   §1. Requirement. .................................................................................................... 56

Title B. Voluntary Retirement ...................................................................................... 56

   §1. Notice. ............................................................................................................... 56

Title C. Retirement for Physical or Mental Incapacity ................................................. 56

   §1. Policy. ................................................................................................................ 56

Title D. Privileges after Retirement ............................................................................. 57

   §1. Emeritus Status. ............................................................................................... 57

   §2. Privileges .......................................................................................................... 57

ARTICLE XVI: PLAN FOR THE MANAGEMENT OF CLINICAL PRACTICE INCOME .................. 57

§1. Policy. ................................................................................................................................ 57

§2. Development of Plan. ......................................................................................................... 57

§3. Implementation of Plan. .................................................................................................... 57

§4. Plan Requirements ............................................................................................................. 57

ARTICLE XVII: STUDENT ASSEMBLY ............................................................................................ 62

Title A. Establishment and Purpose ........................................................................................ 62

§1. Name. .................................................................................................................................. 62

§2. Purpose. .............................................................................................................................. 62

Title B. Membership in the Assembly ...................................................................................... 62

§1. Membership ........................................................................................................................ 62

§2. Member Institutions. ......................................................................................................... 62

§3. Representatives from Member Institutions. ...................................................................... 63

§4. Organized Student Groups. ................................................................................................ 63

§5. Eligibility. ............................................................................................................................ 64

§6. Representatives to Act in Person ....................................................................................... 64

Title C. Officers ........................................................................................................................ 64

§1. Officers. ............................................................................................................................... 64

§2. Duties. The duties of the officers shall be as follows ........................................................ 64

§3. Election of Officers. ............................................................................................................ 65

§4. Eligibility to Serve. ............................................................................................................. 65

§5. Terms of Office ................................................................................................................... 65

§6. Officer Vacancies. ............................................................................................................... 65

Title D. Organization ................................................................................................................ 65

§1. Meetings. ............................................................................................................................ 65

§2. Agenda. ............................................................................................................................... 65

§3. Meeting Notification. ......................................................................................................... 66

§4. Executive Committee. ......................................................................................................... 66

§5. Other Committees. .............................................................................................................. 66

§6. Quorums. ............................................................................................................................. 67

§7. Rules of Procedure. ............................................................................................................ 67

Title E. Bylaws of the Student Assembly ................................................................................. 67

§1. Bylaws. ................................................................................................................................ 67

Title F. Amendments ................................................................................................................ 67

§1. Amendments. ...................................................................................................................... 67

ARTICLE XVIII: UNIVERSITY COUNCIL OF PRESIDENTS ........................................................................... 67

    Title A. Establishment and Purpose ........................................................................................... 67

        §1. Name. .................................................................................................................... 67

        §2. Purpose. ............................................................................................................... 67

    Title B. Membership ................................................................................................................ 68

        §1. Composition. ......................................................................................................... 68

        §2. Eligibility. ............................................................................................................. 68

        §3. Selection. .............................................................................................................. 68

        §4. Terms. .................................................................................................................. 68

        Title C. Meetings ..................................................................................................................... 68

        §1. Meetings ............................................................................................................... 68

ARTICLE XIX: APPLICABILITY ....................................................................................................... 68

    Title A. Applicability of Policies of the Board of Trustees to Employees in Negotiating Units ......................... 68

        §1. Applicability ........................................................................................................... 68

*Articles III, V, and VIII were originally reserved by the Board of Trustees to set forth their policies on University Responsibility and Organization; University Conferences and Committees; and Councils, respectively. Article VIII was modified with content by the Board in 1993; articles III and V continue to be reserved.*

# Policies of the Board of Trustees*

## ARTICLE I: CONSTRUCTION AND APPLICATION

§1. Construction. These policies shall constitute rules of the Board of Trustees for the government of the University and the institutions therein regulating the matters contained herein as authorized by law. Nothing in these Policies contained shall be construed to restrict the power of the Board of Trustees from time to time to alter, amend, revise or repeal the provisions hereof in whole or in part.

§2. Application. These policies shall apply only to the State-operated colleges of the University, except where the community or contract colleges are specifically included.

## ARTICLE II: DEFINITIONS

§1. Terms.  As used in these policies, unless otherwise specified, the following terms shall mean:

(a)     "University." State University of New York.

(b)     "Board of Trustees." The Board of Trustees of State University of New York.

(c)     "Chancellor." The Chancellor of State University of New York.

(d)     "College." A State-operated institution of State University of New York.

(e)     "Contract College." A statutory or contract college of State University of New York.

(f)     "Community College." A locally-sponsored, two-year college established under Article 126 of the Education Law.

(g)     "Council." A council for a college as provided for by Section 356 of the Education Law and the Board of Trustees of the State University College of Environmental Science and Forestry, as provided for by Section 6003 of the Education Law.

(h)     "Chief administrative officer." The head of a college or contract college, as the case may be, whether called president, dean, provost, director, or otherwise.

(i)     "Academic staff." The staff comprised of those persons having academic rank or qualified academic rank.

(j)     "Academic rank." Rank held by those members of the professional staff having the titles of professor, associate professor, assistant professor, instructor, and assistant instructor, including geographic full-time faculty members having such titles, and rank, held by members of the professional staff, having the titles of librarian, associate librarian, senior assistant librarian, and assistant librarian. A geographic full-time faculty member is a person serving on the faculty of a medical center who is not employed on a full-time basis

for the purpose of fixing compensation payable by the State but all of whose professional services and activities are conducted at the medical center or its affiliated hospitals and are available to the State on a full-time basis for clinical and instructional purposes.

(k)     "Qualified academic rank." Rank held by those members of the academic staff having titles of lecturer, or titles of academic rank preceded by the designations "clinical" or "visiting", or other similar designations.

(l)     "Professional employee." Professional employees shall mean an employee in the Professional Services Negotiating Unit, other than an employee with academic or qualified academic rank.

(m)     "Academic employee." Academic employee shall mean an employee in the Professional Services Negotiating Unit with academic or qualified academic rank.

(n)     "Professional staff." All persons occupying positions designated by the Chancellor as being in the unclassified service.

(o)     "Professional title." Professional title shall mean the title of a position in the Professional Services Negotiating Unit, other than a position of academic or qualified academic rank, as shown on the budget certificate for the position on file with the State Director of the Budget.

(p)     "Qualified professional title." Qualified professional title shall mean a professional title that is preceded by the designation "special."

*These policies appear in the Official Compilation of Codes, Rules and Regulations of the State of New York as Subchapter b of Chapter V of Volume 8 entitled "Education."*

# ARTICLE III: [RESERVED]

# ARTICLE IV: UNIVERSITY OFFICERS

## TITLE A. CHANCELLOR

### §1. Appointment.

(a)     The Chancellor shall be appointed by the Board of Trustees and shall serve at the pleasure of the Board of Trustees.

(b)     At any time during the period of appointment, the Board of Trustees may evaluate the services of the Chancellor.

(c)     The Chancellor, upon appointment, shall be appointed to the faculty of the University in a position of academic rank with continuing appointment.

### §2. Chief Executive Officer. The Chancellor shall be the chief executive officer of the University. The Chancellor shall execute and enforce these Policies and shall perform such other duties as may be assigned by

the Board of Trustees. The Chancellor shall make all appointments of employees, other than officers, to positions in the central office of the University in the classified service of the civil service of the State.

§3. Assignment of Powers and Duties. The Chancellor may assign to the officers, faculty, and staff of the University powers, duties, and responsibilities, and they shall be responsible to the Chancellor and the Board of Trustees for the performance thereof, as well as for those powers, duties, and responsibilities specifically vested in them by these Policies.

§4. Committees. The Chancellor may establish and appoint such ad hoc University committees as the Chancellor may deem advisable to assist the Chancellor in the development of specific programs and policies in the administration of the University. The Chancellor shall be a member, ex officio, of all such committees.

§5. Annual Report. On or before December first of each year, the Chancellor shall make an annual report to the Board of Trustees for the previous year, concerning the affairs of the University and recommendations with respect thereto.


## TITLE B. SECRETARY OF THE STATE UNIVERSITY

§1. Appointment. The Secretary of the State University shall be appointed by the Board of Trustees and shall serve at its pleasure.

§2. Responsibilities. The Secretary of the State University shall serve as secretary of the Board and its committees, shall keep records of their proceedings, and shall furnish minutes of such proceedings to the members of the Board and its committees, respectively. The Secretary shall be the custodian of the University seal and shall maintain a complete file of all reports of the Board and its committees and perform such other duties as may be assigned by the Board or any of its committees. The Secretary shall perform such other powers and duties and have such other responsibilities, not inconsistent with responsibilities to the Board of Trustees, as may be assigned by the Chancellor.


## TITLE C. OTHER SENIOR OFFICERS

§1. Appointment. In addition to the Chancellor and Secretary, the Senior Officers at the State University shall include such other titles and officers at the level of vice chancellor or above as recommended by the Chancellor and approved and appointed by the Board of Trustees, all of whom shall serve at the pleasure of the Board. Other than the Chancellor, an individual may hold more than one senior officer title.

§2. Responsibilities. Senior Officers shall perform such duties as may be assigned from time to time by the Board of Trustees or the Chancellor.


## TITLE D.  OTHER OFFICERS AND PROFESSIONAL STAFF

§1. Designation. There shall be such other executive and administrative officers as shall be designated by the Chancellor.

§2. Appointment. Vice chancellors, and deputies to the Chancellor, shall be appointed by the Board of Trustees after receiving the recommendation of the Chancellor; such officers shall serve at the pleasure of the Board of Trustees. All other executive and administrative officers shall be appointed by and serve at the pleasure of the Chancellor or designee.

§3. Responsibilities. Executive and administrative officers shall have such powers, duties and responsibilities as may be assigned by the Board of Trustees or by the Chancellor.

§4. Appointment of other Professional Staff. Professional staff not in a negotiating unit established pursuant to Article 14 of the Civil Service Law in the Central Administration of the University, other than executive and administrative officers, shall be appointed by and serve at the pleasure of the Chancellor, or designee. Professional employees in the Central Administration shall be appointed by the Chancellor, or designee, in accordance with the provisions of Article XI, which shall also govern the terms and conditions of service of such employees.

## ARTICLE V: [RESERVED]

## ARTICLE VI: UNIVERSITY FACULTY

§1. Composition. The University faculty shall be comprised of the Chancellor, who shall be the presiding officer, the executive and administrative officers of the University, and all members of the faculty of each college of the University as defined in Article X, §1.

§2. Voting Faculty. The Chancellor, the executive and administrative officers of the University, and the voting faculty of each college as defined in Article X, 3, shall be voting members of the University faculty, each of whom shall be entitled to one vote.

§3. Responsibilities. The University faculty shall be responsible for the conduct of the University's instruction, research, and service programs.

## ARTICLE VII: UNIVERSITY FACULTY SENATE

### TITLE A. ESTABLISHMENT AND PURPOSES

§1. Name. There shall be a University Faculty Senate of State University of New York.

§2. Purposes. The Senate shall be the official agency through which the University Faculty engages in the governance of the University. The Senate shall be concerned with effective educational policies and other professional matters within the University.

## TITLE B. MEMBERSHIP

§1. Composition. The Senate shall consist of the Chancellor of the University, two University representatives having University-wide responsibilities, and representatives from each State-operated unit and contract college in numbers determined as follows:

(a)        One representative from each unit, independent of the size of the professional staff.

(b)        Additional representatives shall be authorized from units on the basis of the number of full-time   professional staff according to   the   following:   a second representative for units whose full-time professional staff is greater than or equal to 600, but less than 1100; a third representative for units whose professional staff is greater than or equal to 1100, but less than 1600; and a fourth representative for units whose professional staff is greater than or equal to 1600.

§2. Election and Appointment. The Chancellor of the University shall appoint the two University representatives and two alternate University representatives, both having University-wide responsibility. The professional staff of each State-operated unit and contract college shall, by secret ballot and majority of those voting, elect their own representatives and alternates in a manner that shall be further specified in the bylaws of each unit's faculty, provided that the alternate representatives shall serve for the same term as the representatives for whom they are alternates. Alternate representatives shall serve in the absence of or inability to act for the representative for whom they are alternates and, in that event, such alternate representatives shall exercise all the powers and duties of the representatives for whom they are alternates.

§3. Terms. The University representatives shall serve at the pleasure of the Chancellor of the University. Each representative of a State-operated unit or contract college shall serve for a term of three years, provided, however, that no such representative shall serve as a member of the Senate after termination of employment in the unit that the representative was elected.

§4. Reelection. An elected representative who has served a full three-year term or major fraction thereof shall be eligible to serve a second consecutive three-year term. Representatives shall not be eligible to serve again as members of the Senate until the expiration of one year from the end of their last preceding term has passed. Representatives who have served only a minor fraction of one three-year term may serve for two additional consecutive three-year terms.

§5. Vacancies. If a leave of absence or other reason will prevent a Senator or alternate from performing the duties of the office for a period of one academic year or longer, the position will be declared vacant and a new election will be held to fill the remainder of the unexpired term. An individual currently serving as an alternate may run in the election for a Senate seat that has been vacated in this manner. In the event that both the Senator and the alternate are simultaneously unable to represent the campus for a period in excess of four months during the academic year, both offices will be declared vacant and the unexpired terms will be filled by a new election.

## TITLE C. OFFICERS

§1. President of the Senate. Before July 1 of each odd-numbered year, the Senate shall elect one of its elected members or the current vice-president/secretary as President of the Senate for a term of two years. Upon election as President to the Senate, an elected member shall vacate the position as the representative of

his or her unit in the Senate. The President of the Senate shall preside at all meetings of the Senate and shall exercise such other powers and duties as may be vested in the President by this Article and the bylaws of the Senate. The President shall be an ex-officio member of all Senate committees. The President of the Senate may be reelected for a second term, but may not thereafter be eligible for a successive term, provided, however, that a President initially elected to fill less than half of a term arising from a vacancy is eligible to serve two additional successive full terms.

§2. Vice-President/Secretary. Before July 1 of each even-numbered year, the senate shall elect one of its elected members to serve as vice-president/secretary for a term of two years. Upon election as vice-president/secretary, the elected member shall vacate the position as representative of his or her unit in the senate and shall serve as a nonvoting member of the senate. The vice-president/secretary shall take and keep minutes of the senate and shall exercise such other powers and duties as the senate shall provide in its bylaws. The vice-president/secretary shall serve as president of the senate during that officer's absence or inability to act.  The vice-president/secretary of the senate may be reelected for a second term, but may not thereafter be eligible for a successive term, provided, however, that a vice-president/secretary initially elected to fill less than half of a term arising from a vacancy is eligible to serve two additional successive full terms.

§3. Vacancies. A vacancy in the office of president or vice-president/secretary shall be filled for the unexpired term in the same manner as the original election, at the next succeeding meeting of the Senate following the occurrence of the vacancy. In the interim, the Executive Committee shall elect one of its members to serve in an acting capacity until the vacancy is filled.

## TITLE D. ORGANIZATION

§1. Meetings. The Senate shall meet at least twice a year at such times and places as shall be determined by the Executive Committee. Special meetings of the Senate may be called in accordance with the provisions of the bylaws.

§2. Committees. The Senate may establish such standing committees as it deems advisable and shall prescribe the functions of such committees. One such committee shall be the Executive Committee. The chairperson and members of the standing committee shall be appointed by the Executive Committee and shall serve for terms of one year commencing July 1st of each year. Committee members shall be eligible for reappointment.

## TITLE E. BYLAWS

§1. Adoption. The Senate may adopt, amend, or repeal such bylaws as it deems advisable, consistent with this Article, governing its activities and procedures.

## TITLE F. AMENDMENTS

§1. Procedure. Proposed amendments to this Article may be recommended to the Board of Trustees by a majority vote in the Senate. The Chancellor shall transmit proposed amendments to the Board of Trustees with recommendations. Amendments, in such form as approved by the Board, shall become effective if ratified by

the professional staff of a majority of the State-operated units and contract colleges, by secret ballot, within such time period not in excess of one year as may be fixed by the Board of Trustees.

# ARTICLE VIII: COUNCILS

§1. Establishment. In accordance with the provisions of the Education Law, there shall be a council at each State-operated institution and, in the case of the State University College of Environmental Science and Forestry, a board of trustees.

§2. Responsibilities. Individual councils and, in the case of the State University College of Environmental Science and Forestry, the board of trustees, shall exercise such powers as are provided for in the Education Law, subject to the general management, supervision, control, and approval of and in accordance with rules established by the State University Trustees. Consistent with the statutory responsibilities of such bodies, they shall develop and foster strong relationships between their institutions and local communities and promote campus and University interests.

§3. Attendance of Faculty and Alumni. Councils and, in the case of the State University College of Environmental Science and Forestry, the board of trustees, shall invite a representative of the faculty and a representative of the alumni to attend regular meetings of such bodies.

# ARTICLE IX: COLLEGE OFFICERS AND ORGANIZATIONS

## TITLE A. CHIEF ADMINISTRATIVE OFFICER

§1. Appointment.

(a)     There shall be a chief administrative officer of each state-operated institution of the University who shall be designated president. Presidents shall be appointed by the Board of Trustees after receipt of recommendations of the campus councils (or of the Trustees of the State University College of Environmental Science and Forestry) and of the Chancellor, and shall serve at the pleasure of the Board of Trustees. Before making its recommendations, the campus council shall consult with a presidential search committee designated for such purposes by the chair of the council and comprised of members of the various campus constituencies, including faculty, students, professional employees, administration, alumni and members of the council. Reflecting the significance of the role that faculty are expected to play in academic governance, the faculty should predominate among the non-council constituencies on the search committee. The Chancellor, or designated representative, before making recommendations to the Trustees, shall consult with the chair or other designated representative of the college council.

(b)     At any time during the period of appointment, the Board of Trustees and the Chancellor may evaluate the services of the chief administrative officer.

(c)     A chief administrative officer, upon appointment, shall be appointed by the Chancellor to the faculty of the University in a position of academic rank with continuing appointment.

§2. Responsibilities. The chief administrative officer of each college shall be responsible to the Chancellor and the Board of Trustees for, and shall administer, the college for which he or she serves, and shall promote its development and effectiveness. The chief administrative officer shall supervise the members of the

professional and non-academic staff of such college and shall appoint or recommend to the Chancellor and the Board of Trustees persons for appointment as members of the professional staff of the college. The chief administrative officer shall prepare and recommend the annual budget requests of the college and shall report and make recommendations to the Chancellor and the Board of Trustees and the college council concerning the operation, plans, and development of the college. The chief administrative officer shall make all appointments of employees to positions at the college in the classified service of the civil service of the State.

§3. Handbook. The chief administrative officer of each college shall be responsible for the preparation and publication of a college handbook, subject to the approval of the Chancellor. Such handbook should include an administrative organization chart, a statement of administrative responsibilities, faculty bylaws, local policies, and such other information concerning the college as he or she may deem advisable and shall be made available to all members of the academic staff of the college.

§4. Annual Reports. On or before September 1 of each year, the chief administrative officer of each college shall make an annual report to the Board of Trustees, the Chancellor, the college council, and the faculty for the previous year, concerning the affairs of the college and recommendations with respect thereto.

## TITLE B. COLLEGE ADMINSTRATIVE OFFICERS

§1. Designation. There shall be such college administrative officers for each college as may be determined by the chief administrative officer of the college with the approval of the Chancellor.

§2. Appointment. Appointments of all college administrative officers and professional staff not in a negotiating unit established pursuant to Article 14 of the Civil Service Law shall be made by the chief administrative officer of the college; such appointments shall be reported to the Chancellor. Appointment of academic officers such as vice-president for academic affairs, academic deans, and others with similar responsibilities shall be made after consultation with the faculty.

§3. Acting Appointments. Interim appointments on an acting basis of college administrative officers and professional staff not in a negotiating unit established pursuant to Article 14 of the Civil Service Law, other than chief administrative officer, shall be made in accordance with Section 2 above.

§4. Service. Persons appointed pursuant to this Title shall serve at the pleasure of the appointing officer or body.

§5. Responsibilities. College administrative officers shall have such powers, duties, and responsibilities as may be assigned by the chief administrative officer of the college.

## TITLE C. CHAIRS OF DEPARTMENTS AND DIVISIONS

§1. Designation. The members of the academic staff of each college in charge of the departments or divisions of such college shall be designated as chairs of such departments or divisions, which designations shall be in addition to their academic rank.

§2. Terms. Chairs of departments or divisions of colleges shall be designated and re-designated by the college chief administrative officer after consultation with appropriate faculty, including the department or division

concerned. Such designation shall be for any period up to three years, and renewable, provided, however, that the college chief administrative officer may relieve a designee of duties as chair at any time.

§3. Termination of Appointment as Chair. If the chair of a department or division of a college is relieved of duties as chair, that academic staff member shall retain such rights and privileges as he or she may have by virtue of academic rank.

§4. Responsibilities. The chairs of departments and divisions of a college shall, in consultation with their respective faculties, be responsible to the chief administrative officer of the college for the supervision of the personnel and educational program of the departments or divisions for which they serve. They shall have such other powers, duties, and responsibilities as may be assigned by the chief administrative officer of the college.

## TITLE D. COLLEGE ADMINISTRATIVE ORGANIZATION

§1. Plan. The chief administrative officer of each college shall prepare an organization chart of the college and an accompanying description of the powers, duties, and responsibilities of the administrative officers and chairs of the departments and divisions of the college, subject to the approval of the Chancellor.

## TITLE E. COLLEGE ADMINISTRATIVE CONFERENCE

§1. Composition. There shall be a college administrative conference of each college that shall be comprised of the Chancellor, the chief administrative officer of the college, and such other persons as may be designated by the chief administrative officer of the college. The Chancellor, or if absent, the chief administrative officer of the college, shall be the presiding officer of each college administrative conference.

§2. Purpose. Each college administrative conference shall act as an advisory and consultative body to the chief administrative officer of the college, and it shall consider such matters as may be presented to it by its presiding officer.

§3. Meetings. Each college administrative conference shall meet at the call of the chief administrative officer of the college.

# ARTICLE X: COLLEGE FACULTY

§1. Composition. The faculty of each college shall be comprised of the Chancellor, the chief administrative officer, and other members of the voting faculty of the college, other members of the academic staff of the college, and such nonvoting administrative officers and professional staff as may be designated by the faculty bylaws of the college.

§2. Chair and Presiding Officer. The chief administrative officer of the college shall be the chair of the faculty of each college. Each college faculty may provide for the selection of its presiding officer, in a manner to be specified in college faculty bylaws. Both the Chancellor and the chief administrative officer shall be empowered to call meetings of the college faculty or the governance body of that faculty and of its executive committee. The agendum of each meeting of these bodies shall provide, as a priority order of business, an opportunity for both the Chancellor and the chief administrative officer to present their reports.

§3. Voting Faculty. The voting faculty of each college shall be composed of:

(a)      The Chancellor and the chief administrative officer of the college; and

(b)      Members of the academic staff of the college having academic rank and term or continuing appointments; and

(c)      Such other officers of administration and staff members of the college as may be specified by the faculty bylaws of the college.

§4.  Responsibility.  The faculty of each college shall have the obligation to participate significantly in the initiation, development and implementation of the educational program.

§5. Bylaws.

(a)      The faculty of each college shall prepare and adopt bylaws which shall contain:

(1) Provisions for committees and their responsibilities;
(2) Procedures for the calling and conduct of faculty meetings and elections; and
(3) Provisions for such other matters of organization and procedure as may be necessary for the performance of their responsibilities.

(b)      Bylaws shall be consistent with and subject to the Policies of the Board of Trustees of State University of New York, the laws of the State of New York, the provisions  of  agreements  between  the  State of  New  York,  and  the  certified employee organization established pursuant to Article 14 of the Civil Service Law. Provisions of bylaws concerning consultation with the faculty shall be subject to the approval of the chief administrative officer of the college. All actions under bylaws shall be advisory upon the Chancellor and the chief administrative officer of the college.


# ARTICLE XI: APPOINTMENT OF EMPLOYEES

## TITLE A. PROCEDURE

§1. Procedure. The chief administrative officer of a college, after seeking consultation, may appoint, reappoint, or recommend to the Chancellor for appointment or reappointment, as may be appropriate to the nature of the appointment provided for herein, such persons as are, in the chief administrative officer's judgment, best qualified. Such appointments shall be consistent with the operating requirements of the college. For purposes of this Article, the term "consultation" shall mean consideration by the chief administrative officer of a college of recommendations of academic or professional employees, including the committees, if any, of the appropriate department or professional area, and other appropriate sources in connection with appointment or reappointment of a specified employee, provided, however, that nothing contained herein shall prevent the chief administrative officer of a college from taking such actions as he or she may deem necessary to meet notice requirements in the event of nonrenewal of term appointments.

## TITLE B. CONTINUING APPOINTMENT

§1. Definition. A continuing appointment shall be an appointment to a position of academic rank that shall not be affected by changes in such rank and shall continue until resignation, retirement, or termination.

§2. Method of Appointment. The Chancellor, after considering the recommendation of the chief administrative officer of the college concerned, and except as hereinafter permitted with respect to the appointment of Distinguished, Distinguished Service, Distinguished Teaching, and University Professors, may grant continuing appointments to such persons who, in the Chancellor's judgment, are best qualified.

§3. Eligibility.

(a)    Continuing appointment as Professor, Associate Professor, Librarian, or Associate Librarian. Continuing appointment for those holding these positions may be given by the Chancellor on initial appointment or thereafter. Except as provided in subdivision (c) of this section, further employment as Professor, Associate Professor, Librarian or Associate Librarian, after the third consecutive year of service in any one or any several of these ranks at any one college must be on the basis of continuing appointment, provided, however, such appointment shall not be effective until made so by the Chancellor, and provided further that promotion to any of these ranks shall not operate to extend the service requirements for continuing appointment described in subdivision (b) of this section.

(b)    Continuing appointment as Assistant Professor, Instructor, Senior Assistant Librarian, or Assistant Librarian. Except as provided in subdivision (c) of this section, further employment at any college of an appointee who has completed a total of seven years of service in a position or positions of academic rank of which the last three consecutive years have been in a position of academic rank at that college as Assistant Professor, Instructor, Senior Assistant Librarian, or Assistant Librarian, must be on the basis of a continuing appointment, provided, however, such appointment shall not be effective until made so by the Chancellor. An Assistant Professor, Instructor, Senior Assistant Librarian, or Assistant Librarian shall not be eligible for continuing appointment at any of these ranks prior to the completion of a total of seven years in a position or positions of academic rank.

(c)    Additional Term Appointment. An academic employee holding a continuing or term appointment at one college who is appointed to academic rank at another college may be given that appointment for a term not to exceed three years.

(d)    Service Credit.

(1)    In determining eligibility for continuing appointment under subdivision (b) of this section, satisfactory full-time prior service in academic rank at any other accredited academic institution of higher education may, at the request of the appointee and in the discretion of the Chancellor, or designee, be credited as service up to a maximum of three years at the time of appointment at a college. Waiver of all or part of this service credit shall be granted upon written request of the employee to the chief administrative officer no later than six months after the date of initial appointment.

(2)    In computing consecutive years of service for the purposes of appointment or reappointment to the academic staff, periods of leave of absence at full salary shall be included; periods of leave of absence at partial salary or without salary and periods of part-time service shall not be included, but shall not be deemed an interruption of otherwise consecutive service.

(3)     A temporary cessation of service credit toward continuing appointment shall be provided, at the employee's request, commencing with the birth/adoption/foster care placement of a child. Such written request by an academic employee with an academic year obligation shall be approved for the time requested, for one semester or two semesters. Such written request by an academic employee with a calendar year obligation shall be approved for the time requested, for six months or one year.

(4)     Each employee who as of May 6, 2020, is currently serving in a position of academic rank who has not yet attained continuing appointment status, and who is not currently under review, shall have an automatic one-year extension of the time to continuing appointment without change  in title, full-time equivalent, or other employment status. Any employee in a position of academic rank who has not yet attained continuing appointment status may opt out of the automatic one-year extension referenced above and be considered for continuing appointment based on their original schedule by submitting a request, in writing, to their Department Chair, with copy to their Dean and Provost. Timelines for such submission shall be determined at each campus. These provisions shall not apply to any employee in a position of academic rank who has already been provided with a notice of non-renewal.

(5)     Each employee who was hired between May 6, 2020 and June 30, 2021 and appointed to a position of academic rank, who has not yet attained continuing appointment status, and who is not currently under review, shall have an automatic one-year extension of the time to continuing appointment without change in title, full-time equivalent or other employment status. Any employee in a position of academic rank who has not yet attained continuing appointment status may opt out of the automatic one-year extension referenced above and be considered for continuing appointment based on their original schedule by submitting a request, in writing, to their Department Chair, with copy to their Dean and Provost. Timelines for such submission shall be determined at each campus. These provisions shall not apply to any employee in a position of academic rank who has already been provided with a notice of non-renewal.

## TITLE C. PERMANENT APPOINTMENT

### §1. Definition.

(a)     A permanent appointment shall be an appointment of a professional employee in a professional title that is eligible for a permanent appointment, which shall continue until a change in such title, resignation, retirement, or termination.

(b)     A professional employee who serves in a professional title listed in Appendix A, B, or C, infra, of this Article shall not be eligible for permanent appointment and shall not be covered by this Title C during service in such professional titles. Such professional employees shall be appointed pursuant to the procedure in Title D of this Article.

### §2. Method of Appointment. The Chancellor, after considering the recommendation of the chief administrative officer of the college concerned, may grant permanent appointment in professional title to such persons who, in the Chancellor's judgment, are best qualified.

§3. Initial Appointment. A person who is appointed to a professional title in which permanent appointment may be granted, must be granted a temporary appointment for the first year of that person's employment in such title when the appointment is made to a position vacated by a professional employee who is serving a probationary appointment pursuant to Title C, section 5, or Title D, section 6; otherwise, the person shall be granted a term appointment, except where a temporary appointment is appropriate. Upon completion of the initial temporary or term appointment, the professional employee may be granted a further appointment in accordance with this Article. Service in a temporary appointment pursuant to this section, which shall be counted toward the satisfaction of the eligibility requirements for initial permanent appointment.

§4. Eligibility for Initial Permanent Appointment.

(a)     Except as provided in subdivisions (a) (1), (a) (2), and (b) of this section and in paragraph (b) (2) of section 5 of this Title, at any college further employment, in a professional title in which permanent appointment may be granted, of a professional employee who has completed seven consecutive years of full-time service as a professional employee at that college, the last two years of which have been in that professional title, must be on the basis of permanent appointment, provided, however, that such appointment shall not be effective until made so by the Chancellor.

(1)     Upon completion of three consecutive years of full-time service as a professional employee at that college, the last year of which has been in that  professional  title,  a  professional employee  in  a  title eligible  for permanent appointment may initiate early consideration for permanent appointment through notification to the chief administrative officer of the college. To be effective, such notification must be in writing and received by the chief administrative officer of the college no later than nine months prior to the date upon which such employee would otherwise receive written notice that a term appointment is not to be renewed upon expiration. In the event the chief administrative officer of the college grants the employee's request for such early consideration, any further employment of that employee after completion of five consecutive years of full-time service as a professional employee at that college, the last two years of which have been in that professional title, must be on the basis of permanent appointment, provided, however, that such appointment shall not be effective until made so by the Chancellor.

(2)     Upon completion of four consecutive years of full-time service as a professional employee at that college, the last year of which has been in that professional title, a professional employee in a title eligible for permanent appointment may initiate early consideration for permanent appointment through notification to the chief administrative officer of the college. To be effective, such notification must be in writing and received by the chief administrative officer of the college no later than nine months prior to the date upon which such employee would otherwise receive written notice that a term appointment is not to be renewed upon expiration. In the event the chief administrative officer of the college grants the employee's request for such early consideration, any further employment of that employee after completion of six consecutive years of full-time service as a professional employee at that college, the last two years of which have been in that professional title, must be on the basis of permanent appointment, provided, however, that such appointment shall not be effective until made so by the Chancellor.

(b)     Additional Appointments. A professional employee holding a permanent appointment or a term appointment at one college who is appointed to a professional title at another college may be given that appointment for a term not to exceed three years.

(c)     Service Credit.

(1)      In determining eligibility for permanent appointment under this section, satisfactory full-time prior service in a professional title at any one college of the University may, at the request of the professional employee and in the discretion of the Chancellor, or designee, be credited as service, up to a maximum of three years, at the time of appointment at another college. Waiver of all or part of this service credit shall be granted upon written request of the employee to the chief administrative officer no later than six months after the date of appointment at that college.

(2)      In computing consecutive years of service for the purpose of appointment or reappointment of professional employees, periods of leave of absence at full salary and periods of full-time service in probationary and temporary appointments granted pursuant to this Title shall be included; periods of leave of absence at partial salary or without salary and periods of part-time service shall not be included, but shall not be deemed an interruption of consecutive service for other purposes.

(3)      A temporary cessation of service credit toward permanent appointment shall be provided, at the employee's request, commencing with the birth/adoption/foster care placement of a child. Such written request by a professional employee shall be approved for the time requested up to the duration of their approved family leave.

## §5. Change in Professional Title.

(a)      A professional employee holding a term appointment or permanent appointment in professional title who is appointed to a different professional title at the same college shall be given a probationary appointment in the different professional title.

(1)      A professional employee holding permanent appointment in professional title who completes a probationary appointment in a different professional title shall be granted a permanent appointment in the different professional title only and shall not retain the permanent appointment in the former professional title.

(2)      A professional employee who is serving on a term appointment in professional title and completes a probationary appointment in a different professional title shall be granted a new term appointment as appropriate in the new professional title and shall not retain a term appointment in the former professional title. The new term appointment shall be for a duration not less than the unexpired time of the previous term appointment. Service in the probationary appointment shall count toward satisfaction of the eligibility requirements for permanent appointment.

(b)      At any time during the probationary appointment, the appointing authority may require the employee to return to his or her former professional title and such action shall be accomplished as soon as practicable.

(1)      A professional employee holding a permanent appointment in a professional title and serving a probationary appointment in a different professional title who so returns to the employee's former professional title resumes permanent appointment in the former professional title.

(2)      A professional employee holding a term appointment in a professional title and serving a probationary appointment in a different professional title who so returns to the employee's former professional title shall have service in the probationary appointment counted towards the

satisfaction of the eligibility requirements for permanent appointment except as provided herein. Should such employee so return, he or she shall be granted a new term appointment in the employee's former professional title and shall not be eligible for permanent appointment in such former professional title until expiration of that term appointment, at the earliest. Notice that a term appointment in this circumstance will be allowed to expire and shall be given at the appropriate time prior to the expiration of that new term appointment.

(3)     Basic annual salary protected. Upon returning to the employee's former professional title pursuant to this section, a professional employee shall receive his or her former basic annual salary and, in addition, any improvements thereof would have been earned had the employee remained in that professional title.


## TITLE D. TERM APPOINTMENT

§1. Definition. Except as provided in Section 6 of this Title, a term appointment shall be an appointment for a specified period of not more than three years, which shall automatically expire at the end of that period unless terminated earlier because of resignation, retirement, or termination.

§2. Eligibility.
(a)     A term appointment may be given to any person appointed to or serving in a position designated as being in the Professional Services Negotiating Unit.

(b)     Part-time service.

(1)     Further employment at any college of an individual who has been employed at that college on a part-time basis for four consecutive semesters in a position designated as being in the Professional Services Negotiating Unit shall be on the basis of a term appointment. In computing consecutive semesters of part-time service for the purposes of appointment or reappointment under this subdivision, periods of leave of absence at partial salary or without salary shall not be included, but shall not be deemed an interruption of otherwise consecutive service. An individual who has been granted term appointment, but for whom classroom enrollment is inadequate, shall have no entitlement to salary, benefits, or any other rights or privileges.

(2)     In the event the service of such an individual is interrupted for a period of four consecutive semesters or more, the chief administrative officer of the college may grant the employee any type of appointment as the chief administrative officer's judgment deem appropriate.

§3. Method of Appointment. All term appointments shall be made by the chief administrative officer of the college and shall be reported to the Chancellor.

§4. Renewal of Term. Except as provided in this Article, term appointments may be renewed by the chief administrative officer of the college for successive periods of no more than three years each; such renewals shall be reported to the Chancellor. No term appointment, of itself, shall be deemed to create any manner of legal right, interest, or expectancy in any other appointment or renewal.

§5. Notice. In the event a term appointment is not to be renewed upon expiration, the chief administrative officer or the chief administrative officer's representative will notify the appointee in writing no less than:

(a)        Forty-five calendar days prior to the end of a part-time service term appointment;

(b)        Three months prior to the end of a term expiring at the end of an appointee's first year of uninterrupted service within the University. For such employees serving on the basis of an academic year professional obligation and academic employees at the Empire State College whose terms end in June, July, or August, notice shall be given no later than March 31;

(c)        Six months prior to the end of a term expiring after the completion of one, but not more than two, years of an appointee's uninterrupted service within the University. For such employees serving on the basis of an academic year, professional obligation and academic employees at the Empire State College whose terms end in June, July, or August, notice shall be given no later than December 15;

(d)        Twelve months prior to the expiration of a term after two or more years of uninterrupted service within the University;

(e)        Six months prior to the expiration of a term for titles listed in Appendix B(1) and B(2), infra; and

(f)        Employees who intend to leave the employ of the University shall give 30 days' notice to the chief administrative officer or the chief administrative officer's representative. In the event that an employee fails to provide the full 30 days' notice, it shall be within the discretion of the chief administrative office or the chief administrative officer's representative to withhold from such employee's final check an amount equal to the employee's daily rate of pay for each day less than the required 30 days. Such action shall not constitute discipline.

## §6. Other Appointments.

(a)        Five-year term appointments are appointments that may be granted only to persons who serve in a professional title listed in Appendix A of this Article. Except for their duration, five-year term appointments shall be subject to the same procedures for methods of appointment, renewal, and notice of nonrenewal of term appointments in accordance with the provisions of this Title.

(b)

(1) A person whose initial appointment to any college of the University is to a professional title listed in Appendix A of this article must be granted term appointments for the first three years of employment in such title at that college. Upon completion of a total three years of consecutive service on such term appointment basis, further appointment in such title at such college and each appointment renewal there- after in such title at such college shall be for a five-year term appointment.

(2)  In the event such person is subsequently appointed to a professional title in which permanent appointment may be granted, that person shall be granted a  term appointment in such professional title only and shall not retain the term appointment or the five-year term appointment, as appropriate, in the professional title listed in Appendix A of this Article.

(c)        A professional employee holding a permanent appointment or term appointment in a professional title in which permanent appointment may be granted at any one college who is appointed to a professional title listed in Appendix A of this Article at the same college shall be given a probationary appointment in such title listed in Appendix A.

(1)

(a) A professional employee holding permanent appointment in professional title who completes a probationary appointment in a professional title listed in Appendix A of this Article shall be granted a five-year term appointment  in the professional title listed in Appendix A of this Article only and shall not retain permanent appointment in the former professional title.

(b) In the event such professional employee is subsequently appointed to the same former professional title held at the college prior to appointment to a professional title listed in Appendix A of this Article, the employee shall resume permanent appointment in such former professional title. If such subsequent appointment is to a professional title different from such former professional title at the college or to a different college, the employee shall be given a term appointment.

(c) In the event the five-year term appointment of such professional employee is not renewed and, on the effective date of such nonrenewal, a vacancy exists in the same former professional title held on the basis of permanent appointment at the college prior to appointment to a professional title listed in Appendix A of this Article, the employee shall resume permanent appointment in such former professional title on the effective date of nonrenewal from the five-year term appointment.

(2)

(a) A professional employee holding a term appointment in a professional title who completes a probationary appointment in a professional title listed in Appendix A of this Article shall be granted a five-year term appointment in such professional title listed in Appendix A only and shall not retain a term appointment in the former professional title.

(b) In the event such professional employee is subsequently appointed to a professional title in which permanent appointment may be granted, the employee shall be granted a new term appointment in such professional title.

(d)     At any time during a probationary appointment given in accordance with this section, the appointing authority may require the professional employee to return to the employee's former professional title at the college and such action shall be accomplished as soon as practicable.

(1)     A professional employee holding a permanent appointment in a professional title and serving a probationary appointment in a title listed in Appendix A of this Article who so returns to the employee's former professional title shall resume permanent appointment in the former professional title.

(2)     A professional employee holding a term appointment in a professional title in which permanent appointment may be granted and serving a probationary appointment in a title listed in Appendix A of this Article who so returns to his or her former professional title shall be granted a new term appointment in such former professional title and shall not be eligible for permanent appointment in such former professional title until expiration of that term appointment at the earliest. Notice that a term appointment in this circumstance will be allowed to expire and shall be given at the appropriate time prior to the expiration of that new term appointment.

(e)     Service Credit.

(1)     Employees granted term appointments pursuant to subdivisions b (2), c (1) (b), and c (2) (b) herein may, at the request of the professional employees in the discretion of the Chancellor, or designee, be credited, at the time of such appointments, with all prior continuous University service up to a maximum of four years for purposes of eligibility for permanent appointment. Waiver of all or part of this service credit shall be granted upon request of the employee to the chief administrative officer no later than six months after the date of such appointment.

(2)     In computing consecutive years of service for the purposes of appointment or reappointment under this section, periods of leave of absence at full salary and periods of full-time service in probationary and temporary appointments granted pursuant to this section shall be included; periods of leave of absence at partial salary or without salary and periods of part-time service shall not be included, but shall not be deemed an interruption of otherwise consecutive service.

(f)     The Board of Trustees may, from time to time, designate professional titles to be added to or deleted from Appendix A.

(g)     Athletics.

(1)     Division I Campuses – Athletic Director and Staff. Full-time college year, academic year, and calendar year employees in titles in Appendix B (1) of this Article shall be provided term appointments, each up to a maximum of five years. Term appointments for employees in titles in Appendix B (1) of this Article shall be subject to the same procedures for methods of appointment and renewal of term appointments in accordance with this Article, except as modified herein. Except in cases of discipline or retrenchment, in the event the University elects to terminate a term appointment before the expiration of the term, the University shall compensate the individual for up to the maximum amount of time remaining on the term appointment.

(2)     Division I Revenue producing Sports – Coaching Titles. Full-time college year, academic year and calendar year employees in the titles in Appendix B(2) of this Article, whose coaching and coaching- related duties account for 75 percent or more of their professional obligation, shall be provided term appointments, each up to a maximum of five years. Term appointments for employees in titles in Appendix B(2) of this Article shall be subject to the same procedures for methods of appointment and renewal of term appointments in accordance with this Article, except as modified herein. Except in cases of discipline or retrenchment, in the event the University elects to terminate a term appointment before the expiration of the term, the University shall compensate the individual for up to the maximum amount of time remaining on the term appointment.

(3)     Division I Non-revenue producing Sports – Coaching Titles. Full-time college year, academic year, and calendar year employees in the titles in Appendix B(3) of this Article, whose coaching and coaching-related duties account for 75 percent or more of their professional obligation, shall be provided term appointments, each up to a maximum of five years. Term appointments for employees in titles in Appendix B(3) of this Article shall be subject to the same procedures for methods of appointment and renewal of term appointments in accordance with this Article except as modified herein. Except in cases of discipline or retrenchment, in the event the University elects to terminate a term appointment before the expiration of the term, the University shall compensate the individual for up to the maximum amount of time remaining on the term appointment.

(4)      Division II Sports. Where an institution has declared its intention to move to the Division I level of competition, and as a consequence is participating at the Division II level for the period of time as required by the NCAA rules, the coaches in the affected sports shall be treated for purposes of appointment and renewal pursuant to the rules for Division I coaches, either revenue-producing or non-revenue- producing, as appropriate to the sport. In the event the institution does not move to a Division I level of competition within four years, the coaches shall revert to the appointment, and consider renewal and non-renewal status applicable to Division III competition.

(5)      Division III Sports. Full-time college year, academic year, and calendar year employees in the titles in Appendix B(4) of this Article, whose coaching and coaching-related duties account for 75 percent or more of their professional obligation shall, for the first four years of employment in any of the titles in Appendix B(4) of this Article, be provided term appointments, each up to a maximum of three years. Following the fourth year of employment, employees in titles in Appendix B(4) of this Article shall receive a term appointment of three years. Term appointments for employees in titles in Appendix B(4) of this Article shall be subject to the same procedures for methods of appointment and renewal of term appointments in accordance with this Article except as modified herein. Except in cases of discipline or retrenchment, in the event the University elects to terminate a term appointment before the expiration of the term, the University shall compensate the individual for up to the maximum of the time remaining on the term appointment.

(6)      A professional employee holding a permanent appointment or term appointment in a professional title in which permanent appointment may be granted at the same college who is appointed to a professional title listed in Appendix B of this Article at the same college shall not retain permanent appointment nor term appointment in the former professional title.

(i) In the event such professional employee is subsequently appointed to a professional title in which permanent appointment may be granted, such employee shall be granted a term appointment in such professional title only and shall not retain the term appointment in the professional title listed in Appendix B of this Article.

(ii) In the event such professional employee who held a permanent appointment at the time such employee was appointed to a professional title listed in Appendix B of this Article is subsequently appointed to the same former professional title held at the college prior to appointment to a professional title listed in Appendix B of this Article, the employee shall resume permanent appointment in such former professional title. If such subsequent appointment is to a professional title different from such former professional title at the college or to a different college, the employee shall be given a term appointment.

(iii) In the event the term appointment of such professional employee is not renewed and, on the effective date of such nonrenewal, a vacancy exists in the same former professional title held on the basis of permanent appointment at the college prior to appointment to a professional title listed in Appendix B of this Article, the employee shall resume permanent appointment in such former professional title on the effective date of nonrenewal from the five-year term appointment.

(7)      Service Credit.

(i) Employees granted term appointments pursuant to subparagraphs (i), (ii), or (iii) of paragraph (6) of subdivision (g) herein may, at the request of the professional

employees and in the discretion of the chancellor, or designee, be credited, at the time of such appointments, with all prior continuous university service up to a maximum of four years for purposes of eligibility for permanent appointment. Waiver of all or part of this service credit shall be granted upon request of the employee to the chief administrative officer no later than six months after the date of such appointment.

(ii) In computing consecutive years of service for the purposes of appointment or reappointment under this section, periods of leave of absence at full salary and periods of full-time service in probationary and temporary appointments granted pursuant to this section shall be included; periods of leave of absence at partial salary or without salary and periods of part-time service shall not be included, but shall not be deemed an interruption of otherwise consecutive service.

(8)     The board of trustees may, from time to time, designate professional titles to be added to or deleted from Appendix B, infra.

(h) Fundraising. Full-time college year and calendar year employees in the titles in Appendix C of this Article, shall, for the first four years of employment in any of the titles in Appendix C of this Article, be provided term appointments, each up to a maximum of three years. Following the fourth year of employment, employees in titles in Appendix C of this Article shall receive a term appointment of three years. Term appointments for employees in titles in Appendix C of this Article shall be subject to the same procedures for methods of appointment and renewal of term appointments in accordance with this title except as modified herein. Except in cases of discipline or retrenchment, in the event the University elects to terminate a term appointment before the expiration of the term, the University shall compensate the individual for the time remaining on the term appointment.

(1)     A professional employee holding a permanent appointment or term appointment in a professional title in which permanent appointment may be granted at the same college who is appointed to a professional title listed in Appendix C of this Article at the same college shall not retain permanent appointment nor term appointment in the former professional title.

(i) In the event such professional employee is subsequently appointed to a professional title in which permanent appointment may be granted, such employee shall be granted a term appointment in such professional title only and shall not retain the term appointment in the professional title listed in Appendix C of this Article.

(ii) In the event such professional employee who held a permanent appointment at the time such employee was appointed to a professional title listed in Appendix C of this Article is subsequently appointed to the same former professional title held at the college prior to appointment to a professional title listed in Appendix C of this Article, the employee shall resume permanent appointment in such former professional title. If such subsequent appointment is to a professional title different from such former professional title at the college or to a different college, the employee shall be given a term appointment.

(iii) In the event the term appointment of such professional employee is not renewed and, on the effective date of such nonrenewal, a vacancy exists in the same former professional title held on the basis of permanent appointment at the college prior to appointment to a professional title listed in Appendix C of this Article, the

employee shall resume permanent appointment in such former professional title on the effective date of nonrenewal from the three-year term appointment.

(2)     Service Credit.

(i) Employees granted term appointments pursuant to subparagraphs (i), (ii), or (iii) of paragraph (1) of subdivision (h) herein may, at the request of the professional employees and in the discretion of the chancellor, or designee, be credited, at the time of such appointments, with all prior continuous university service up to a maximum of four years for purposes of eligibility for permanent appointment. Waiver of all or part of this service credit shall be granted upon request of the employee to the chief administrative officer no later than six months after the date of such appointment.

(ii) In computing consecutive years of service for the purposes of appointment or reappointment under this section, periods of leave of absence at full salary and periods of full-time service in probationary and temporary appointments granted pursuant to this section shall be included; periods of leave of absence at partial salary or without salary and periods of part-time service shall not be included, but shall not be deemed an interruption of otherwise consecutive service.

(3)     The board of trustees may, from time to time, designate professional titles to be added to or deleted from Appendix C, infra.

§7. Service Not Credited. As defined in this Article, service in academic rank shall not be credited as eligible service for permanent appointment. As defined in this Article, service in professional title shall not be credited as eligible service for continuing appointment.

## Title E. Probationary Appointment

§1. Definition. A probationary appointment shall be an appointment for a period of one year that must be granted to a professional employee holding a professional title in which permanent appointment may be granted at a college of the University when the employee is appointed to a different professional title in which permanent appointment may be granted at the same college, or when the employee is appointed to a professional title listed in Appendix A of this Article at the same college. A probationary appointment may be terminated at any time in accordance with Title C, section 5, or Title D, section §6.

§2. Method of Appointment. Probationary appointment shall be made by the chief administrative officer of the college; such appointment shall be reported to the Chancellor.

## Title F. Temporary Appointment

§1. Definition. A temporary appointment shall be an appointment w=that may be terminated at any time. Temporary appointments ordinarily shall be given only when service is to be part-time, consistent with section 2 of Title D, Article XI, voluntary, or anticipated to be for a period of one year or less, or when an employee's

initial appointment in the University is made to a position vacated by a professional employee who is serving a probationary appointment pursuant to Title C, section 5, or Title D, section §6. A temporary appointment is also appropriate whenever a position has been vacated by an employee on approved leave.

§2. Eligibility. A temporary appointment may be given to any person appointed to or serving in a position designated as being in the Professional Services Negotiating Unit.

§3. Method of Appointment. Temporary appointments shall be made by the chief administrative officer of the college; such appointments shall be reported to the Chancellor.

## Title G. Distinguished and University Professors and Distinguished Librarians

§1. Appointment. Appointment as Distinguished Professor, Distinguished Service Professor, Distinguished Teaching Professor, Distinguished Librarian, or University Professor may be given by action of the Board of Trustees on recommendation of the Chancellor and shall be a continuing appointment.

## Title H. Appointment Year

§1. Term of Obligation. The term of professional obligation, except in the case of part-time or temporary employment where the obligation may be less, shall be one of the following as determined by the chief administrative officer, or designee:

(a)     Calendar year obligation — an annual obligation of service for the full year, i.e., 12 months; or

(b)     Academic year obligation — an annual obligation of service for the academic year, not to exceed 10 months; or

(c)     College year obligation — an annual obligation or service for any period less than the full year.

§2. Professional Obligation. The professional obligation of an employee consistent with the employee's academic rank or professional title shall include teaching, research, University service, and other duties and responsibilities required of the employee during the term of the employee's professional obligation.

§3. Appointment Year. Unless the terms of appointment otherwise provide, the normal appointment year shall be from September 1 to August 31, regardless of payroll mode, provided, however, that an academic year employee may be required to commence the employee's professional obligation at a date reason- ably prior to September 1, as may be necessitated by a college's operating requirements.

§4. Other Employment. No employee may engage in other employment which interferes with the performance of the employee's professional obligation.

## Title I. Academic Freedom

§1. Academic Freedom. It is the policy of the University to maintain and encourage full freedom, within the law, of inquiry, teaching, and research. In the exercise of this freedom, faculty members may, without

limitation, discuss their own subject in the classroom; they may not, however, claim as their right the privilege of discussing in their classroom controversial matter that has no relation to their subject. The principle of academic freedom shall be accompanied by a corresponding principle of responsibility. In their role as citizens, employees have the same freedoms as other citizens. However, in their extramural utterances, employees have an obligation to indicate that they are not institutional spokespersons.


## Title J. Patents, Inventions, and Copyright Policy

### §1. Patents and Inventions Policy.

(a) Purpose of the Patents and Inventions Policy ("this Policy")

(1) The State University of New York ("SUNY") recognizes that the three primary missions of an educational institution are teaching, research, and public service.  SUNY further recognizes that, in the course of performing its mission, innovations of public value will be developed under its auspices.  It is the policy of SUNY to encourage such innovation and to take appropriate steps to aid creators and ensure that the public receives the benefit of such innovation in accordance with its public service mission.  Appropriate steps include securing research support, identifying and encouraging disclosure of intellectual property, securing appropriate protections, marketing intellectual property through licensing and other arrangements, and managing royalties and other related income, such as litigation proceeds.  These activities are undertaken in a spirit of cooperation with governmental agencies and private industry as part of SUNY's contribution to the economic well-being of the State of New York and of the Nation.

(2) In implementing its policies, SUNY will take appropriate steps to ensure that its academic community may freely publish the results of scholarly research pursuant to SUNY's policy on unrestricted dissemination of research activities.  In conformance with this principle, all concerned shall cooperate so that essential rights to intellectual property shall not be lost.

(3) All net proceeds realized from the commercialization or other monetization of SUNY intellectual property, after payment of the creator's share as defined in subpart (e) of this Policy and other appropriate costs associated with the evaluation, marketing, development, protection, maintenance, or enforcement of intellectual property, shall be used for the support of SUNY research programs in a manner consistent with the Bayh-Dole Act and its implementing regulations. Campus net proceeds shall be applied in a manner consistent with local campus policies and procedures. Upon the request of a creator, SUNY shall provide an accounting of the distribution of royalties earned from intellectual property of the creator.

(b) Definitions.

(1) Affiliate: For purposes of this Policy, Affiliates include The Research Foundation for The State University of New York ("The Research Foundation"), State University Construction Fund, all campus auxiliary service corporations, and all campus foundations.

(2) Created: Having conceived, authored, reduced to practice, designed, developed, or otherwise having contributed to the making of intellectual property.

(3) Creative and Course Content: Academic course content and materials created by personnel including, but not limited to syllabi, course materials, and textbooks; other scholarly or creative works of authorship; instructional, dramatic, musical, and artistic works; and manuscripts, articles, poetry, prose, short stories, digital shorts, novels, plays, screenplays, and creative writings.

(4) Creator: One who has created intellectual property, in whole or in part.

(5) Incidental Use of SUNY Resources ("Incidental Use"): Any use of publicly or routinely-available SUNY resources, such as residence halls, common areas, meeting rooms, cafeterias, gymnasiums, libraries, office spaces, furnishings, office supplies, photocopiers, telephones, fax machines and other standard office equipment, personal-type computers, and commercially available software in use on such computers, computer and communications networks,  including internet access and data storage, that is nonessential to the creation of intellectual property, and any use of SUNY resources by a student in accordance with assigned coursework pursuant to that student's academic curriculum.

(6) Intellectual Property: Patentable inventions, tangible research materials, computer software, and any unique or novel innovation in the technical arts or any new and useful improvements thereof, including methods or processes for creating an object or result (a way of doing or making things), machines, devices, products of manufacture, product designs, or composition, maskworks, or layout designs for printed circuit boards or integrated circuits, compositions of matter, materials, any variety of plant, and any know-how essential to the practice or enablement of such innovations and improvements, whether or not patentable.

(7) Inventor: One who contributes to the conception of a patentable invention under the patent laws of the United States or other relevant jurisdiction.

(8) Net Royalty: Royalty less reasonable out-of-pocket expenses incurred by SUNY and not reimbursed by licensees for the evaluation, marketing, development, protection, maintenance, and enforcement of the subject Intellectual Property.

(9)  Partner: Any entity or individual who is neither personnel nor student, who engages with SUNY or a SUNY Affiliate through a contract or other business transaction that will facilitate the research, teaching, or public service missions of SUNY.

(10) Patentable Invention: Any art or process (way of doing or making things), machine, manufacture, design, or composition of matter, or any new and useful improvement thereof, or any variety of plant, which is or may be patentable under the patent laws of the United States or other relevant jurisdiction, and the patent applications or patents that embody them.

(11) Personnel: All full-time and part-time employees of SUNY and SUNY Affiliates, student employees (including, but not limited to, research assistants, teaching assistants, fellows, post-doctoral scholars, and students providing services under sponsor agreements), and other persons holding any paid appointment or position with SUNY.

(12) Royalty:  Cash, equity, or other value received by SUNY as consideration for use of rights to SUNY Intellectual Property.

(13) Students: Individuals enrolled in SUNY, including, but not limited to, continuing education, undergraduate, graduate, and professional students, non-degree students, and not-for-credit students.

(14) Substantial Use of SUNY Resources ("Substantial Use"): Any use of SUNY resources that is more than Incidental Use, including, but not limited to, use of: financial support, funds and grants administered by SUNY or a SUNY Affiliate; inter-institutional collaborations facilitated by SUNY; equipment, facilities, services, laboratories, or space; computers and computer or communications networks not publicly or routinely available; research, clinical, or other scientific instruments; time spent by personnel, including secretarial, clerical, administrative staff, and research and teaching assistants; confidential information; inventions and other proprietary or intellectual property owned by SUNY; and any privileged access as a result of a person's affiliation with SUNY.

(15) The State University of New York ("SUNY"): References to "SUNY" in this Policy may include Affiliates where appropriate under the contexts, whether or not specifically stated.  In addition, at the request of SUNY, SUNY Ownership of Intellectual Property under subpart (d)(1) of this Policy may include ownership, management, promotion, licensing and other transfers, commercialization, and monetization of certain intellectual property by The Research Foundation.

(c) Scope.

(1) This Policy applies to intellectual property created, in whole or in part, by SUNY personnel, students, Affiliates, and Partners.

(2) This Policy sets forth the rights and responsibilities of SUNY and SUNY personnel, students, Partners, and Affiliates in the development, creation, ownership, protection, maintenance, dissemination, marketing, licensing, and monetization of intellectual property.

(3) Creative and course content is beyond the scope of this Policy.

(d) Ownership of Intellectual Property

(1) SUNY Ownership: Subject to the exceptions of (d)(2) below, SUNY shall own, and creator shall promptly disclose and assign to The Research Foundation, Intellectual property created, in whole or in part:

(i) within the scope of the creator's employment by SUNY; or

(ii) through the substantial use of SUNY Resources, unless otherwise agreed in writing.

(2) Creator Ownership: Ownership rights to creative and course content shall be governed by SUNY's Copyright Policy A creator who is personnel may retain ownership rights to intellectual property that is not creative and course content if:

(i) the intellectual property was created exclusively outside the scope of the creator's employment by SUNY; and

(ii) the intellectual property was created through no more than incidental Use of SUNY resources; and

Creators of intellectual property satisfying (d)(2)(a) and (d)(2)(b) above shall submit an External Invention Disclosure Form as prescribed in SUNY's Procedures for Disclosure and Management of Patents and Inventions.

(3) Student Ownership: A creator who is a student and not also personnel may retain ownership rights to intellectual property created through no more than Incidental use of SUNY Resources, subject to those restrictions that may be required by an external sponsor, if any.  A student shall own the copyright to his or her thesis unless an agreement supporting the underlying work specifies otherwise.  Under all circumstances, SUNY shall have an unrestricted royalty-free license to reproduce and disseminate student theses.

(4) Partner Ownership: Where SUNY intends that a partner engage in substantial Use of SUNY Resources, the ownership of intellectual property created by or for the partner in connection with the use or sponsorship of SUNY Resources shall be memorialized in a written agreement between the Partner and SUNY or an affiliate.

(5) Joint Ownership: Intellectual property may be subject to exercise of ownership rights by two or more parties, including SUNY, affiliates, personnel, students, and partners, in which case joint ownership may be appropriate.

(6) Questions as to Ownership: Where any dispute is raised as to ownership of intellectual property, patents, or patent applications under these provisions, the matter shall be referred to the Innovation Policy Board in a manner consistent with SUNY's Procedures for Disclosure and Management of Patents and Inventions.

(e) Royalty Income.

(1) Patentable Inventions: With respect to any patentable invention obtained by or through SUNY or assigned to or as directed by SUNY in accordance with the foregoing provisions, SUNY, in recognition of the meritorious services of the inventor and in consideration of the inventor's assignment of the patentable invention to SUNY, will make provision entitling the inventor and the inventor's heirs or legatees to share in the proceeds from the management and licensing of such patentable invention to the extent of 45 percent of the first $100,000 of net royalty received by SUNY and 40 percent of net royalty thereafter, unless the inventor and SUNY agree otherwise in a written and duly executed instrument, or if this exceeds the limits fixed by applicable regulations of the relevant sponsoring agency, which will control in such cases.

(2) Computer Software and Intellectual property Other Than Patentable Inventions:  With respect to any intellectual property that is not a patentable invention, including computer software that is not a patentable invention, created in the performance of academic or research activities and obtained by or through SUNY or assigned to or as directed by SUNY in accordance with the foregoing provisions, SUNY, in recognition of the meritorious services of the creator and in consideration of the creator's assignment to SUNY, will make provision entitling the creator and the creator's heirs or legatees to share in the proceeds from SUNY's management and licensing to the extent of 45 percent of the first $100,000 of net royalty received by SUNY and 40 percent of net royalty thereafter, unless:

(i) The campus has adopted a local policy requiring reinvestment in support of university research programs, in which case no less than 45 percent of the first $100,000 received by SUNY and 40 percent of such income thereafter shall be directed to the program within which the intellectual property was created; or

(ii) The intellectual property is a work for hire or subject to a conflicting obligation to a sponsor or a partner; or

(iii) The creator and SUNY agree otherwise in a written and duly executed instrument; or

(iv) If this exceeds the limits fixed by applicable regulations of the relevant sponsoring agency, which will control in such cases.

(f) Release and Waiver.

(1) SUNY decisions regarding evaluation, marketing, development, protection, maintenance, or enforcement of intellectual property shall be made in consultation with the creator(s).  SUNY may, at the creator's written request, release its ownership rights in intellectual property to the creator(s), subject to those restrictions that may be required by an external sponsor, if any.

(2) SUNY shall make an initial determination regarding whether to retain title to intellectual property within one year of SUNY's acceptance of the creator's fully disclosed, assigned, and properly executed disclosure statement. SUNY shall proceed with patenting, development, and marketing of the intellectual property as soon as practicable thereafter.  If SUNY elects not to retain title or fails to make such an election within one year, all of SUNY's rights to the intellectual property shall be released upon written request to the creator, subject to those restrictions that may be required by an external sponsor, if any.

(3) For any intellectual property so released to a creator, SUNY shall receive ten percent of the net proceeds to the creator, in recognition of the contribution of the State and people of New York to the support of the research that resulted in the intellectual property.  For purposes of this subpart, (f)(2), "net proceeds" means income realized by the creator from commercialization or other monetization of the intellectual property less reasonable costs incurred directly by the creator for the evaluation, marketing, development, protection, maintenance, or enforcement of the subject intellectual property.

(g) Innovation Policy Board.

(1) The Chancellor shall establish and appoint an Innovation Policy Board of the State University of New York and designate the chair thereof in accordance with the procedures accompanying this Policy. The Innovation Policy Board shall have full powers of organization to undertake periodic review of this Policy and to create, revise, and enhance guidelines and procedures to interpret and implement this policy.

(h) Applicability.

(1) Intellectual property that is fully disclosed and assigned in a properly executed new technology disclosure statement before the effective date of these regulations shall be subject to SUNY's prior Patents and Inventions Policy.

§2. Copyright Policy. Generally, the members of the staff of the University shall retain all rights to copyright and publish written works produced by them. However, in cases where persons are employed or directed within the scope of their employment to produce specific work subject to copyright the University shall have

the right to publish such work without copyright, or to copyright it in its own name. The copyright will also be subject to any contractual arrangements by the University for work in the course of which the writing was done. Staff members will be expected not to allow the privilege to write and retain the right to their work to interfere with their University duties. In those cases where an author desires the help of University facilities, arrangements should be made through the administrative staff of the author's institution in advance with respect to the assistance that may be appropriately given and the equity of the University in the finished work.

## APPENDIX A TO ARTICLE XI PROFESSIONAL TITLES

Assistant Vice-President for Student Affairs
Associate Dean of Students
Career Planning Officer
College Registrar Director
Director of Academic Advisement
Director of Administrative Services
Director of Admissions
Director of Admissions and Assessment
Director of Admissions and Enrollment
Director of Admissions and Enrollment Management
Director of Admissions and Enrollment Planning
Director of Admissions (Equality of Opportunity Program)
Director of Admissions and Financial Aid
Director of Admissions and Interinstitutional Relations
Director of Admissions and Planning
Director of Admissions and Records
Director of Admissions and Student Affairs
Director of Alumni Affairs
Director of Art Museum
Director of Career Planning
Director of Center for Contemporary Arts and Letters
Director of Center for Economic Education
Director of Chemical Laboratories
Director of College Housing
Director of Comparative Development Studies Center
Director of Continuing Education
Director of Cooperative College Center
Director of Counseling
Director of Earth and Space Sciences Lab
Director of Education
Director of Engineering Laboratories

Director of Equality of Opportunity Program
Director of Field Studies
Director of Financial Aid
Director of Fine Arts Center
Director of Great Lakes Laboratory
Director of Home Economics Education
Director of Instructional Resources
Director of International Education
Director of Laboratory Animal Facilities
Director of Libraries
Director of Management Engineering Teaching Hospital
Director of Medical Radiography Teaching Hospital
Director of News Bureau
Director of Nursing
Director of Outdoor Education
Director of Pharmacy
Director of Physical Education
Director of Physical Laboratories
Director of Policy Research
Director of Residential Life
Director of Student Activities
Director of University Systems Analysis
Environmental Health Officer Manager
Student Financial Aids Officer Supervisor of College Nursing Services
Teaching Hospital Director of Biomedical Engineering Teaching Hospital
Teaching Hospital Director of Physical Therapy
Teaching Hospital Director of Rehabilitation Therapy
Teaching Hospital Director of Respiratory Therapy
Teaching Hospital Director of Social Services
Teaching Hospital Medical Records Director

## APPENDIX B TO ARTICLE XI ATHLETIC TITLES

**1– Division I Campuses – Athletic Director and Staff**

Division I Director of Athletics/Athletic Director
Division I Senior Associate Athletic Director
Division I Associate Athletic Director Division I
Senior Assistant Athletic Director Division I Senior
Woman Administrator Division I Assistant Athletic
Director
Division I Director of Athletic Advancement or
Development
Division I NCAA Compliance Director Division I
Athletic Marketing Director Division I Athletic
University Relations Director

*\*RP indicates revenue producing sports.*

**2– Division I Revenue Producing Sports – Coaching Titles**

Division I Head Football Coach (RP)*
Division I Head Basketball Coach (RP)
Division I Associate Head Coach (RP)
Division I Associate Coach (RP)
Division I Football Offensive Coordinator (RP)
Division I Football Defensive Coordinator (RP)
Division I Assistant Head Coach (RP)
Division I First Assistant Coach (RP)
Division I Second Assistant Coach (RP) Division I
Coach (RP)

Division I Assistant Coach (RP)
Division I Coaching Assistant (RP)

**3– Division I Non-revenue producing Sports – Coaching Titles**

Division I Head Coach
Division I Associate Head Coach
Division I Assistant Head Coach
Division I Associate Coach
Division I First Assistant Coach
Division I Second Assistant Coach
Division I Coach
Division I Assistant Coach
Division I Coaching Assistant

**4– Division III Sports**

Director of Athletics
Head Coach
Assistant Head Coach
Coach
First Assistant Coach
Associate Coach
Assistant Coach
Coaching Assistant
Division I Head Coach (Showcase Sports)

## APPENDIX C TO ARTICLE XI FUNDRAISING TITLES

Director of Fundraising
Associate Director of Fundraising

## ARTICLE XII: EVALUATION AND PROMOTION OF ACADEMIC AND PROFESSIONAL EMPLOYEES

## Title A. Evaluation of Academic Employees

§1. Policy. It is the policy of the University to evaluate academic employees.

§2. Purpose. The purpose of evaluation pursuant to this Title shall be the appraisal of the extent to which each academic employee has met his or her professional obligation. Written communication of such appraisal shall be sent to the academic employee concerned. The evaluations conducted pursuant to this Title may be considered by the chief administrative officer of a college and the college administrative  officers in making decisions or recommendations with respect to continuing appointments, renewal of term appointments, promotions, discretionary adjustments to  basic annual salary, and for any other purpose where an academic employee's performance may be a relevant consideration. Nothing contained herein shall prevent the chief administrative officer from taking such action as the chief administrative officer may deem appropriate to the operating requirements of the college.

§3. Applicability. Pursuant to this Title, academic employees may be evaluated; such evaluation, if any, is to be made by the chief administrative officer, or designee.

§4. Criteria. In conducting evaluations pursuant to this Title, the chief administrative officer of the college concerned, or designee, may consider, but shall not be limited to consideration of, the following:

(a)      Mastery of subject matter — as demonstrated by such things as advanced degrees, licenses, honors, awards, and reputation in the subject matter field.

(b)      Effectiveness in teaching — as demonstrated by such things as judgment of colleagues, development of teaching materials, or new courses and student reaction, as determined from surveys, interviews and classroom observation.

(c)      Scholarly ability — as demonstrated by such things as success in developing and carrying out significant research work in the subject matter field, contribution to the arts, publications, and reputation among colleagues.

(d)      Effectiveness of University service — as demonstrated by such things as college and University public service, committee work, administrative work, and work with students or community in addition to formal teacher-student relationships.

(e)      Continuing growth — as demonstrated by such things as reading, research, or other activities to keep abreast of current developments in the academic employee's fields and being able to handle successfully increased responsibility.

## Title B. Promotion of Academic Employees

§1. Procedure. The chief administrative officer of a college, after giving consideration to recommendations of academic employees, including the committees, if any, of the appropriate department or professional area and other appropriate sources in connection with promotion of a specific academic employee, may promote, or recommend to the Chancellor for promotion, such persons as are, in the chief administrative officer's judgment, best qualified. Nothing contained herein shall prevent the chief administrative officer of a college

from taking such promotion action as the chief administrative officer may deem appropriate to the operating requirements of the college.

§2. Criteria. Recommendations of academic employees, or their appropriate committees, or other appropriate sources may consider, but shall not be limited to, consideration of, the following:

(a)     Mastery of subject matter — as demonstrated by such things as advanced degrees, licenses, honors, awards, and reputation in the subject matter field.

(b)     Effectiveness in teaching — as demonstrated by such things as judgment of colleagues, development of teaching materials, or new courses and student reaction, as determined from surveys, interviews, and classroom observation.

(c)     Scholarly ability — as demonstrated by such things as success in developing and carrying out significant research work in the subject matter field, contribution to the arts, publications, and reputation among colleagues.

(d)     Effectiveness of University service — as demonstrated by such things as college and university public service, committee work, administrative work, and work with students or community in addition to formal teacher-student relationships.

(e)     Continuing growth — as demonstrated by such things as reading, research, or other activities to keep abreast of current developments in the academic employee's fields and being able to handle successfully increased responsibility.

§3. Length of Service. Completion of a minimum period of service with the University may be a consideration, but shall not be a qualification for promotion.


## Title C. Evaluation and Promotion of Professional Employees

§1. Policy. It is the policy of the University to evaluate on a regular basis the performance of all professional employees and to give such employees consideration for promotion. The Chancellor or designee shall provide for the administration of systems for evaluation and promotion of such employees.

§2. Definitions.

(a)     "Promotion" shall mean an increase in a professional employee's basic annual salary with a change in title and movement to a higher salary rank, resulting from a permanent significant increase or change in his or her duties and responsibilities as a consequence of movement from one position to another of greater scope and complexity of function at the same or different college.

(b)     "Immediate Supervisor" shall mean the person designated by the chief administrative officer for the purpose of evaluating professional employees.

§3. Promotion.

(a)      Professional employees may apply, and upon such application shall receive consideration, for promotion to vacant professional employee positions in the Professional Services Negotiating Unit, which are to be filled, or for promotion in their present positions, provided, however, that nothing contained herein shall affect or operate to invalidate any promotion or appointment, nor shall anything contained herein be construed to require promotions, or appointments to vacant positions in the Professional Services Negotiating Unit to be made from among professional employees presently employed by the University.

(b)      Prior to making promotions or recommendations to the Chancellor for promotion of professional employees, the chief administrative officer shall review the supervisory evaluation and recommendations relating to such employees, together with the recommendations, if any, of the appropriate professional staff committees established for such purpose.

## §4. Evaluation.

(a)      Each professional employee in the Professional Services Negotiating Unit shall have his or her performance evaluated by the employee's immediate supervisor formally, in writing, once each year during the term of appointment and as changing conditions warrant, except where the employee is serving a final year in the University, following notice of nonrenewal. Such evaluation shall be based on a performance program determined by the immediate supervisor after consultation with the employee, a copy of which shall be given to the employee.

(b)      Performance shall be characterized, in summary, as either satisfactory or unsatisfactory. A professional employee whose performance is characterized as "unsatisfactory" in a written report resulting from a formal evaluation may seek review of such report by the appropriate professional staff committee established for such purpose.

§5. Criteria. As they relate to the duties, responsibilities and objectives of the position in which a professional employee is being evaluated or for which such employee is being considered for promotion, the following criteria may include but not be limited to:

(a)      Effectiveness in performance — as demonstrated, for example, by success in carrying out assigned duties and responsibilities, efficiency, productivity, and relationship with colleagues.

(b)      Mastery of specialization — as demonstrated, for example, by degrees, licenses, honors, awards, and reputation in professional field.

(c)      Professional ability — as demonstrated, for example, by invention or innovation in professional, scientific, administrative, or technical areas; i.e., development or refinement of programs, methods, procedures, or apparatus.

(d)      Effectiveness in University service — as demonstrated, for example, by such things as college and university public service, committee work, and involvement in college or university related student or community activities.

(e)      Continuing growth — as demonstrated, for example, by continuing education, participation in professional organizations, enrollment in training programs, research, improved job performance and increased duties and responsibilities.

§6. Action by Chief Administrative Officer. Notwithstanding anything contained herein, the chief administrative officer of a college may promote or recommend for promotion directly to the Chancellor, or designee, any professional employee in the Professional Services Negotiating Unit at the chief administrative officer's college.

# ARTICLE XIII: LEAVE OF ABSENCE FOR EMPLOYEES IN THE PROFESSIONAL SERVICE

§1. Definitions. Whenever used in this Article:

(a)      The term "calendar year employee" shall mean any employee having a 12-month professional obligation.

(b)      The term "academic year employee" shall mean any academic employee having an academic year professional obligation.

(c)      The term "college year employee" shall mean any professional employee, or any academic employee holding a librarian title, having an annual professional obligation of less than 12 months, except an academic employee holding a librarian title having an academic year professional obligation.

## Title A. Vacation Leave: Calendar Year Employees and College Year Employees

§1. Accrual of Vacation Leave.

(a)      Employees not in the Professional Services Negotiating Unit.
(1)      Full-time calendar year and college year employees shall be eligible to accrue credits for vacation leave at the rate of one and three-quarter days a month for each month, or major fraction thereof during the term of their professional obligation. Part-time calendar year and college year employees shall be eligible to accrue credits on a pro rata basis. On January 2 of each year, one vacation day shall be added to the accrual balance of all employees eligible to accrue vacation leave.

(2)      To accrue credits for vacation leave during each month, eligible full-time employees must be in full-pay status for such month, or major fraction thereof; eligible part-time employees must be in pay status consistent with their part-time service for such month, or major fraction thereof.

(b)      Employees in the Professional Services Negotiating Unit.
(1)      Employees hired prior to July 1, 1982:
(a)      Full-time calendar year and college year employees shall be eligible to accrue credits for vacation leave at the rate of one and three-quarters days a month for each month or major fraction thereof during the term of their professional obligation. On January 2 of each year of the agreement, one vacation day shall be added to the accrual balance of all employees eligible to accrue vacation leave.

(b)      To accrue credits for vacation leave during each month, eligible full-time employees must be in full-pay status for such month, or major fraction thereof.

(2)    Employees hired on or after July 1, 1982:

(a)    Commencing December 1, 1982, calendar year and college year employees who serve on a full-time basis and are appointed effective on or after July 1, 1982, shall be eligible to accrue credits for vacation leave for each month or major fraction thereof during the term of their professional obligation according to the following schedule. On January 2nd of each year of the Agreement, one vacation day shall be added to the accrual balance of all employees eligible to accrue vacation leave.

| Years of Service | Vacation Leave Accrual Rate |
|---|---|
| 0-1 | 1 1⁄4 days per month (15 days) |
| 2 | 1 1⁄3 days per month (16 days) |
| 3, 4, 5 | 1 1⁄2 days per month (18 days) |
| 6 | 1 2⁄3 days per month (20 days) |
| 7 | 1 3⁄4 days per month (21 days) |

(b)    To accrue credits for vacation leave during each month, eligible full-time employees must be in full-pay status for such month, or major fraction thereof.

(c)    Part-time calendar year and college year employees shall be eligible to accrue credits for vacation leave as follows:

(1)    (a)    **Academic Employees who teach:**        **Receive:**

| | |
|---|---|
| 1 course | 1⁄4 day per month |
| 2 courses | 1⁄2 day per month |
| 3 courses | 1 day per month |

(b) Part-time academic employees whose professional obligations, as determined by the college president, are primarily other than teaching classes shall be eligible to accrue vacation leave in accordance with the compensation requirements for part-time professional employees as specified below.

(2)

Effective July 1, 2016:

| **Professional Employees who earn:** | **Receive:** |
|---|---|
| Up to $13,778 | 1⁄4 day per month |
| $13,779 to $20,789 | 1⁄2 day per month |
| $20,790 to $27,797 | 1 day per month |
| $27,798 or higher | 1 1⁄4 days per month |

Effective July 1, 2017:

| **Professional Employees who earn:** | **Receive:** |
|---|---|

| Up to $14,054 | 1⁄4 day per month |
| $14,055 to $21,205 | 1⁄2 day per month |
| $21,206 to $28,353 | 1 day per month |
| $28,354 or higher | 1 1⁄4 days per month |

Effective July 1, 2018:

| **Professional Employees who earn:** | **Receive:** |
| --- | --- |
| Up to $14,622 | 1⁄4 day per month |
| $14,623 to $22,062 | 1⁄2 day per month |
| $22,063 to $29,498 | 1 day per month |
| $29,499 or higher | 1 1⁄4 days per month |

Effective July 1, 2020:

| **Professional Employees who earn:** | **Receive:** |
| --- | --- |
| Up to $14,914 | 1⁄4 day per month |
| $14,915 to $22,503 | 1⁄2 day per month |
| $22,504 to $30,088 | 1 day per month |
| $30,089 or higher | 1 1⁄4 days per month |

Effective July 1, 2021:

| **Professional Employees who earn:** | **Receive**: |
| --- | --- |
| Up to $15,212 | 1⁄4 day per month |
| $15,213 to $22,953 | 1⁄2 day per month |
| $22,954 to $30,690 | 1 day per month |
| $30,691 or higher | 1 1⁄4 days per month |

(c)  Employees who serve on a part-time basis and are initially appointed or commence part-time service on or after July 1, 2018, shall be eligible to accrue vacation leave for each month or major fraction thereof during the term of their professional obligation according to the following schedule.

Part-time calendar year and college year employees shall be eligible to accrue vacation leave as follows:

| **Academic Employees who teach**: | **Receive**: |
| --- | --- |
| 1 course | 1⁄4 day per month |
| 2 courses | 1⁄2 day per month |
| 3 courses | 1 day per month |

Part-time academic employees whose professional obligations, as determined by the college president, are primarily other than teaching classes shall be eligible to accrue vacation leave in accordance with the requirements for part-time professional employees as specified below.

| Employees who work: | Receive: |
|---|---|
| .20 to < .40 FTE | 1⁄4 day per month |
| .40 to < .60 FTE | 1⁄2 day per month |
| .60 to < .80 FTE | 1 day per month |
| .80 to < §1.00 FTE | 1 1/4 day per month |

(3)     To accrue credits for vacation leave during each month, eligible part- time employees must be in pay status consistent with their part-time service for such month, or major fraction thereof. A part time employee who is employed on a fee- for-service, per diem, or hourly basis, whose professional obligation is less than a day of work per week, shall not be considered an eligible employee for purposes of accrual of vacation leave.

## §2. Maximum Accumulation.

(a)     Employees not in the Professional Services Negotiating Unit. Accumulations of vacation leave credits by members of the professional staff not in a negotiating unit established pursuant to Article 14 of the Civil Service Law (managerial/confidential employees) may exceed 40 days within any calendar year; pro-vided, however, such accumulations shall not exceed 40 days as of the first day of any calendar year. In the case of part-time employees who accrue vacation leave credits on a pro rata basis, the maximum accumulation shall also be determined on a pro rata basis. In the event of death, retirement, resignation or other non-disciplinary separation from university service, or change of the period of professional obligation from calendar year or college year to academic year, an employee shall be compensated for such accumulated and unused vacation leave credits not to exceed a maximum of 30 days, such payment shall be computed on the basis of the basic annual salary otherwise payable. In the case of death while in service, such payment shall be made to the deceased employee's estate or as provided pursuant to the Estates, Powers and Trusts Law. No payment pursuant to this subdivision shall be made if the employee moves to a position in another State agency that is covered by the attendance rules for employees in the State classified service.

(b)     Employees in the Professional Services Negotiating Unit. On January 1 of each calendar year, an employee's accrued vacation leave credits may not exceed 40 days. An employee's total vacation leave credits may exceed 40 days during the calendar year, but the employee must use the amount over 40 days or forfeit it on the last day of the calendar year. In the event of death, retirement, resignation, or other non-disciplinary separation from University service, or change of the period of professional obligation from calendar year or college year to academic year, an employee shall be compensated for such accumulated and unused vacation leave credits not to exceed a maximum of 30 days, such payment shall be computed on the basis of the basic annual salary otherwise payable. In the case of death while in service, such payment shall be made to the deceased employee's estate or as provided pursuant to the Estates, Powers, and Trusts Law. No payment pursuant to this subdivision shall be made if the employee moves to a position in another State Agency that is covered by the attendance rules for employees in the State classified service.

## §3. Authorization for Use. Vacation shall be taken at such times as shall be approved by the chief administrative officer. Where the chief administrative officer, or designee, denies an employee's request for vacation the employee, upon request, shall be given the reasons for such denial in writing.

§4. Charges. When an employee is on vacation, the employee shall not be required to charge vacation leave for any day upon which the employee would not have been required to be available to work had the employee not been on vacation.


## Title B. Vacation Leave: Academic Year Employees

§1. Accrual of Vacation Credit. Academic year employees shall not accrue credit for vacation leave and shall not be granted any such leave.


## Title C. Sick Leave

§1. Accrual.

(a)      Employees not in the Professional Services Negotiating Unit. Full-time employees shall be eligible to accrue credits for sick leave at the rate of one and three-quarter days a month for each month, or major fraction thereof, during the term of their professional obligation. Part-time employees shall be eligible to accrue such credits on a pro rata basis. To accrue credit for sick leave during each month, full-time employees must be in full pay status for such month or major fraction thereof; eligible part-time employees must be in pay status consistent with their part-time service for such month or fraction thereof.

(b)      Employees in the Professional Services Negotiating Unit.
(1)      Employees hired prior to July 1, 198§2. Full-time employees shall be eligible to accrue credits for sick leave at the rate of one and three-quarters days a month for each month, or major fraction thereof, during the term of their professional obligation. To accrue credit for sick leave during each month, full-time employees must be in full-pay status for such month or major fraction thereof.

(2)      Employees hired on or after July 1, 198§2. Commencing December 1, 1982, employees who serve on a full-time basis and are appointed effective on or after July 1, 1982, shall be eligible to accrue credits for sick leave for each month, or major fraction thereof, during the term of their professional obligation as follows:

| Years of Service | Sick Leave Accrual Rate |
|---|---|
| 0-1 | 1 1⁄4 days per month (15 days) |
| 2 | 1 1⁄3 days per month (16 days) |
| 3, 4, 5 | 1 1⁄2 days per month (18 days) |
| 6 | 1 2⁄3 days per month (20 days) |
| 7 | 1 3⁄4 days per month (21 days) |

(3)      To accrue credits for sick leave during each month, full-time employees must be in full-pay status for such month or major fraction thereof.
(4)      Part-time academic year, calendar year, and college year employees shall be eligible to accrue credits for sick leave as follows:

(a)      **Academic Employees who teach:**      **Receive:**

| 1 course | 1⁄4 day per month |
| 2 courses | 1⁄2 day per month |
| 3 courses | 1 day per month |

Effective July 16, 2016:

| **Professional Employees who earn:** | **Receive:** |
| Up to $13,778 | 1⁄4 day per month |
| $13,779 to $20,789 | 1⁄2 day per month |
| $20,790 to $27,797 | 1 day per month |
| $27,798 or higher | 1 1⁄4 days per month |

Effective July 1, 2017:

| **Professional Employees who earn:** | **Receive:** |
| Up to $14,054 | 1⁄4 day per month |
| $14,055 to $21,205 | 1⁄2 day per month |
| $21,206 to $28,353 | 1 day per month |
| $28,354 or higher | 1 1⁄4 days per month |

Effective July 1, 2018:

| **Professional Employees who earn:** | **Receive:** |
| Up to $14,335 | 1⁄4 day per month |
| $14,336 to $21,629 | 1⁄2 day per month |
| $21,630 to $28,920 | 1 day per month |
| $28,921 or higher | 1 1⁄4 days per month |

Effective July 1, 2019:

| **Professional Employees who earn:** | **Receive:** |
| Up to $14,622 | 1⁄4 day per month |
| $14,623 to $22,062 | 1⁄2day per month |
| $22,063 to $29,498 | 1 day per month |
| $29,499 or higher | 1 1⁄4 days per month |

Effective July 1, 2020:

| **Professional Employees who earn:** | **Receive:** |
| Up to $14,914 | 1⁄4 day per month |
| $14,915 to $22,503 | 1⁄2day per month |
| $22,504 to $30,088 | 1 day per month |
| $30,089 or higher | 1 1⁄4 days per month |

Effective July 1, 2021:

| **Professional Employees who earn:** | **Receive:** |

Up to $15,212       1⁄4 day per month
$15,213 to $22,953       1⁄2 day per month
$22,954 to $30,690       1 day per month
$30,691 or higher       1 1⁄4 days per month

(b)  Employees who serve on a part-time basis and are initially appointed or commence part-time service on or after July 1, 2018, shall be eligible to accrue vacation leave for each month or major fraction thereof during the term of their professional obligation according to the following schedule.
Part-time calendar year and college year employees shall be eligible to accrue vacation leave as follows:

| **Academic Employees who teach:** | **Receive:** |
| --- | --- |
| 4 course | 1⁄4 day per month |
| 5 courses | 1⁄2 day per month |
| 6 courses | 1 day per month |

Part-time academic employees whose professional obligations, as determined by the college president, are primarily other than teaching classes shall be eligible to accrue vacation leave in accordance with the requirements for part-time professional employees as specified below.

| **Employees who work:** | **Receive:** |
| --- | --- |
| .20 to < .40 FTE | 1⁄4 day per month |
| .40 to < .60 FTE | 1⁄2 day per month |
| .60 to < .80 FTE | 1 day per month |
| .80 to < §1.00 FTE | 1 1/4 day per month |

To accrue credit for such leave during each month, eligible part-time employees must be in pay status consistent with their part-time service for such month, or major fraction thereof. A part-time employee who is employed on a fee-for-service, per diem, or hourly basis, whose professional obligation is less than a day of work per week, shall not be considered an eligible employee for purposes of accrual of sick leave.

§2. Other Sick Leave Credits. Upon appointment to a position in the unclassified service, an employee shall be credited with any sick leave credits accrued pursuant to the Attendance Rules for the classified service.

§3. Maximum Accumulation. Accumulation of sick leave credits pursuant to sections 1 and 2 of this Title shall not exceed 200 days, provided, however, in the case of part-time employees who accrue sick leave on a pro rata basis, the maximum accumulation shall also be determined on a pro rata basis.

§4. Authorization for Use.

(a)      For purposes of this section 4, "temporary disability" shall be defined as any temporary mental or physical impairment of health, including such an impairment resulting from pregnancy, that disables an employee from the full performance of duty.

(b)      The chief administrative officer shall permit employees who are unable to perform their duties because of claimed temporary disability to use any and all sick leave credits that they have accumulated pursuant to sections 1 and 2 of this Title.

(c)      The chief administrative officer may at any time require an employee to furnish suitable medical evidence from the employee's physician to substantiate a claimed temporary disability. In the absence of such suitable medical evidence, the chief administrative officer may require an employee to be examined by a physician selected by the college at its expense. In the event medical evidence does not substantiate a claimed temporary disability, use of sick leave credits shall be disallowed and the employee shall be placed on leave without pay.

(d)      Subject to prior approval of the chief administrative officer, an employee shall be allowed to use up to a maximum of 30 days of sick leave from July 2 of each year to July 1 of the succeeding year accumulated pursuant to sections 1 and 2 of this Title for absences from work necessitated by a death or illness in the employee's immediate family. The chief administrative officer's approval of requests for sick leave for purposes described in this subdivision shall not be unreasonably withheld.

(e)      The chief administrative officer may require an employee who has been absent due to a temporary disability, prior to and as a condition of return to work, to be examined, at the expense of the college, by a physician selected by the College, to establish that the employee is no longer disabled and that a return to work will not jeopardize the health of other employees. Such examination may not be regularly required.

(f)      Subject to prior approval of the chief administrative officer, an employee certified as visually handicapped by the New York State Commission for the Blind and Visually Handicapped shall be allowed to use, up to a maximum of 26 days in any one calendar year, sick leave accumulated pursuant to sections 1 and 2 of this Title for the purpose of obtaining a guide dog and required training related thereto. Upon written request, the chief administrative officer also may, in the chief administrative officer's discretion, advance up to 26 days of sick leave for the purposes described in this paragraph to such certified employee who has exhausted accumulated leave credits, provided the cumulative total of sick leave credits charged and/or advanced for this purpose does not exceed 26 days in any one calendar year. Such advanced sick leave credits shall be repaid, as soon as practicable after the employee's return to duty, from subsequent accumulations of time credits. The outstanding unrepaid sick leave credits advanced to an employee under the provisions of this paragraph shall not at any time exceed a total of 26 days. The chief administrative officer's approval of requests for sick leave for purposes described in this paragraph shall not be unreasonably withheld.

§5. Additional Sick Leave.

(a)      The chief administrative officer may grant an employee sick leave in addition to that provided by sections 1 and 2 of this Title. Such additional sick leave may be at full salary, or such part thereof as the chief administrative officer may determine, or without salary. Additional sick leave at full or partial salary, together with use of any sick leave provided by sections 1 and 2 of this Title, shall not exceed a total of six calendar months. Additional sick leave without salary shall not exceed one calendar year. Additional sick leave at full or partial salary pursuant to this paragraph shall not be approved until all sick leave credits accumulated pursuant to sections 1 and 2 of this Title have been exhausted.

(b)      The chief administrative officer may grant an employee sick leave in addition to that provided by paragraph (a) of this section. Such additional sick leave may be at full salary or such part thereof as the chief administrative officer may determine, or without salary. The Chancellor may require submission of such leave requests by an institution for approval when the Chancellor deems it in the best interest of the University.

(c)      Prior to being granted additional sick leave provided by this section, an employee may be required to furnish such medical evidence from the employee's physician as may be requested or submit to medical examination by a physician selected by the college or University at its expense.

§6. Charges. When an employee is on sick leave, the employee shall not be required to charge sick leave credit for any day upon which the employee would not have been required to be available to work had the employee not been on sick leave.


## Title D. Holiday Leave

### §1. Holiday Leave.

(a)      A calendar year or college year employee shall be eligible to observe the following days prescribed by law as holidays: New Year's Day, Martin Luther King Day, Lincoln's Birthday, Washington's Birthday, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Election Day, Veterans Day, Thanksgiving Day, and Christmas Day. The college chief administrative officer may designate two holidays as floating holidays in lieu of the holidays set forth above. The college chief administrative officer may designate an alternate date on which one of the holidays is to be observed. If a second holiday is designated, the employee may select a date on which to observe the second holiday, with the approval of the employee's supervisor and consistent with the operating needs of the campus. The employee must observe such second holiday before the beginning of the next academic year. The college chief administrative officer's designation shall be announced following consultation with the certified representative of employees in the professional service in September of the academic year.

(b)      An employee who is eligible to observe holidays shall be granted a compensatory day off when any holiday specified in subdivision (a) of this section falls on a Saturday, a Sunday, or a pass day.

(c)      An employee who is eligible to observe holidays who is required to work on a holiday shall be granted a compensatory day off. An employee who is eligible to observe Thanksgiving or Christmas, and who is required to work on such holiday, shall be granted one and one-half compensatory days off.

(d)      For employees in the professional services bargaining unit, effective July 1, 2019, an employee who is eligible to observe holidays who is required to work on New Year's Day shall be granted a compensatory day off or, at the employee's election, additional compensation at the rate of one-tenth of the employee's bi-weekly rate for each such full day worked in lieu of the compensatory day off. An employee who is eligible to observe Thanksgiving or Christmas, and who is required to work on such holiday, shall be granted one and one-half compensatory days off or, at the employee's election, additional compensation at the rate of three-twentieths of the employee's bi-weekly rate for each such full day worked in lieu of compensatory time off.

(1) Compensatory time or additional compensation shall be pro-rated for less than a full day of work.  Compensatory time or additional compensation shall be pro-rated for regularly scheduled work in excess of the standard workday worked on a holiday.  The additional compensation rate shall include all payments normally included in the bi-weekly gross salary.

(e)      Compensatory days off shall be scheduled at times mutually convenient to the employee and the University, and used within one year of accrual or forfeited.

## Title E. Sabbatical Leave

§1. Policy. Sabbatical leaves for professional development may be made available to members of the professional staff who meet the requirements set forth below. The objective of such leave is to increase an employee's value to the University and thereby improve and enrich its program. Such leave shall not be regarded as a reward for service nor as a vacation or rest period occurring automatically at stated intervals.

§2. Purpose. Sabbatical leaves shall be granted for planned travel, study, formal education, research, writing, or other experience of professional value.

§3. Eligibility. Academic employees having continuing appointments and college administrative officers not in a negotiating unit established pursuant to Article XIV of the Civil Service Law who have completed at least six consecutive years of service within the University or who, if they previously have had a sabbatical leave, have completed at least six consecutive years of service within the University from the date of return from their last sabbatical leave, shall be eligible for sabbatical leave. In computing consecutive years of service for the purpose of this section, periods of vacation leave and periods of sick leave with salary shall be included; periods of leaves of absences, other than vacation and sick leave with salary, and periods of part-time service shall not be included but shall not be deemed an interruption of otherwise consecutive service.

§4. Terms and Conditions. Sabbatical leaves may be granted for periods of one year at rates not to exceed one-half basic annual salary or for periods of one-half year at rates not to exceed full basic annual salary. Eligible employees on sabbatical leave may, with the prior approval of the chief administrative officer, accept fellowships, grants-in-aid, or earned income to assist in accomplishing the purposes of their leaves. In such cases, the chief administrative officer may adjust the sabbatical leave salaries to reflect such income, either prior to or during the periods of such leaves, provided, however, that in no case shall sabbatical leave salary be reduced if total earnings are less than full salary.

§5. Applications. Applications for sabbatical leaves shall be submitted to the chief administrative officer as far in advance as possible of the requested effective date of the leave, but in no event later than six months in advance of such date unless such requirement is expressly waived by the chief administrative officer. Each application shall include a statement outlining the program to be followed while on sabbatical leave, indicating any prospective income, stating that the applicant will continue as a member of the professional staff for a minimum of one year upon return, and stating that upon return the applicant will submit to the chief administrative officer a detailed report of professional activities and accomplishments while on sabbatical leave.

§6. Approval. Consistent with provisions of section 4 of this Title, the chief administrative officer may approve such sabbatical leave as the chief administrative officer deems appropriate and such leave shall be reported to the Chancellor.

§7. Leave Credits. Vacation leave and sick leave credits shall not be accrued or used during sabbatical leave.


## Title F. Other Leaves

§1. Approval.

(a)      Other Leaves for Academic Employees. The chief administrative officer may grant other leaves of absence for employees at full salary or reduced salary, or without salary, for the purpose of professional development, acceptance of assignments of limited duration with other universities and colleges, governmental agencies, foreign nations, private foundations, corporations and similar agencies, as a faculty member, expert, consultant, or in a similar capacity, or for other appropriate purposes consistent with the needs and interests of the University. Leave of absence without salary may also be granted under appropriate circumstances, for the purpose of child care. Leaves of absence at full or reduced salary pursuant to provisions of this section shall be reported to the Chancellor. The Chancellor may require submission of such leave requests by an institution for his approval when he deems it in the best interest of the University.

(b)      Leaves of Absence for Professional Employees and Other Professional Staff. The chief administrative officer may grant other leaves of absence for employees at full salary or reduced salary, or without salary, for the purpose of professional development, acceptance of assignments of limited duration with other universities and colleges, governmental agencies, foreign nations, private foundations, corporations and similar agencies, as a faculty member, expert, consultant or in a similar capacity, or for other appropriate purposes consistent with the needs and interests of the University. Leave of absence without salary may also be granted under appropriate circumstances, for the purpose of child care. Leaves of absence at full or reduced salary pursuant to provisions of this section shall be reported to the Chancellor. The Chancellor may require submission of such leave requests by an institution for approval when the Chancellor deems it in the best interest of the University.

§2. Application. Applications for such leaves of absence shall be made to the chief administrative officer. Each such application shall include a statement of the purpose for which the leave is requested, its anticipated duration and its values to the applicant and the University.

§3. Leave Credits. Vacation leave and sick leave credits shall not be accrued or used during a period of leave pursuant to provisions of this section.


## Title G. Disability Leave

§1. Disability Leave.

(a)      Upon being discontinued from service in accordance with provisions of the State University Group Disability Insurance Program, an employee shall be granted a leave without pay for disability and shall be continued on such leave without pay until the disability ceases, the disability benefits would cease under the terms outlined in the Group Long Term Disability Insurance Certificate, regardless of eligibility , or death, whichever event occurs first. Notwithstanding the foregoing, after five calendar years on such leave, an employee shall not have any right or entitlement to be restored to regular employment status. For purposes of the State University Group Disability Insurance Program, the chief administrative officer may require an employee to be examined by a physician selected by the college at its expense. Determination that a disability exists may be made by the chief administrative officer upon the advice of the college's examining physician. Notwithstanding the failure of an employee to cooperate with the college's examining physician, a determination that a disability exists may be made by the chief administrative officer upon advice of the college's examining physician that there are reasonable grounds to assume that a disability benefit would be payable in accordance with the State University Group Disability Insurance Program. If the chief administrative officer determines, in accordance with the provisions of this section, that a disability exists, the employee must apply for disability benefits under the State University Group Disability Insurance Program. In the event the employee does not apply for disability benefits, the employee shall be placed on disability leave without pay.

If, upon a finding that an employee is not disabled, the disability insurance carrier disapproves an employee's application for benefits, the employee shall be restored to regular employment status.

(b)     Discontinuation from Service of Employees not Covered by the State University Group Disability Insurance Program. Upon being discontinued from service as a result of a disability that prevents performance of the employee's duties, an employee shall be granted a leave without pay until the disability ceases, the disability benefits would cease under the terms outlined in the Group Long Term Disability Insurance Certificate, regardless of eligibility, or death, whichever event occurs first. Notwithstanding the foregoing, after five calendar years on such leave, an employee shall not have any right or entitlement to be restored to regular employment status. For purposes of determining the existence of such a disability, the chief administrative officer may require an employee to be examined by a physician selected by the college at its expense. Determination that a disability exists may be made by the chief administrative officer upon the advice of the college's examining physician. Notwithstanding the failure of an employee to cooperate with the college's examining physician, a determination that a disability exists may be made by the chief administrative officer upon advice of the college's examining physician that there are reasonable grounds to assume that a disability exists that would prevent an employee from performing the employee's duties. If the chief administrative officer determines, in accordance with the provisions of this section, that such a disability exists, the employee shall be placed on a disability leave without pay. Where appropriate, the chief administrative officer, after consulting with the college's examining physician, may refer the employee to an employee assistance program or to other service agencies. The employee, however, shall be permitted to use any and all sick leave credits which have been accumulated pursuant to Title C, sections 1 and 2 of this Article and may request additional sick leave pursuant to Title C, section §5. An employee who has been placed on disability leave without pay pursuant to this section may subsequently request to be restored to regular employment status. Such request must be submitted in writing to the chief administrative officer accompanied by suitable medical evidence from the employee's physician that the employee no longer has a disability that would prevent performance of the employee's duties. Following receipt of such submissions, the chief administrative officer may require the employee to be examined by a physician selected by the college at its expense prior to making a determination whether to restore the employee to regular employment status. Upon a finding by the college's examining physician that the employee no longer has a disability that would prevent performance of the employee's duties, the employee shall be restored to regular employment status. Upon a finding by the college's examining physician that the employee continues to have a disability that prevents performance of the employee's duties, the chief administrative officer may require the employee to be examined by a physician from the New York State Department of Civil Service Employee Health Service at the college's expense prior to making a determination whether to restore the employee to regular employment status. The determination of whether to restore the employment status may be made by the chief administrative officer upon the advice of the physician from the employee health service concerning the existence of a disability which would prevent the employee from performing the employee's duties.


## Title H. Study Leaves for the Chancellor and Chief Administrative Officers

§1. Third Year of Service. The Board of Trustees may grant the Chancellor and the chief administrative officer of each college a two-month study leave at full salary during every third year of service subsequent to the date of initial appointment or the date of the last leave taken pursuant to this Title. Vacation leave accrued for the third year of service shall be credited toward the study leave. Such leave shall be for the specific purpose of improving the administrative and academic performance of the Chancellor and of the chief administrative officer.

§2. *Five Years of Service.* The Board of Trustees may grant the Chancellor and the chief administrative officer of each college a one-semester study leave or equivalent at full salary at the end of a period of five years of service subsequent to the date of initial appointment or the date of the last leave taken pursuant to this Title. Vacation leave accrued during the fifth year of service shall be credited toward the study leave. Such leave shall be for the specific purpose of improving the administrative and academic performance of the Chancellor and of the chief administrative officer.

## Title I. Attendance Records

§1. *Attendance Records.* Employees shall be required to certify their presence and record any absences on forms to be provided by the State. Employees shall also be required to record on such forms any charges to or accruals of vacation or sick leave credits. Such forms shall be submitted to the chief administrative officer, or designee, for review on a monthly basis.

## Title J. Other Absences

§1. *Unauthorized Absence.*

    (a)    Any employee absent from work without authorization shall be placed on leave without pay. In the event an employee's unauthorized absence continues for 10 consecutive work days and the employee has not provided a written explanation for such absence to the chief administrative officer by the close of business of the tenth workday following the commencement of such unauthorized absence, the employee's leave without pay status shall continue for the remainder of the semester in effect on the tenth consecutive workday of absence where the college has hired a replacement for the employee.

    (b)    If the unauthorized absence without written explanation continues for a total of 30 consecutive workdays the employee shall be deemed to have resigned.

    (c)    If, prior to being deemed to have resigned, an employee provides suitable medical evidence in accordance with Title C, section 4, subdivision (c) of this Article, which substantiates a claim of temporary disability, the employee may be placed on sick leave. Any sick leave under this subdivision shall commence upon substantiation of a claim of temporary disability by suitable medical evidence.

§2. *Absence.* Extraordinary Circumstances. An employee who has reported for work and, because of extraordinary circumstances beyond the employee's control, for example, extreme weather conditions or physical plant breakdown, is directed by the chief administrative officer, or designee, to leave work, shall not be required to charge such directed absence during such day against leave accruals. Any such release of employees shall not create any right to equivalent time off by employees who are not directed to leave work.

## Title K. Limitations

§1. *Term Appointments.* Nothing contained herein shall be deemed to extend the term of appointment of employees, and all leaves of absence shall, in any event, terminate upon the expiration of such appointment.

# ARTICLE XIV: TERMINATIONS OF SERVICE

## Title A. Termination at Will

§1. Temporary Appointments. The services of academic and professional employees having temporary appointments may be terminated at will by the chief administrative officer of the college concerned, not-withstanding any other provision of this Article XIV. There shall be no right of appeal from such a termination.

## Title B. Automatic Termination

§1. Term Appointments. The services of academic and professional employees having term appointments shall cease automatically at the end of their specified terms. There shall be no right of appeal from a nonrenewal of a term appointment.

## Title C. Termination for Age or for Physical or Mental Incapacity

§1. Retirement. The services of academic and professional employees may be terminated at any time for age or for physical or mental incapacity in accordance with Article XV, Title D, of these Policies.

# ARTICLE XV: RETIREMENT

## Title A. Membership in Retirement Systems

§1. Requirement. Members of the professional staff, other than persons having temporary appointments, shall, if eligible, become members of either the New York State Employees Retirement System or the New York State Teachers Retirement System, or shall elect the Optional Retirement Program.

## Title B. Voluntary Retirement

§1. Notice. Members of the professional staff who wish to retire at an age earlier than 70 under the provisions of the retirement systems of which they are members shall, prior to applying for such retirement, notify and consult with the chief administrative officer of the college concerned with respect to the effective date of such retirement.

## Title C. Retirement for Physical or Mental Incapacity

§1. Policy. Professional staff employees may be retired and their services terminated by the Board of Trustees, after receipt of the recommendation of the Chancellor and upon medical advice, for mental or physical incapacity that prevents such persons from adequately performing their duties.

## Title D. Privileges after Retirement

§1. Emeritus Status. Members of the University faculty who retire in good standing, in accordance with the provisions of Title B or C of this Article shall be entitled to append the term "Emeritus" to the title of their academic or administrative post after the time of retirement.

§2. Privileges. Emeritus rank shall carry with it such of the following privileges which, in the judgment of the chief administrative officer, are feasible: use of library and study facilities, use of office and laboratory space, eligibility for research grants, and representation of the University in professional groups.

# ARTICLE XVI: PLAN FOR THE MANAGEMENT OF CLINICAL PRACTICE INCOME

§1. Policy. It is the policy of the University that each school of medicine and dentistry and the College of Optometry shall have a plan for the management of clinical practice income that is consistent with the requirements set forth in this Article.

§2. Development of Plan. The Chancellor shall take all necessary steps to develop and implement plans for the management of clinical practice income consistent with this Article and with the provisions of the applicable collective bargaining agreement. Nothing contained in the plan shall allow actions to be taken by the individual plan members or any governing board that are inconsistent with the educational mission of the college.

§3. Implementation of Plan. Any plan that is determined pursuant to such a collective bargaining agreement to be consistent with the requirements of section 4 of this Article shall be implemented by the Chancellor as soon as the governing board of such plan is elected pursuant to section 4 (c) (2) of this Article or convened by the Chancellor should an election not occur, or within 45 days after a determination made pursuant to the applicable collective bargaining agreement, whichever is earlier. The Chancellor shall provide written certification to the Director of the State Division of the Budget, the Director of the Governor's Office of Employee Relations, the State Comptroller, and the certified representative of employees in the Professional Services Negotiating Unit that any plan consistent with the requirements of section 4 of this Article has been implemented.

§4. Plan Requirements. Any clinical practice management plan shall be consistent with the following requirements:

(a)     Definitions.
        (1)     "Chief administrative officer" shall mean the president. The president shall assure that no actions are taken under the clinical practice plan that are inconsistent with the educational mission of the college.

        (2)     "Clinical practice" shall mean the act of providing all forms of medical and health care, including patient consultations, and the act of performing clinical investigation involving patients, for which acts a fee for professional service is customarily charged. Clinical practice may be organized along departmental, multi- departmental, or institutional-wide lines. Clinical practice shall be restricted to facilities of a health sciences or medical center, school of dentistry, College of Optometry, or affiliated institution except:

(i)      For unusual circumstances or consultation;

(ii)     During periods of vacation, in the case of calendar year employees;

(iii)    During the period following the completion of professional obligation, in the case of academic year employees; and

(iv)    During such other times mutually agreed upon by the employee and the chief administrative officer or designee after discussion of elements, including but not necessarily limited to institutional objectives and the employee's commitments as a faculty member to instruction, research, clinical service, and facility utilization.

(3)      "Clinical practice income" shall mean the income from fees for professional services rendered in connection with clinical practice, including salaries paid by affiliated institutions, but excluding any income derived from clinical practice at facilities other than those of a health sciences or medical center, school of dentistry, College of Optometry, or affiliated institution:

(i)      During an employee's vacation, in the case of calendar year employees;

(ii)     During the period following the completion of professional obligation, in the case of academic year employees; and

(iii)    During such other times as may be mutually agreed upon by the employee and the chief administrative officer or designee after discussion of elements, including but not necessarily limited to institutional objectives and the employee's commitments as a faculty member to instruction, research, clinical service, and facility utilization. State basic annual salary, research grants, royalties, honoraria for lectures, and income unrelated to patient care are not considered clinical practice income. The chief administrative officer or designee may, in his or her discretion, waive from inclusion in clinical practice income salaries paid by affiliated institutions to specific employees, if in his or her judgment it is in the best interest of the institution, provided, however, such salaries shall be included in determining maximum allowable compensation.

(4)      "Basic annual salary," for the limited purpose of this Article, shall mean that salary which is obtained from the direct appropriation of state monies for the purpose of paying wages that may not exceed the maximum state salary for an employee's academic rank.

(b)      Participation in a plan for the management of clinical practice.

(1)      Any employee who meets all of the following criteria must be a member of a plan   for the management of clinical practice:

(i)      Serves in a position of academic or qualified academic rank in a school of medicine or dentistry in a State University health sciences or medical center, or College of Optometry, and who is not an intern, resident, or fellow.

(ii)     Performs the professional clinical practice of medicine, dentistry, or optometry for which a fee for professional services is customarily charged, or a salary is customarily paid.

(2)     The governing board may make provision for voluntary memberships for persons not required to participate but whose membership would be mutually beneficial.

(3)     The chief administrative officer or designee, with the approval of the Chancellor, may grant exemptions from membership to employees whose primary employment is not with the State University of New York and who have only a limited connection with the State University.

(c)     Governing Board.

(1)     Management of the plan. Subject to the requirements contained in section 4 of this Article, the day-to-day management of any plan shall rest in the governing board of the plan including, but not limited to, authority to review accounts, transmit reports to the chief administrative officer, and establish supplementary guidelines for expending clinical practice income. For purposes of auditing and accounting, the governing board may, where appropriate, develop procedures to preserve patient confidentiality. Minutes of governing board meetings shall be circulated to each department and be available, at any reasonable time, for inspection by members of the practice plan. The members of the governing board shall be accountable to the University to implement and carry out its responsibilities set forth in this section.

(2)     Composition and election. The governing board shall consist of one person from each clinical department in the school or college to which the plan pertains, elected once a year by majority vote of the members of such department who are required to be members of a plan for the management of clinical practice, plus one at-large member from the basic science faculty elected by a majority vote of the members of such faculty. Procedures for the election of the governing board, which shall provide for secret ballots and equal voting rights for eligible voters, shall be established by the college president and the chapter president of the certified representative of employees in the Professional Services Negotiating Unit, subject to the approval of the Chancellor, no later than 15 days from the date a plan is received by the Chancellor for implementation after a determination that the plan is consistent with the requirements of this section. Provided, however, if an election has not been conducted 45 days following a determination that a plan is consistent with the requirements of this section, the Chancellor shall convene a governing board.

(3)     Ex officio members. The chief administrative officer, or designee, and the dean shall be nonvoting members of the governing board.

(4)     Subject to the requirements contained in this section, the governing board shall have the power to develop and promulgate operating procedures for the orderly transaction of its functions, including, but not limited to quorums, officers, terms of office, meetings, and other items consistent with the requirements of this section.

(d)     Accounting. Each plan shall provide for a central billing and accounting system under the control of the governing board. The accounting system shall provide a means to record transactions respecting collection and disbursement of clinical practice income including, but not limited to, such transactions involving a plan member, department, school of medicine or dentistry, College of Optometry, health sciences center, or medical center. All accounts shall be available at any reasonable time for inspection by the Chancellor, or designee, the chief administrative officer, or designee, and representatives of the State Division of the Budget and Department of Audit and Control. Monthly reports shall be forwarded to the Office of the Vice-Chancellor for Finance and Business as determined by that office. The governing board shall provide copies of the annual audit to plan members at least once each year. The governing board, or in the case of a plan organized along departmental lines, the

department, shall provide each plan member an account of the amounts billed and collected as a result of the plan member's clinical practice and a summary of those accounts for which payment has not been received. Any professional or academic employee who is a plan member may authorize, on her or his behalf, the duly certified employee organization representing the Professional Services Negotiating Unit to request such information no more frequently than twice each year. Each plan member shall be required annually to provide such data as may be necessary for the institution to comply with the appropriate sections of the Public Health Law. Where clinical practice at an institution is organized along departmental lines, the Chancellor shall approve a departmental billing system if the Chancellor determines it adequately complies with the above standards. In no event shall individual plan members be permitted to bill directly for fees for professional services.

(e)       Auditing. All accounts shall be audited annually by independent auditing firms chosen by the governing boards to determine whether the operations of each plan for the management of clinical practice have been conducted in accordance with generally accepted accounting principles, the provisions of the plan for the management of clinical practice, and supplementary guidelines for disbursement of clinical practice income developed by a governing board.

(f)       Maximum allowable compensation. At least once annually, the chief administrative officer or designee shall provide to each employee who is required to be a member of the clinical practice plan a statement in writing that sets forth the maximum allowable compensation, which such employee may earn from all sources, including state basic annual salary, clinical practice income as previously defined, salary from an affiliated hospital and research grants, but excluding royalties, honoraria, and income unrelated to patient care, provided, however, that compensation from a research sponsor shall be subject to the regulations of the sponsor. Such maximum allowable compensation shall be arrived at by the chief administrative officer or designee after consultation with the employee, the employee's department chairperson, and the dean, and after considering the employee's present commitments and future goals in teaching, patient care, and research, as well as the amount of clinical practice income attributable or likely to be attributable to the employee. With due consideration of the factors stated above, an employee's maximum allow- able compensation shall not be unreasonably fixed at less than 250 percent of maximum state basic annual salary for the employee's rank when clinical practice income attributable to the employee, or available to the employee under provisions of a plan for management of clinical practice, permits maximum allowable compensation to be fixed at such percentage. Except as specifically provided hereafter, the maximum allowable compensation may not exceed 250 percent of the maximum state basic annual salary for a member's rank. In special circumstances relating to recruitment of employees, the chief administrative officer or designee may authorize a newly recruited employee who is required to be a member to receive more than 250 percent of the maximum salary for such member's rank, if in the chief administrative officer's judgment the best interest of the institution is served, but in no event shall this authorization extend beyond the first two years of such member's employment. With the approval of the Chancellor, or designee, the maximum allowable compensation of individual plan members may be increased to 275 percent of the maximum state basic annual salary. In exceptional cases related to the retention of physicians in difficult to retain specialties, the employee's maximum allowable compensation may exceed 275 percent with the approval of the Chancellor or designee. In making such recommendations, the chief administrative officer shall give due consideration to the competition for individuals in the particular specialty as indicated by the Association of the American Medical Colleges' compensation data, and the hospital and other revenue generated by the employee's clinical activities. Such exceptions shall not exceed five percent of the total number of physicians on a system-wide basis. The state shall pay fringe benefits only on the state basic annual salary. With the approval of the chief administrative officer or designee, the state and the certified representative of employees in the Professional Services Negotiating Unit, and members of a clinical practice management plan at each

school may elect by majority vote an alternate compensation method in which case plan members may be permitted to earn and retain amounts generated that exceed 200 percent of the maximum allowable state salary for such member's rank provided, however, that 50 percent of such amounts authorized to be earned above the 200 percent level shall be paid into the fund in  section 4 (g) (1). With the approval of the Chancellor, or designee, individual members of plans that have adopted the alternate compensation method may be permitted to earn and retain amounts that exceed 225 percent of the maximum allowable state salary for such member's rank provided, however, that 50 percent of such amounts authorized to be earned above the 225 percent level shall be paid into the fund in section 4 (g) (1). If selected, the alternate method shall be in lieu of the method of compensation first described in this subdivision. After an approved clinical practice plan has been fully operational for a period of 12 months, the members of the plan may, subject to the approval of the Chancellor, State, and the certified representative of employees in the Professional Services Negotiating Unit, elect by majority vote to change the method of compensation initially selected, provided, however, the methods of compensation are limited to the two methods provided in this subdivision.

(g)      Disbursement of clinical practice income. Provisions for disbursement of clinical practice income shall provide for the following in order of priority.

      (1)      Five percent of the gross clinical practice income from each plan for the management of clinical practice shall be deposited into a fund at the school of medicine or dentistry or College of Optometry whose plan members generated the income to be administered by the chief administrative officer, or designee, for the benefit of the school of medicine or dentistry, or College of Optometry, provided, however, that $60,000 of such funds, which shall be collected proportionately based on the amount of gross clinical practice income generated by each of the plans, shall be available for University-wide health sciences purposes.

      (2)      The state shall be reimbursed for the costs of clinical practice experienced by it as a consequence of clinical practice by plan members that are regular and customary costs of a practitioner, not a hospital, including but not limited to use of facilities, personnel, supplies and equipment. Reimbursement to the state for the costs of clinical practice will be made pursuant to a formula established by the chief administrative officer in consultation with the governing board of the practice plan and approved by the Chancellor in consultation with the Governor's Office of Employee Relations. Such funds will be deposited into the Debt Service/State University Income Fund for transfer to the respective hospital operations IFR accounts. Affiliate institutions may be reimbursed with the approval of the Chancellor or designee for appropriately documented costs of clinical practice experienced by them as a consequence of clinical practice by plan members that are regular and customary costs of a practitioner, not a hospital, including but not limited to use of facilities, personnel, supplies and equipment.

      (3)      Payment of all other costs of clinical practice determined in accordance with generally accepted accounting principles and allowable to a practitioner as a deductible cost or expense under cur- rent federal Internal Revenue Service guidelines.

      (4)      Employees required to  participate in a plan for the management of clinical practice may be paid an amount from clinical practice income which, together with compensation from all other sources (exclusive of fringe benefits), does not exceed the maximum allowable compensation arrived at in consultation with the chief administrative

officer or designee, dean, department chairperson, and the employee, or such excess amounts authorized by the chief administrative officer or designee pursuant to section (f); provided, however, that no disbursements from clinical practice income for compensation of a plan member may be made where such income was not earned by the member unless there is specific provision for such disbursement in the plan for the management of clinical practice.

(5)     An amount (not to exceed the rate the State University contributes for retirement to TIAA-CREF) of the cash payment made under subdivision 4 to the employee from clinical practice income may be used to purchase an annuity, provided, however, that any portion of such cash payment on which retirement contributions have already been made shall be excluded from the calculation to be made herein.

(6)     Remaining clinical practice income shall remain in a school of medicine or dentistry, or College of Optometry, and shall be used for the benefit of the school of medicine or dentistry, College of Optometry, or departments thereof, as determined by the chief administrative officer, or designee, after consultation with the governing board.

# ARTICLE XVII: STUDENT ASSEMBLY

## Title A. Establishment and Purpose

§1. Name. There shall be a Student Assembly of State University of New York.

§2. Purpose. The Student Assembly shall be the official organization by which State University students participate in University-wide governance. The Student Assembly shall provide the following:

(1)     A forum for consultation and the exchange of information between State University students, the Chancellor, and the State University of New York Board of Trustees on matters of a University-wide nature which affect student concerns; and

(2)     A communications network for campus student government leaders.

The Student Assembly shall exercise such other responsibilities as the Chancellor or the State University Board of Trustees refer to it.

## Title B. Membership in the Assembly

§1. Membership. The Student Assembly shall consist of representatives from member institutions, and organized student groups as hereinafter defined.

§2. Member Institutions. Each campus of the State University shall be a member institution according to the following: the Graduate Division of each of the doctoral degree granting institutions; the Undergraduate Division of each of the doctoral granting institutions; each of the other State-operated campuses; each community college; New York State College of Ceramics at Alfred University; and one from the four statutory colleges at Cornell University.

## §3. Representatives from Member Institutions.

(a)     Each member institution of the Student Assembly shall have one representative for each full-time 4,000 equivalent students or fraction thereof. For the purpose of this section, full-time equivalent students shall be the number of full-time equivalent students in attendance at a member institution during the fall semester of the previous calendar year, as determined by State University.

(b)     The first representative of each member institution shall be that institution's student government president. Additional representatives from member institutions, which exceed the 4,000 FTE base enrollment, shall be duly elected annually from among and by the students of that institution through a campus-wide election in accordance with procedures promulgated by the campus student government body, provided, however, that any such election scheduled for the Spring 2020 semester shall be postponed and shall occur between the dates of September 8 and September 20, 2020, for each campus holding such an election. Any representative or officer serving in the Spring 2020 semester from a campus that has postponed its election until the Fall of 2020 shall remain in such position until the Fall 2020 election. If an election held in the Spring 2020 semester occurred prior to March 26, 2020, the results of such election shall remain in force and shall not be impacted by this postponement. In the case of the statutory colleges, representatives must be statutory college students elected in accordance with procedures promulgated by the campus student government body.

(c)     In cases where multiple student governments exist, the first representative shall be elected from among the student government presidents according to a campus election procedure adopted by written agreement of the campus student governments; in the absence of such an election, the president of the student government representing the greatest number of FTE students will be the first campus representative to the Student Assembly.

(d)     Each member institution shall designate the officers next in line of succession to the student government president. Each designee may serve as an alternate for any representative of the member institution who is not able to attend a Student Assembly meeting.

## §4. Organized Student Groups.

(a)     Students representing constituencies traditionally underrepresented within the Student Assembly shall have an opportunity to meet, communicate, and recommend resolutions for consideration by the Stu- dent Assembly. The opportunity for these students to voice their concerns will enable the Student Assembly representatives to consider concerns and viewpoints that may not otherwise be introduced. In support of this important effort, the Student Assembly shall prepare a list of "organized student groups," consisting of student organizations requesting "organized student group" designation, which are established pursuant to written bylaws and which have chapters of ten or more full or part-time students at 10 or more campuses.

(b)     After providing annual public notice and conducting an open hearing, the Student Assembly shall select those "organized student groups", which:

(1)     Are likely to remain in existence for more than one academic year;
(2)     Represent points of view not adequately represented in the Student Assembly or the Executive Committee; and
(3)     Will not be adequately represented without participation in the Student Assembly or the Executive Committee by duly-elected representatives.

(c)      Each selected organized student group shall be considered a standing committee of the Student Assembly. As a standing committee, it will meet to discuss issues of particular interest to its members and forward resolutions to the Student Assembly and the Executive Committee.

(d)      Each organized student group will be allocated one nonvoting representative to the Student Assembly and the Executive Committee, who shall be a student. The nonvoting representative will enjoy all the privileges accorded to representatives. Additionally, members of the organized student groups may serve on such other committees of the Student Assembly as appropriate.

(e)      A group shall not be designated an "organized student group" or be seated in the Student Assembly if it has a policy or practice of restricting membership on the basis of race, religion, national origin, gender, sexual orientation, disability, marital status, or age.

(f)      Each organized student group shall elect its representatives to the Student Assembly and the Executive Committee from among the students elected by the campus chapters to serve on the organized student group. The campus selection process and the organized student group representatives' election process shall be included in the Student Assembly Bylaws.

§5. Eligibility. Any representative from a member institution or organized student group or an alternate for a representative selected in accordance with 3(d) above must be a student enrolled for credit who is included in a campus FTE base and meets the campus' requirements to stand for election and continues to be eligible to serve on the campus student government organization.

§6. Representatives to Act in Person. Representatives shall act in person and not by proxy.  An alternate is not considered a proxy and has all the voting rights assigned to a representative.


## Title C. Officers

§1. Officers. The officers of the Student Assembly shall be the President, Vice-President, Secretary, and Treasurer.

§2. Duties. The duties of the officers shall be as follows:

(a)      President. The President of the Student Assembly shall preside at all meetings of the Student Assembly and shall exercise such other powers and duties as may be vested in the President by this Article and the Bylaws of the Student Assembly. The President shall be an official member of all Student Assembly committees, be responsible for a transition of officers between the time of election and June 1, and serve as the student member of the State University of New York Board of Trustees.

(b)      Vice-President. The Vice-President shall perform such duties as prescribed by the President or the Student Assembly. In the absence of the President, the Vice-President shall perform all duties vested in the President by this Article and the Bylaws of the Student Assembly, except serving as a member of the State University of New York Board of Trustees. In the event the President resigns or is no longer eligible to serve, the Vice President shall become the President for the remainder of the term. The primary role of the Vice-President is to support the activities of the various committees of the Student Assembly.

(c)      Treasurer. The Treasurer shall perform such duties as prescribed by the President or the Student Assembly. The Treasurer is the chief fiscal officer of the Student Assembly.

(d)      Secretary. The Secretary shall perform such duties as prescribed by the President or the Student Assembly. The Secretary is the chief communications officer of the Student Assembly.

§3. Election of Officers. Officers shall be elected by the members of the Student Assembly at its annual business meeting, provided, however, that any such election scheduled for the annual business meeting occurring during the Spring 2020 semester shall be postponed and shall occur between the dates of September 8 and September 30, 2020, and, notwithstanding the provisions of sections 34§1.12 and 34§1.13 of this part, any officers serving in the Spring 2020 semester shall remain in such positions until such election. To stand for election as an officer, an individual must be eligible to serve as a representative from the institution, must have at least a §2.5 cumulative GPA, must be enrolled at a State University of New York campus, and be nominated by a representative.

§4. Eligibility to Serve. In order to continue to serve as an officer, an individual must maintain eligibility to stand for election, in accordance with section 5 of Title B of this Article, must maintain a §2.25 cumulative GPA or higher, and must be enrolled at a State University of New York campus, provided, however, that any officers serving in the Spring 2020 semester shall remain in such positions until the Fall 2020 election notwithstanding failure to meet eligibility requirements. For the purposes of this section, eligibility to continue in service shall be determined at the end of each semester. Once eligibility is lost, it cannot be regained by transfer to a new institution.

§5. Terms of Office. Officers shall hold office for one year or until their successors are installed. This one-year term shall be from June 1 of the election year to May 31 of the following year, provided, however, that any officers serving in the Spring 2020 semester shall remain in such positions until the Fall 2020 election. Officers may serve no more than two terms per each office contingent upon the person's continued eligibility to serve as a member of the Student Assembly.

§6. Officer Vacancies. Vacancies shall occur in the position of Student Assembly officer upon the death, recall by the Student Assembly, resignation, incapacity as determined by the Student Assembly, loss of member status, loss of eligibility to serve as a representative, or loss of student status by the incumbent. Officer vacancies may be filled for the remaining portion of the unexpired term of office through an election at the next meeting of the Student Assembly or according to alternate Bylaw procedures.


## Title D. Organization

§1. Meetings. The Student Assembly shall meet at least once each semester with the dates and places to be determined by the Student Assembly. The annual business meeting must be held during the month of April. Special meetings may be called by the Executive Committee, by the request of one-quarter of the Student Assembly representatives, one-quarter of the member institutions, or the Chancellor; the date and place of a special meeting shall be determined by the Executive Committee, and the meeting must be held no later than 30 days following the request to hold such a meeting.

§2. Agenda. The agenda for each regularly scheduled or special meeting of the Student Assembly will be established according to procedures outlined in the Bylaws. All meetings of the Student Assembly shall include the opportunity for the Chancellor or designee to address the membership.

§3. Meeting Notification. Notice of all regularly scheduled or special Student Assembly meetings will be sent to all representatives, State University campus presidents, the Chancellor, and other State University offices as may be designated by the Chancellor. The notice must be sent at least 30 days in advance for regularly scheduled meetings and seven days in advance for special meetings, and must include the time, date, and place of the meeting, an agenda of scheduled business, and other items as may be required by the Student Assembly Bylaws.

§4. Executive Committee.

(a)     There shall be an Executive Committee of the Student Assembly to conduct necessary business between meetings of the Student Assembly and other matters as prescribed by this Article or the Bylaws.  The Executive Committee shall  include the officers of the Student Assembly and the designated number of representatives from the following: three representatives from the doctoral degree-granting institutions (undergraduate division); three representatives from the University Colleges; two representatives from the Colleges of Technology, Agriculture and Technology, and Statutory Colleges; two representatives from the doctoral degree-granting institutions (graduate division); six representatives from the Community Colleges, and one nonvoting student representative from each standing committee. In order to serve as a member of the Executive Committee, an individual must be a student at a State University of New York campus and must maintain a cumulative GPA of §2.0 or higher.

(b)     The members of the Executive Committee shall be elected by and from among the representatives of the designated constituencies according to procedures outlined in the Bylaws. Each designated constituency shall elect from among its representatives alternate(s) to serve in the absence of its representative(s) to the Executive Committee.

(c)     Meetings. Meetings of the Executive Committee are to be determined by its members with the requirement that all meeting notices required of the Student Assembly meetings be followed except for the time of notification, which will be seven days for Executive Committee meetings. The President of the Student Assembly shall serve as the presiding officer of the Executive Committee.

(d)     Institutional Classification. The Student Assembly is empowered, via its bylaws, to, as necessary, classify member institutions for representation on the Executive Committee in accordance with the history and mission of each individual institution.

§5. Other Committees.

(a)     The Student Assembly may establish such other standing and ad hoc committees as it deems advisable and shall prescribe the functions of such committees. The membership of such committees is to be determined by the Student Assembly, according to the Bylaws, and from among the students, faculty, and staff of the State University of New York.  Each standing committee will be allocated one nonvoting student representative to the Student Assembly and the Executive Committee. The nonvoting student representative will enjoy all the privileges accorded to representatives and shall be elected by and from the members of the standing committee.

(b)     All committee reports shall be addressed to the Student Assembly. Committee reports and recommendations shall be in writing and shall be mailed to the Student Assembly members 14 days in advance of the meeting at which they are to be considered by the Student Assembly.

§6. Quorums. A quorum for the transaction of business at any meeting of the full Student Assembly shall consist of 40 percent of the duly elected or appointed and voting representatives of that body with at least 40 percent of the community colleges and 40 percent of all other member institutions in attendance. The quorum for the transaction of business at any meeting of the Executive Committee or other duly constituted committee of the Student Assembly shall consist of a majority of the duly elected or appointed and voting members of such committee.

§7. Rules of Procedure. Procedures at the meetings of the Student Assembly, the Executive Committee, or other duly constituted committees shall be governed by Robert's Rules of Order, except as otherwise provided by this Article or the Bylaws.

## Title E. Bylaws of the Student Assembly

§1. Bylaws.

(a)      The Student Assembly shall adopt and may amend or repeal such Bylaws as it deems advisable, consistent with this Article, governing its activities and procedures.

(b)      The adoption, amendment, or repeal of such Bylaws must receive a two-thirds vote of the Student Assembly membership.

## Title F. Amendments

§1. Amendments. The Board of Trustees shall approve all amendments to this Article. Amendments may be proposed by a member of the State University of New York Board of Trustees, the Student Assembly, the Chancellor, or a Board designated committee. The Student Assembly may propose amendments to the State University of New York Board of Trustees by a majority vote of Student Assembly members present at a Student Assembly meeting. The president shall convey the text of any proposed amendment(s) in writing to each member at least 14 days prior to its consideration by the Student Assembly. Amendments proposed by the Student Assembly shall be submitted by the Chancellor to the Board of Trustees with recommendations. Unless otherwise provided, all amendments will become effective upon approval by the Board of Trustees.

# ARTICLE XVIII: UNIVERSITY COUNCIL OF PRESIDENTS

## Title A. Establishment and Purpose

§1. Name. There shall be a University Council of Presidents of State University of New York.

§2. Purpose. The Council of Presidents shall advise the Chancellor on proposed University- wide policy and inter-campus programs. Members of the Council shall act as liaison with the other presidents of the University, bringing their viewpoints and judgment to the attention of the Chancellor to strengthen the development of University policy.

## Title B. Membership

§1. Composition. The Council of Presidents shall consist of 16 members from the following groups of institutions within State University: three members from the doctoral campuses; four members from the State University Colleges; one member from either the State University of New York Downstate Health Sciences State University of New York Health Science Center at Syracuse; one member from the Contract and Statutory Colleges; two members from the Colleges of Technology or the Colleges of Agriculture and Technology; and five members from the Community Colleges.

§2. Eligibility. The president and chief administrative officer of each of the institutions within the University shall be eligible for membership in the Council of Presidents.

§3. Selection.

(a) Members from each group of institutions within State University shall be selected by the presidents or chief administrative officers of the institutions within that group. Selection shall be by election or designation.

(b) Three members from the community colleges shall be selected every other year; two members shall be selected on the alternate year. The member from the health science center group shall be selected biennially. One-half the members from all other groups of institutions within State University shall be selected annually.

§4. Terms. Each member of the Council of Presidents shall serve for a period of two years, at which time a successor shall be selected.

## Title C. Meetings

§1. Meetings. Meetings of the Council of Presidents shall be held at regular intervals as called by the Chancellor.

# ARTICLE XIX: APPLICABILITY

## Title A. Applicability of Policies of the Board of Trustees to Employees in Negotiating Units

§1. Applicability. The provisions of the Policies of the Board of Trustees, insofar as they apply to employees in negotiating units established pursuant to Article 14 of the Civil Service Law, shall be continued, provided, however, that during periods of time where there is in effect an agreement between the State and an employee organization reached pursuant to the provisions of said Article 14, the provisions of such agreement and the provisions of said Policies shall both be applicable. In the event the provisions of the agreement are different from the provisions of said Policies, the provisions of the agreement shall be controlling.

**THE STATE UNIVERSITY OF NEW YORK**

**UNIVERSITY CENTERS**
State University of New York at Albany
State University of New York at Binghamton
State University of New York at Buffalo
State University of New York at Stony Brook

**UNIVERSITY COLLEGES**
State University College at Brockport
State University College at Buffalo
State University College at Cortland
State University of New York Empire State College
State University College at Fredonia
State University College at Geneseo
State University College at New Paltz
State University College at Old Westbury
State University College at Oneonta
State University College at Oswego
State University College at Plattsburgh
State University College at Potsdam
State University College at Purchase

**HEALTH SCIENCE CENTERS**
State University of New York Downstate Health Sciences University
State University of New York Health Science Center at Syracuse

**COLLEGES OF TECHNOLOGY**
State University College of Technology at Alfred
State University College of Technology at Canton
State University College of Agriculture and Technology at Cobleskill
State University College of Technology at Delhi
State University College of Agriculture and Technology at Morrisville

**SPECIALIZED COLLEGES**
State University College of Environmental Science and Forestry
State University College of Technology at Farmingdale
State University Maritime College
State University of New York College of Optometry
State University of New York Polytechnic Institute

**STATUTORY COLLEGES**
New York State College of Ceramics at Alfred University
New York State College of Agriculture and Life Sciences at Cornell University
New York State College of Human Ecology at Cornell University
New York State School of Industrial and Labor Relations at Cornell University
New York State College of Veterinary Medicine at Cornell University

**COMMUNITY COLLEGES**
Adirondack Community College at Queensbury
Broome Community College at Binghamton

Cayuga County Community College
Clinton Community College at Plattsburgh
Columbia-Greene Community College at Hudson
Corning Community College at Corning
Dutchess Community College at Poughkeepsie
Erie Community College at Williamsville, Buffalo, and Orchard Park
Fashion Institute of Technology at New York City
Finger Lakes Community College at Canandaigua
Fulton-Montgomery Community College at Johnstown
Genesee Community College at Batavia
Herkimer County Community College at Herkimer
Hudson Valley Community College at Troy
Jamestown Community College at Jamestown
Jefferson Community College at Watertown
Mohawk Valley Community College
Monroe Community College at Rochester
Nassau Community College at Garden City
Niagara County Community College at Sanborn
North Country Community College at Saranac Lake, Malone, and Ticonderoga
Onondaga Community College at Syracuse
Orange County Community College at Middletown
Rockland Community College at Suffern
Schenectady County Community College at Schenectady
Suffolk County Community College at Selden, Riverhead, and Brentwood
Sullivan County Community College at Loch Sheldrake
Tompkins Cortland Community College at Dryden
Ulster County Community College at Stone Ridge
Westchester Community College

[1]The Health Science Centers at Buffalo and Stony Brook are operated under the administration of their respective University Centers.

[2]These operate as "contract colleges" on the campuses of independent universities.

[3]While authorized to offer such baccalaureate and master degree programs as may be approved pursuant to the provisions of the Master Plan, in addition to the associate degree, the Fashion Institute of Technology is financed and administered in the manner provided for community colleges.