## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

STEPHEN KERSHNAR,

       *Plaintiff,*

   v.

STEPHEN H. KOLISON, JR, *et al.*,

       *Defendants.*

Case No.: 1:23-cv-00525-LJV

## PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION ON THE FIRST, SECOND, AND THIRD CAUSES OF ACTION

Adam B. Steinbaugh*
CA Bar No. 304829
FOUNDATION FOR INDIVIDUAL
RIGHTS & EXPRESSION
510 Walnut St.; Ste. 1250
Philadelphia, PA 19106
Tel:     (215) 717-3473
Fax:     (267) 573-3073
Email:  adam@thefire.org

Joshua T. Bleisch*
IN Bar No. 35859-53
FOUNDATION FOR INDIVIDUAL
RIGHTS & EXPRESSION
700 Pennsylvania Avenue SE; Ste. 340
Washington, DC 20003
Tel:     (215) 717-3473
Fax:     (267) 573-3073
Email:  josh.bleisch@thefire.org

Barry N. Covert, Esq.
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Ave.; Suite 120
Buffalo, NY 14202
Phone: (716) 849-1333
Email: bcovert@lglaw.com

* Admitted *pro hac vice*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

    I.    Kershnar's Extramural Speech on a Question of Moral Philosophy
        Is Protected by the First Amendment. ...................................................... 2

    II.    Defendants Did Not—and Cannot Now—Justify Their
        Retaliatory Restrictions on Kershnar's Speech. .................................... 4

        A.    Public and student opposition does not outweigh the value
            of academics' speech. ........................................................................ 4

        B.    Defendants' initial response was retaliatory. ............................... 6

        C.    Defendants' imposition of a permanent exile is not
            supported by a reasonable prediction that disruption is
            likely. ................................................................................................. 7

    III.    Defendants Cannot Justify the Prior Restraint on Kershnar's
        Speech to the "Community." .................................................................... 9

    IV.    The Balance of the Equities Tilts Firmly In Favor of Preventing
        Kershnar's Looming Irreparable Injury. ............................................. 10

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Adams v. Trs. of the Univ. of N.C.-Wilmington,*
    640 F.3d 550 (4th Cir. 2011) ............................................................................... 3

*Amandola v. Town of Babylon,*
    251 F.3d 339 (2d Cir. 2001) .............................................................................. 10

*Bible Believers v. Wayne County,*
    805 F.3d 228 (6th Cir. 2015) .............................................................................. 8

*Blum v. Schlegel,*
    18 F.3d 1005 (2d Cir. 1994) ...................................................................... 2, 3, 5

*Buchanan v. Alexander,*
    919 F.3d 847 (5th Cir. 2019) .............................................................................. 3

*Deem v. DiMella-Deem,*
    941 F.3d 618 (2d Cir. 2019) ............................................................................... 2

*Demers v. Austin,*
    746 F.3d 402 (9th Cir. 2014) .............................................................................. 2

*Dube v. State Univ. of N.Y.,*
    900 F.2d 587 (2d Cir. 1990) ...................................................................... 2, 3, 5

*Elrod v. Burns,*
    427 U.S. 347 (1976) .......................................................................................... 10

*Ezuma v. City Univ. of N.Y.,*
    367 Fed. App'x 178 (2d Cir. 2010) .................................................................... 3

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006) ........................................................................................ 2, 3

*Jeffries v. Harleston,*
    52 F.3d 9 (2d Cir. 1995) ..................................................................................... 4

*Levin v. Harleston,*
    770 F. Supp. 895 (S.D.N.Y. 1991) ..................................................................... 5

*Levin v. Harleston,*
    966 F.2d 85 (2d Cir. 1992) ...................................................................... *passim*

*Lewis v. Cowen,*
    165 F.3d 154 (2d Cir. 1999) ................................................................................8

*Locurto v. Giuliani,*
    447 F.3d 159 (2d Cir. 2006) ............................................................................ 4, 7

*Melzer v. Bd. of Educ.,*
    336 F.3d 185 (2d Cir. 2003) ................................................................................3

*Meriwether v. Hartop,*
    992 F.3d 492 (6th Cir. 2021).................................................................................2

*Weinstein v. Univ. of Conn.,*
    753 Fed. App'x 66 (2d Cir. 2018) ......................................................................3

## Other Authorities

Br. for Defs.-Appellees, *Heim v. Daniel,*
    No. 22-1135 (2d Cir. Dec. 1, 2022)...................................................................3

**INTRODUCTION**

Defendants are playing a game of "heads I win, tails you lose." While President Kolison eagerly denounced the "*independent* viewpoints" of Prof. Kershnar, he now claims they are the university's own speech, devoid of First Amendment protection, and that Kershnar did not address matters of public concern.[1] Defendants cannot have it both ways. Whether he spoke as a private citizen (as attested in the Complaint) or an academic (as they insist), his speech is protected under binding precedent and addressed matters of public concern.

Defendants' decisions to bar Kershnar from teaching—in February, August, and November of 2022—fails constitutional scrutiny. Defendants cried "wolf!," citing a "tidal wave of threats" (Opp'n 17) to justify a "cooling down" period. They now point to an angry public, but privately concluded there had never been any "direct threat" at all. (Isaacson Decl. ¶ 44, Ex. F at 4.) Now they warn that the *absence* of threats— the wolf that doesn't "howl"—requires that the "cooling down" period be permanent, as censorship is the "only" solution. (Isaacson Decl. ¶¶ 21, 27, 31, Ex. C at 4.)

Even if 'cooling down' measures once could have been appropriate, the question for this Court is simple: Are they now? They are not. Given the long "paucity" of public outcry, it is unreasonable to *permanently* bar Kershnar from the classroom on the theory that the *absence* of threats makes violence likely. That embrace of the heckler's veto should be rejected as anathema to the free exchange of ideas in higher education.

---

[1] *Compare* Steinbaugh Decl. ¶ 17 Ex. 14 *with* Opp'n 12–14. Plaintiff's Motion for a Preliminary Injunction (ECF No. 3-1) is cited as "Mot." Defendants' Opposition (ECF No. 13-1) is cited as "Opp'n."

## ARGUMENT

### I.   Kershnar's Extramural Speech on a Question of Moral Philosophy Is Protected by the First Amendment.

Kershnar readily satisfies his burden under the *Pickering* balancing test, under which his speech is protected if he spoke as a citizen or an academic on matters of public concern. (Mot. 9–11.) When Defendants claim that Kershnar spoke as an academic because he discussed a "topic" of "research he conducted" (Opp'n 12–14), they doom their arguments that (1) Kershnar's speech is unprotected employee speech under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and (2) that his speech did not address matters of public concern. (Opp'n 15–16).

If, as Defendants insist, Kershnar spoke as an academic, his speech falls squarely within the Second Circuit's longstanding precedent holding that the First Amendment protects (even unpopular) academic speech.[2] Because *Garcetti* refused to reach "speech related to scholarship or teaching" in higher education, 547 U.S. at 425, there is no "conflict, incompatibility or inconsistency" with this longstanding Second Circuit precedent. *See Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019). And every circuit considering whether *Garcetti* applies to academic speech has held it does not.[3] This is not just *Plaintiff's* position; SUNY has itself acknowledged in the Second

---

[2] *E.g.*, *Levin v. Harleston*, 966 F.2d 85, 88–90 (2d Cir. 1992) (creating "shadow classes" in response to controversial speech); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 597–98 (2d Cir. 1990) (lecture protected despite pressure by "community activists outraged by" his views); *Blum v. Schlegel*, 18 F.3d 1005, 1011–14 (2d Cir. 1994) (advocacy in and outside of class of the legalization of marijuana).

[3] *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014) (expression "related to scholarship or teaching"); *Meriwether v. Hartop*, 992 F.3d 492, 505 (6th Cir. 2021) (expression in "academic functions, such as teaching and scholarship"); *Adams v. Trs.*

2

Circuit that *Garcetti* "left undisturbed" the "robust First Amendment protection for academic speech by public-university professors" established in "binding" cases like *Levin v. Harleston*.[4]

As demonstrated in Plaintiff's motion, Kershnar's extramural podcast about the moral issues implicated by sexual conduct involving adolescents and adults addressed matters of public concern. (Mot. 11) Defendants' claim that his remarks were scholarly speech (Opp'n 13–14) *concedes* his speech is a matter of public concern. This is because in higher education, academic speech inherently implicates important public issues. *Blum*, 18 F.3d at 1012; *Dube*, 900 F.2d at 598.[5] And while Defendants concede that Kershnar's hypotheticals were raised in "a philosophical 'thought experiment,'" they argue that, standing alone, these hypotheticals are too offensive to be of serious public concern. (Opp'n 4, 15.) But the public-concern test *requires* analysis of a statement in "context"—not stripped of it. *Melzer v. Bd. of Educ.*, 336 F.3d 185, 192, 194 (2d Cir. 2003). And there is social value in abstract philosophical *discussions* about the moral questions underlying social and legal prohibitions. *See,*

---

of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 563 (4th Cir. 2011); *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019) (professor's in-class speech).

[4] Br. for Defs.-Appellees, *Heim v. Daniel*, No. 22-1135 (2d Cir. Dec. 1, 2022), at 41–44, 43 n.15, *available at* https://bit.ly/45hOuVZ. *See also id.* at 25 n.9 ("That prior precedent thus remains controlling law in this Court.").

[5] SUNY conceded in *Heim* that *Dube* suggests "all academic speech . . . is categorically a matter of public concern[.]" *Id.* at 44 n.17. Defendants' unpublished cases are neither precedential nor relevant, involving matters of personal, not academic, concern. *Weinstein v. Univ. of Conn.*, 753 Fed. App'x 66, 68 (2d Cir. 2018) (grievance about supervisor's nepotism); *Ezuma v. City Univ. of N.Y.*, 367 Fed. App'x 178, 180 (2d Cir. 2010) (complaint about colleague's credentials).

*e.g.*, *Blum*, 18 F.3d at 1012 (professor's criticism of our society's approach to marijuana).

## II.   Defendants Did Not—and Cannot Now—Justify Their Retaliatory Restrictions on Kershnar's Speech.

Since Kershnar's speech "close[ly] . . . reflects on matters of public concern," the university must make a "substantial showing" to justify its actions. *See Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir. 1995). Defendants fall short because they cannot establish that: (1) the potential disruption outweighs the value of the speech; (2) their prediction of "this disruption" was (and is) reasonable; *and* (3) each of their actions were intended to address "this disruption and not in retaliation for the speech." *Locurto v. Giuliani*, 447 F.3d 159, 172–73 (2d Cir. 2006).

Each of Defendants' decisions—in February, August, and November of 2022, and *now*—fails for at least one of these reasons.

### A.   Public and student opposition does not outweigh the value of academics' speech.

Despite citing a "tidal wave of threats" (Opp'n 17), Defendants fail to present any evidence of a true threat. This is not surprising: The security firm retained by Defendants concluded there had never been a "direct threat to harm" anyone. (Isaacson Decl. ¶ 44, Ex. F at 4.) Instead, Defendants repackage invective from members of the public in February 2022—some of it trafficking in hope that harm would befall Kershnar—as "extreme threats of violence." (Opp'n 16.) But Defendants did not *treat* these abusive messages as threats: they did not list them on their incident log or report them to other law enforcement agencies. While their "cooling down" period was purportedly intended to provide an opportunity to "work[] with . . .

our law enforcement partners," (Isaacson Decl. ¶ 19), they provide no indication that they reported any threat to another agency. Instead, their "only" solution was to censor Kershnar. (*Id.* ¶ 31.)

It was never constitutional for Defendants to reward "community outrage," however ugly, by curtailing an academic's basic constitutional rights. *Levin*, 966 F.2d at 88; *Dube*, 900 F.2d at 596–98. That's because the value of academics' freedom to engage in the exchange of ideas cannot be outweighed by public invective. As the Second Circuit has held, "free and open debate" is "essential to" the "function" of postsecondary education, and its provision of services "depends . . . on the dissemination in public fora of controversial speech implicating matters of public concern." *Blum*, 18 F.3d at 1011–12. Otherwise, universities could silence any professor who earns the ire of some corner of the dark web, extending a veto over who may speak or teach at a public university to—as here—even "virulently antisemitic . . . and racist" conspiracy theorists. (Isaacson Decl. ¶ 46.) Strikingly similar messages ("We know where you live you Jewish bastard your time is going to come") did not justify censorship of the philosophy professor in *Levin*—a case Defendants refuse to substantively address. *Levin v. Harleston*, 770 F. Supp. 895, 903–05 (S.D.N.Y. 1991).

Nor does two students' "discomfort" with Kershnar's views suffice. (Opp'n 19.) One student quoted by Defendants was not concerned about *physical* safety,[6] instead

---

[6] There is no evidence students were aware of any threats: Defendants did not disclose any in their incident log and the newspaper article they offer quotes Isaacson, when asked if a threat was made, responding that they had received a report of a "note," but it was "harassment, not a threat." (Kimura Decl. ¶ 5, Ex. C at 3.)

conflating being "unsafe" with being "*uncomfortable*" with Kershnar's views,[7] and the second said *another* student felt "like scared." (Kimura Decl. ¶ 5, Ex. C at 3.) Defendants' own evidence shows that the controversy registered little interest among the student body, with the campus newspaper reporting a "small turnout" at a planned protest. *Id.* Student disinterest and discomfort falls short of the disruptive protests that failed to justify censorship of *Levin*'s professor. *Levin*, 966 F.2d at 90.

### B.  Defendants' initial response was retaliatory.

Defendants' decisions in the early days of the controversy—to initiate a police investigation into Kershnar, to publicly announce an investigation, to ban Kershnar from campus, and to prohibit him from speaking to the "community"—fail scrutiny because they were not intended to address disruption, but to retaliate, and because (as discussed above) the potential disruption did not outweigh the value of the speech.

On February 1, 2022—*before* Isaacson's first "threat assessment" (Isaacson Decl. ¶ 13)—President Kolison publicly announced that Kershnar's "reprehensible" speech was "being reviewed," and campus police told callers that they were investigating Kershnar. (Steinbaugh Decl. ¶¶ 16, 20(a), Exs. 13, 15.) Privately, Kolison directed Isaacson to search Kershnar's office and seize his computer for "analysis" and publicly pledged that Kershnar would have no "contact with students" while being investigated. (Steinbaugh Decl. ¶¶ 17, 20(c)–(e), Exs. 14, 17–19).

---

[7] Kendall Brooks, Facebook (Feb. 3, 2023), [https://perma.cc/PNQ3-3TPE]. Brooks linked to a petition, *available at* https://perma.cc/ZAY3-NCYP, charging Kershnar's "views" and "problematic academic papers" meant students did not "feel safe[.]"

Defendants provide no explanation for these decisions, nor any declaration from Kolison as to the rationale for *any* of his decisions. Even assuming that some interim measure would have been appropriate, Defendants offer no explanation for failing to consider the obvious measure Kershnar *offered*: temporary online teaching.[8] That Defendants deliberately ignored this possibility—and instead took actions consistent with Kolison's express denunciation—strongly indicates that the measures they *did* choose were retaliatory rather than a bona fide effort to address "this disruption." *Locurto*, 447 F.3d at 172–73; *see also* Mot. 17, 20–21.

### C. Defendants' imposition of a permanent exile is not supported by a reasonable prediction that disruption is likely.

By March 2022, Defendants declared victory: the "interest of the public" had "waned," and the "cooling down" period had "the desired effects." (Isaacson Decl. ¶ 21, Ex. C at 3–4.) That evaluation continued through October 2022, when Isaacson reported a "paucity" of interest by the public (*supra* Section II(A)).[9] Yet Defendants planned "permanent" exile, citing the difficulty in eliminating the possibility that

---

[8] Instead, Defendants offer the red herring that Kershnar cannot currently design an *asynchronous* class. (Opp'n 9.) But SUNY *also* permits faculty to teach live classes via Zoom when the "instructor's distance from campus" prevents "in-person" courses. SUNY Fredonia, *Live Digital Instruction*, https://www.fredonia.edu/academics/online-learning/live-digital-instruction [https://perma.cc/QP92-9MA9]. Defendants unreasonably ignored his February 2022 offer to do just that as a mitigating measure, as he and thousands of faculty did during the pandemic. Further, Defendants only "[g]enerally" require an instructor to complete these "numerous steps" when "preparing to teach an online course *for the first time*." (Melohusky Decl. ¶ 3 (emphasis added).) Kershnar has taught online courses. (Verif. Compl. ¶ 23(c).) Imposing "numerous steps" to create a shadow online class is punishment, not mitigation.

[9] The emails Defendants rely on appear to have all been sent in early February 2022. (Isaacson Decl. ¶¶ 25–26; Metzger Kimura Decl. ¶ 7, Ex. E.)

someone would plot violence *without* making a threat. (Isaacson Decl. ¶ 21, Ex. C at 4, 7.) This, Defendants claim, means they can meet their burden of showing "likely" disruption through the *absence* of a threat. (Opp'n 12 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999); Isaacson Decl. ¶ 17 (citing the "silent" majority).)

But Defendants' "hunters don't howl" theory—speculating that a would-be assassin will purposefully conceal himself rather than make a threat—cannot justify restricting First Amendment rights as a first resort. It is not a reasonable prediction that disruption is *likely* if Defendants are relying on a remote (and unfalsifiable) possibility. That it is conceivable that some person *could* plot a violent act does not make it "*likely*"—as *Lewis* requires—that someone will do so.

The hole Defendants find themselves in is of their own making, flowing from their misguided belief that censorship is the "only" way to mitigate the possibility of violence. It is not. Defendants chose "indefinitely silencing the speaker" as the "expedient" route to mollifying a mob, rather than considering "bona fide efforts to protect [him] by other, less restrictive means." *Bible Believers v. Wayne County*, 805 F.3d 228, 252–55 (6th Cir. 2015) (en banc). Universities regularly attract controversy and regularly meet it by deploying less restrictive measures to mitigate safety concerns, like holding classes in undisclosed locations, posting an officer outside the class while it is in session, or (as Kershnar offered on day one) teaching remotely.[10]

---

[10] *See, e.g.*, Vimal Patel, *At UChicago, a Debate Over Free Speech and Cyberbullying*, N.Y. Times (updated July 6, 2023), [https://perma.cc/KZR6-8F8Z]; Conor Friedersdorf, *Stripping a Professor of Tenure Over a Blog Post*, The Atlantic (Feb. 9, 2015), [https://perma.cc/A68N-964R].

Defendants' claim that Kolison's decree explains the lack of public interest is no more credible than does the cock's claim that its crowing caused the sunrise. Public interest naturally fades with time, and attributing rationality to cranks complaining about "satanic cults" and "demonic activity" (Kimura Decl. ¶ 7 Ex. E) defies credulity.

## III. Defendants Cannot Justify the Prior Restraint on Kershnar's Speech to the "Community."

Defendants contend that Kershnar's "speech has not been limited by Defendants, nor have Defendants issued any directive limiting [Kershnar's] speech," and he is "free to continue to engage in any speech he chooses." (Opp'n 3.) They likewise urge that Kershnar is only denied "physical access" to campus. (Opp'n 23.)

Not so. Uncontradicted evidence shows Kershnar is barred from speaking on any subject to anyone in the "campus community" without permission. (Kershnar Decl. ¶¶ 6–7, Exs. 36–37.) While Defendants concede that the *Pickering* balancing test considers the rationales underlying our Constitution's aversion to prior restraints (Opp'n 21; *see* Mot. 24 (effects of prior restraint on Kershnar)), they offer no explanation as to the purpose served by their broad limit on Kershnar's speech.

Nor could they. Allowing Kershnar to send an email to a colleague, answer Kolison's denunciations, or respond to the community's debate over his speech presents no security concern. The ban is purely performative, conveying to the public that *Kershnar* is the threat and that Defendants have prevented him from access to students. (Isaacson Decl. ¶ 13, Ex. B at 2 (recommending Kershnar's "professional contact with our students be discontinued" to deter "persons who may otherwise feel compelled to confront Kershnar").)

9

**IV.**     **The Balance of the Equities Tilts Firmly In Favor of Preventing Kershnar's Looming Irreparable Injury.**

Defendants incorrectly argue that Kershnar is not entitled to injunctive relief because of "delay" in filing suit, his removal from the classroom does not implicate the First Amendment, and his return would herald disorder. (Opp'n 22–23.)

Defendants' assertion that Kershnar's injury is not irreparable because he didn't immediately sue relies on nothing but *chutzpah* and is not supported by the law. Despite reassuring Kershnar they were reevaluating the need for his exile (Kershnar Decl. ¶¶ 8–10, Exs. 38–40), Defendants now fault him for believing them. Moreover, it is axiomatic that First Amendment violations "unquestionably" cause irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also, e.g.*, *Amandola v. Town of Babylon*, 251 F.3d 339, 342 (2d Cir. 2001) (rejecting the argument that "delay in moving for a preliminary injunction" was sufficient to overcome the presumption of irreparable harm in First Amendment cases).

Defendants' remaining arguments also fail. As *Levin* establishes, discretion in assigning courses cannot be used as a vehicle to penalize protected expression. Nor is Defendants' speculative assertion that Kershnar's return would be possible only through "extraordinary and financially" prohibitive measures—which Defendants do not identify—to be credited as anything other than conclusory. Instead, it is characteristic of Defendants' speculative refrain: "Wolf!"

## CONCLUSION

This Court should grant Plaintiff's motion and enjoin Defendants from barring him from the classroom due to his protected academic speech.

Dated: August 4, 2023                    Respectfully submitted,

                                         /s/ Adam B. Steinbaugh
Barry N. Covert, Esq.                    Adam B. Steinbaugh*
LIPSITZ GREEN SCIME                      CA Bar No. 304829
   CAMBRIA LLP                           FOUNDATION FOR INDIVIDUAL
42 Delaware Ave.; Ste. 120                  RIGHTS & EXPRESSION
Buffalo, New York 14202                  510 Walnut St.; Ste. 1250
Phone: (716) 849-1333                    Philadelphia, PA 19106
Email: bcovert@lglaw.com                 Tel:    (215) 717-3473
                                         Email:  adam@thefire.org

                                         Joshua T. Bleisch*
                                         IN Bar No. 35859-53
                                         FOUNDATION FOR INDIVIDUAL
                                            RIGHTS & EXPRESSION
                                         700 Pennsylvania Ave. SE; Ste. 340
                                         Washington, DC 20003
                                         Tel:    (215) 717-3473
                                         Email:  josh.bleisch@thefire.org

                                         * Admitted *pro hac vice*.

                                         *Counsel for Plaintiff*