UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHEN KERSHNAR,

   *Plaintiff,*

v.

STEPHEN H. KOLISON, JR, *et al.*,

   *Defendants.*

Case No.: 1:23-cv-00525-LJV-JJM

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY**

Under Local Rules 7(a)(2) and 16(b), and under this Court's March 6, 2025, Minute Entry (ECF No. 81), Plaintiff Stephen Kershnar submits this Memorandum of Law in support of his Motion for Discovery.

**FACTS AND PROCEDURAL BACKGROUND**

Stephen Kershnar is a tenured professor of philosophy at SUNY Fredonia. (Verified Compl. ¶ 11, ECF No. 1.) After his appearance on two podcasts discussing the ethical arguments surrounding sexual relationships between adults and minors went viral, Defendants—SUNY Fredonia President Stephen Kolison and Executive Vice President and Provost David Starrett[1]—suspended Kershnar and barred him from teaching courses and from visiting campus. (*Id.* ¶¶ 54–79, 86, 101.) Kershnar is

---

[1] In March 2025, SUNY Fredonia announced that Defendant Starrett is no longer serving as provost of the university because of an "administrative transition." John D'Agostino, *'Transition' noted in SUNY leadership*, Post-Journal (March 11, 2025), https://www.post-journal.com/news/local-news/2025/03/transition-noted-in-suny-leadership. Defendant Starrett was replaced in his role by Interim Provost and Vice President of Academic Affairs Judith Horowitz. *Id.* As a result, Horowitz is automatically substituted for Starrett for the purposes of the official-capacity claims against Starrett. Fed. R. Civ. P. 25(d).

1

now on a research-only assignment and remains barred from SUNY Fredonia's campus. (*Id.* ¶¶ 113, 127, 130–31.)

Kershnar commenced this litigation on June 12, 2023, with a complaint for civil rights violations and a motion for preliminary injunction. (Verified Compl.; Mot. for Prelim. Inj., ECF No. 3.) On July 24, 2023, Defendants moved to dismiss Kershnar's complaint under Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss, ECF No. 13.) Defendants requested an evidentiary hearing to oppose Kershnar's preliminary injunction motion. (Tr. Hr'g Prelim. Inj. 24:9–19, ECF No. 33; Tr. Status Conf. Aug. 17, 2023, at 11:21–13:1, ECF No. 24.) This Court granted Defendants' request (Min. Entry Aug. 17, 2023, ECF No. 23; Tr. Status Conf. Aug. 17, 2023, at 11:21–13:1.) In doing so, the Court required an immediate exchange and disclosure of a wide range of records between the parties. (Tr. Status Conf. Aug. 17, 2023, at 5:11–23, 11:21–14:15.)

The Court held evidentiary hearings on September 13, 14, and 28, 2023, taking live testimony from witnesses offered by both parties. On September 28, 2023, this Court continued the evidentiary hearing to facilitate settlement negotiations. (Min. Entry Sept. 28, 2023, ECF No. 63). The parties agreed to a mediation with Magistrate Judge Jeremiah McCarthy. (*See* Referral Order, ECF No. 68 [designating Judge McCarthy].) Two days before the scheduled mediation, on April 16, 2024, Defendants requested adjournment of the mediation because of "certain issues relating to obtaining settlement authority." (Defs.' Mot. Adjourn, ECF No. 74.) Kershnar consented to the adjournment because counsel for Defendants assured him that the

extra time would lead to a productive response. On May 17, 2024, the parties attempted to hold the rescheduled mediation. (Min. Entry My 17, 2024, ECF No. 77.) However, Defendants did not respond to Kershnar's offer, apparently Defendants were not represented by any person with settlement authority, and the mediation was not successful. (*Id.*)

The court held a status conference on February 12, 2025. (Min. Entry Feb. 12, 2025, ECF No. 80.) The Court indicated it was open to resuming the evidentiary hearing, but one of Defendants' three attorneys—who had been cross-examining an expert witness called by Kershnar—informed the Court she could not be available for personal reasons. Given that fact, and the Court's schedule, it appeared the evidentiary hearing would not resume until the fall of 2025.

To prevent the case from stagnating and to limit delays when the hearing resumes, Kershnar proposed conducting discovery in the interim. Defendants oppose further discovery prior to a decision on their pending motion to dismiss. (Min. Entry Mar. 6, 2025, ECF Nos. 81.) The Court has not yet scheduled a formal initial pretrial conference under Local Rule 16(b).

## ARGUMENT

Defendants insisted on an evidentiary hearing replete with the exchange of voluminous documentary evidence. Twenty months after Kershnar filed this case (and thirty-six months after removing Kershnar from campus), Defendants again seek to delay these proceedings. They cannot have it both ways. Either Defendants (ably represented by the Office of the Attorney General, which employs some 700

3

attorneys)[2] can agree to resume the evidentiary hearing delayed at their request, or they can agree to use the interim period to conduct discovery focused on issues relating to the prospective relief Kershnar seeks.

I.     **Continued Delay of this Action Will Exacerbate the Prejudice to Kershnar's First Amendment Rights.**

Three years into their ongoing violations of the First Amendment, Defendants now seek to do so for at least another six months by continuing to delay any progress in this action. Instead of allowing Defendants to effectively stay this action, this Court should exercise its "broad discretion" to determine when discovery is appropriate and "what degree of protection is required." *Mineweaser v. One Beacon Ins. Co.*, No. 14-CV-0585A(Sr), 2025 WL 276667, at *4 (W.D.N.Y. Jan. 23, 2025) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 26 (1984)). Doing so will facilitate resolution of Kershnar's claims for prospective relief, while delay will further prejudice Kershnar by extending the ongoing harm to his First Amendment rights. Further, any burden on Defendants can be mitigated by appropriately tailoring the scope of discovery as necessary.

When considering whether to delay discovery, courts consider the "prejudice that would result to the party opposing" a delay in discovery, the "breadth of discovery sought" and Defendants' "burden of responding to it," and the "strength of the pending motion forming the basis of the request" to delay discovery. *Republic of Turkey v. Christie's, Inc.*, 316 F.Supp.3d 675, 677 (S.D.N.Y. 2018) (quoting *Country*

---

[2] Office of the N.Y. State Att'y Gen., *About the Office*, https://ag.ny.gov/about/about-office (last visited Mar. 27, 2025) ("The office employs ... over 700 assistant attorneys general, serving in over two dozen locations across New York state.").

*Club of Fairfield, Inc. v. N.H. Ins. Co.*, No. 3:13-CV-00509 (VLB), 2024 WL 3895923 at *3 (D. Conn. Aug. 8, 2014)). The ongoing prejudice to Kershnar's First Amendment rights is irreparable, the burden on Defendants insubstantial (and can be mitigated by narrowing discovery as appropriate), and Defendants' pending motion to dismiss is weak. This Court should allow discovery to continue.

### A. Kershnar remains banned from campus and further delay risks compromising evidence quality.

The prejudice to Kershnar caused by effectively staying this action another six months cannot be understated: Delay will cause irreparable harm. The "loss of First Amendment freedoms, for even *minimal* periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (emphasis added)(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

This action—and the continued delay Defendants seek—involves significantly more than minimal periods of time. Defendants' ongoing violations of Kershnar's First Amendment rights began in February 2022, some thirty-six months ago. (Verified Compl. ¶¶ 101, 113.) Kershnar filed this action and a motion for a preliminary injunction to bring an end to Defendants' violations of his First Amendment rights—violations Defendants brought about through a pattern of incremental delay. (*See id.* ¶¶ 101, 117–37 [Defendant Kolison's announcement that an "ongoing" investigation into Kershnar would be resolved "as expeditiously as possible," followed by periodic letters renewing Kershnar's exile].) Kershnar remains banned from setting foot on his own campus, where he is stuck completing menial

5

"research" assignments instead of instructing students. All the while, Defendants have delayed this case. After seeking an evidentiary hearing, Defendants agreed to—and then delayed—a mediation, then failed to participate in that mediation. They now seek to delay this matter until October, delaying its ultimate resolution (whether by preliminary injunction or judgment) by at least another six months.

Because Kershnar brought this action to seek *prospective* relief, any delay necessarily causes ongoing *irreparable* harm to his First Amendment rights.

Setting aside the irreparable constitutional harm, further delay of discovery also prejudices Kershnar as a practical matter. For example, the quality of the testimonial evidence he is likely to elicit will only diminish as time progresses and memories of the officials and administrators involved fade. "[D]elay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999) (citing *Romandette v. Weetabix Co.*, 807 F.2d 309, 312 (2d Cir. 1986)). Allowing Kershnar to proceed with discovery now is important for ensuring the parties have access to the highest-quality information possible.

### B. Any burden on Defendants is minimal and can be mitigated through appropriately tailored discovery.

In contrast to the irreparable harm that will be visited on Kershnar through continued delay, Defendants do not face any substantial burden if discovery continues.

For one, discovery in this matter is not optional. Even if Defendants object that they are entitled to qualified immunity, that defense relieves them only of claims for damages—Kershnar's claims for *prospective* relief are not encumbered even if Defendants were entitled to qualified immunity. Administrators sued in their official capacities are entitled only to the immunities "that the governmental entity possesses." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). And because "the governmental entity itself possesses no personal privilege of absolute or qualified immunity, those privileges are available to governmental officials only with respect to damage claims asserted against them in their individual capacities. They are not available to the extent that the officials are sued in their official capacities." *Id.* Delaying discovery only delays the inevitable—it does not meaningfully alter the burden Defendants will face.

Even if Defendants ultimately succeed in showing entitlement to qualified immunity, Kershnar would still have live claims against them in their official capacities. Discovery on those claims is therefore not "avoidable." *Lion Bolous v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987) (quoting *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986); *but see Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) [questioning, in a damages-only action, whether discovery relating to the qualified immunity defense itself is permissible]). As a result, the burden on Defendants—whether the same discovery takes place now or later—is not altered by qualified immunity.

7

Second, Defendants have already borne much of any burden they might face through document demands or depositions. Defendants themselves opened the door to live fact-finding by insisting on an evidentiary hearing. (Tr. Hr'g Prelim. Inj. 24:9–19; Tr. Status Conf. Aug. 17, 2023, at 6:17–7:6, 11:21–13:1.) They continued to insist on an evidentiary hearing even as the Court indicated that, to avoid ambush, it would require documentary discovery. And the parties have already exchanged voluminous amounts of documents pursuant to that order. Defendants face no significant burden by continuing down the path they chose. Responding to additional discovery requests and sitting for depositions at a mutually agreed-upon time and place is far less invasive than developing facts in real-time in a courtroom. And conducting those depositions during this interim period, when the Court is engaged in other matters, will avoid the potential for any subsequent delays once the hearing resumes.

Third, any continued discovery can be appropriately tailored by the parties and the Court, if the parties are not able to amicably resolve discovery disputes themselves.

### C. Defendants are unlikely to succeed on their motion to dismiss.

Defendants' pending motion to dismiss is not a barrier to continuing discovery. *Republic of Turkey*, 316 F.Supp.3d at 677 (courts evaluate the "strength of the pending motion" to dismiss in determining whether to stay discovery). Briefing on Defendants' motion has long been completed. If Defendants' motion were strong, Kershnar respectfully submits that the Court would not have indulged Defendants' request for an evidentiary hearing. (*See* Tr. Status Conf. Aug. 17, 2023, at 11:22–12:3 ["[Defendants] have said there's a need for the [evidentiary] hearing. So, I mean, it is

8

the burden of the plaintiff to get the preliminary injunction but, I mean, I think the whole purpose of the hearing is for you folks to convince me that the reason behind your decision, that is that there is a danger ... in the community, is a real danger."])

**D.    The Court should schedule an initial pretrial conference and allow discovery to commence.**

The Court has not yet held a formal pretrial conference under Rule 16(b). The Court should schedule an initial pretrial conference and direct the parties to file with the Court a joint, written discovery plan consistent with Fed. R. Civ. P. 26(f) within ten days.[3] To effectively use the time available, the Court's order should also authorize the parties to begin discovery on submission of the written discovery plan.

**II.    Alternatively, This Court Should Resume the Evidentiary Hearing.**

If Defendants are unwilling to proceed with discovery, this Court should lessen the prejudice to Kershnar by resuming the evidentiary hearing and granting a preliminary injunction. Defendants are represented by the Office of the Attorney General of the State of New York, which has hundreds of capable attorneys in its employ. Defendants' three attorneys in this matter have been present throughout the proceedings and are doubtlessly familiar with the questions, facts, and issues involved. Defendants' choice of which counsel should conduct a cross-examination should not supersede the expeditious resolution of Kershnar's First Amendment claims.

---

[3] Alternatively, if the parties are not able to agree to a plan, each party should file its own proposed plan, and discovery should begin when both parties' plans are submitted.

**CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiff's Motion for Discovery or, alternatively, resume the evidentiary hearing.

Dated: March 27, 2025

Robert Corn-Revere*
DC Bar No. 375415
Joshua T. Bleisch*
DC Bar No. 90001269
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION (FIRE)
700 Pennsylvania Ave. SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Email: bob.corn-revere@thefire.org
Email: josh.bleisch@thefire.org

Barry N. Covert, Esq.
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue – Suite 120
Buffalo, New York 14202
Tel: (716) 849-1333
Email: bcovert@lglaw.com

Respectfully submitted,

/s/ Adam Steinbaugh
Adam B. Steinbaugh*
CA Bar No. 304829
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION (FIRE)
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Email: adam@thefire.org

*Admitted *Pro Hac Vice*

*Counsel for Plaintiff*