

**Office of the New York State Attorney General**

**Letitia James
Attorney General**

December 15, 2025

**Via CM/ECF**

Hon. Lawrence J. Vilardo
United States District Judge
2 Niagara Square
Buffalo, New York 14202

      **RE:** *Kershnar v. Kolison, et al*. **(23-CV-525)**

      On December 1, 2025, the Court directed the parties to provide letter briefing regarding the Second Circuit's decision in *Leroy v. Livingston Manor Central School District*, 158 F.4th 414 (2d Cir. 2025). The Court in *Leroy* applied a different First Amendment framework and did not grapple with the potential for on-campus violence in response to the speech at issue there. Accordingly, the case is inapposite.

      In *Leroy*, the Court applied the First Amendment framework for student speech – a different framework than the one that applies to speech of a public employee. Namely, *Leroy* was decided based on the application of *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) and *Mahanoy Area School District v. B.L.*, 594 U.S. 180 (2021) – cases that set the standard for a school's ability to regulate student speech. Conversely, this case is governed by the balancing test provided by *Pickering v. v. Board of Education* and its progeny regarding the speech of public employees. 391 U.S. 563 (1968). *Leroy* does not mention, much less modify in any way, the *Pickering* standard applicable to this case.

      While both the *Tinker* and *Pickering* lines of cases consider disruption, the *Leroy* court based its determination on the undisputedly non-disruptive nature of the speech in question. The *Leroy* court found that the student's controversial speech created only a minimal disruption to the school environment, including: emails sent to the defendant concerning the speech, "ongoing discussion" among students creating "a buzz up the building," a "9-minute" student demonstration, and a decision to hold a campus-wide assembly that consisted of a "about a 15 to 20-minute conversation." 158 F.4th at 420. Notably absent from the facts in *Leroy* is any threat to campus safety or concern of violence following the dissemination of the *Leroy* plaintiff's speech. The facts at issue in *Leroy* stand in stark contrast to the facts of this case. This Court already has heard significant testimony of former Chief of Police for SUNY Fredonia and FBI agent, Brent Isaacson, that there was a significant threat of violence to the campus that both necessitated and justified Plaintiff's removal from campus.

  Further, in *Leroy*, the defendant-school was policing the content of Leroy's speech, which they deemed racially incendiary. The self-avowed goal of the school was to "punish" Leroy for his speech so that he would "learn[] some valuable lessons that will serve him better down the road." 158 F.4th at 424. In contrast, Professor Kershnar was not removed from campus to punish him for his speech. Indeed, Plaintiff was hired and received tenure despite having already written on his ideas concerning adult-child sex, including an entire book on the subject. Plaintiff's removal from on-campus work came only after the virality of his comments on the subject created a security threat to the campus community that could not be mitigated without drastically altering the Fredonia campus (at staggering and prohibitive expense).

  For these reasons, the Second Circuit's decision in *Leroy* has no bearing on this case. The decision to remove Plaintiff from campus is and was justified under the *Pickering* framework.

            Respectfully submitted,

            *s/ Jennifer J. Metzger*
            JENNIFER J. METZGER
            ALYSSA JORDAN PANTZER
            Assistant Attorneys General, of Counsel
            *Attorneys for Defendants*


cc: Counsels of Record (via CM/ECF)