

**FIRE**
Foundation for Individual
Rights and Expression

December 15, 2025

**Filed *via* ECF**

Hon. Lawrence J. Vilardo
United States District Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

    **Re:** ***Kershnar v. Kolison*, Civil Action No. 1:23-cv-525-LJV-JJM
Supplemental Authority: *Leroy v. Livingston Manor Cent. Sch.
Dist.*, No. 24-1241 (2d Cir. 2025)**

Dear Judge Vilardo:

    This letter addresses a recent decision of the Second Circuit rejecting arguments that hostile speech by third parties was sufficient to justify disciplinary sanctions against a high school student for his off-campus speech. *Leroy v. Livingston Manor Cent. Sch. Dist.*, No. 24–1241 (2d Cir. Oct. 30, 2025), *pet. for reh'g en banc filed* (Nov. 13, 2025). A copy of that decision is attached as Exhibit A.

    Leroy, a high school student, posted a photograph emulating George Floyd's murder by Minneapolis police officer Derek Chauvin, captioning the photograph: "Cops got another." *Id.* at 2–4.[1] When Leroy posted the photograph in 2021, tensions were high across the country—jurors in Chauvin's murder trial had just begun deliberations—and at the student's school, which was located in a city with a "dark history of being a Sundown Town with its own KKK Chapter." *Id.* at 3–4.

    Following Leroy's post, students held protests on campus. *Id.* at 5–6. The principal publicly announced an investigation. *Id.* at 6. "[E]mails and communications" flowed in "from students, from staff, from people both inside of the community and outside of the community." *Id.* at 7. The principal told Leroy not to come to campus for his "own safety," and police officers were

---

[1] Citations to *Leroy* refer to the Second Circuit's pagination at the bottom of the page.

posted "on school grounds throughout the day." *Id.* at 5–6. The school suspended Leroy, citing as "disruption" the hostile communications from people inside and outside of the community. *Id.* at 7; *see also id.* at 19–22 (district court and school district "rely heavily" on characterizing as disruptive the speech reacting to Leroy's post).

The Second Circuit reversed the district court's grant of summary judgment to the defendant administrators. *Id.* at 2, 19–22. The Second Circuit categorically rejected arguments that speech by others constitutes disruption that would justify restrictions on students' First Amendment rights, holding that the "***kind*** of disruption relied upon by the school" was not a "disturbance" *by* Leroy, but rather the result of "the independent decisionmaking of others." *Id.* at 21 (emphasis in original). The Second Circuit held that "[t]ying a student speaker's constitutional right to free expression solely to the reaction that speech garners from upset or angry listeners cannot be squared with" principles of freedom of expression. *Id.* at 22.

The Second Circuit's holding confirms existing precedent holding that constitutional rights "may not be denied simply because of hostility to their assertion or exercise." *Watson v. City of Memphis*, 373 U.S. 526, 535 (1963). And *Leroy* reinforces the Second Circuit's consistent rejection of efforts to subordinate university faculty speech to a heckler's veto. *E.g.*, *Levin v. Harleston*, 966 F.2d 85, 87–90 (2d Cir. 1992) (tumultuous protests on campus by students outraged by professor's comments on race); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 597–98 (2d Cir. 1990) (pressure by officials and "community activists outraged by" professor's views). Punishing a speaker for disorder caused by the speaker's opponents—a heckler's veto—is particularly poisonous to the "robust exchange of ideas" at public universities. *See Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967).

Importantly, *Leroy* applies secondary-school speech cases, so *Leroy*'s rejection of the heckler's veto carries greater weight in the university context. Because the government's interests in K-12 institutions and universities differ markedly, a "dichotomy" between K-12 speech cases and university speech cases means the *Tinker* line of cases "cannot be taken as gospel" in the university setting. *Radwan v. Manuel*, 55 F.4th 101, 117–18 (2d Cir. 2022) (quoting, in part, *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 247 (3d Cir. 2010)). Primary and secondary school administrators have considerably broader authority to limit expression because of those institutions' interests in transmitting community values and standing *in loco parentis*. In contrast, public universities' missions depend on the unfettered exchange of ideas. *Id.*; *see also Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) (recognizing the

"essentiality of freedom in the community of American universities" as "almost self-evident," and the imposition of "any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation").

If a high school administrator cannot sanction student speech because of the reaction of others, a university administrator certainly cannot effectuate a heckler's veto. The Court should deny Defendants' pending motion to dismiss, which, like the district in *Leroy,* relies heavily on speech reacting to protected expression.

Respectfully submitted,

*/s/ Adam Steinbaugh*
Adam Steinbaugh*
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473, ext. 213
adam@fire.org
