

December 22, 2025

**Filed *via* ECF**

Hon. Lawrence J. Vilardo
United States District Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

      Re:    ***Kershnar v. Kolison*, Civil Action No. 1:23-cv-525-LJV-JJM**
              **Response to Defendants' Letter Re: *Leroy v. Livingston Manor Cent. Sch. Dist.*, No. 24-1241 (2d Cir. 2025)**

Dear Judge Vilardo:

      This letter responds to Defendants' December 15, 2025, letter concerning the recent decision of the Second Circuit in *Leroy v. Livingston Manor Central School District*, 158 F.4th 414 (2d Cir. 2025), *pet. for reh'g en banc denied* (Dec. 22, 2025); *see* Dkt. Nos. 87 (directing parties to file simultaneous responses) & 88 (Defendants' letter addressing *Leroy*) ("Defs.' Letter").

      The parties agree that the First Amendment framework for K-12 student speech does not control this action. Defs.' Letter at 1. But Defendants overlook why that distinction matters. As Plaintiff's letter discussed, that framework grants K-12 administrators greater authority to regulate speech than their counterparts at public universities. Dkt. No. 89 at 2–3 (discussing *Radwan v. Manuel*, 55 F.4th 101, 117–18 (2d Cir. 2022) (K-12 cases "cannot be taken as gospel" in higher education context, owing to the "dichotomy" between university and K-12 cases)).

      Most fundamentally, Defendants' analysis misses the principle the Second Circuit reiterated in *Leroy* as it had in *Levin* before it: the heckler's veto is categorically not the type of response that qualifies as "disruption" of the educational environment. *Leroy*, 158 F.4th at 425 (holding speech by others is not the "**kind** of disruption" a school may cite to penalize speech); *see also Levin v. Harleston*, 966 F.2d 85, 87–90 (2d Cir. 1992) (rejecting efforts to subordinate university faculty speech on race to a heckler's veto).

Defendants attempt to avoid that principle by distinguishing *Leroy* on its facts, urging as "[n]otably absent … any threat to campus safety or concern of violence following" the student's speech. Defs.' Letter at 1.

This claim misreads *Leroy*. The Second Circuit noted that the school posted police officers on campus and asked the plaintiff student to avoid campus for his "own safety." *Leroy*, 158 F.4th at 419. And in the district court, administrators justified their actions by pointing to the potential for threats to campus security. The school district said the student "received death threats" in response to his social media post, and argued the "physical threats" to his safety required him to "remain home from school." [1] The school urged that "administrators were immediately and continually bombarded with emails and phone calls from concerned and angry students, parents, community members, neighboring school administrators … and local organizations," and that this reaction "raised such a safety concern that law enforcement officers from the New York State Troopers and Sheriff's Department remained on school grounds throughout the day."[2] The administrators' solution in that case, as here, was to seek to "quell the potential" for disruption by announcing an investigation into the removed student.[3]

Just as the Second Circuit again rejected the speculative heckler's veto, this Court should follow.

Respectfully submitted,

*/s/ Adam Steinbaugh*
Adam Steinbaugh*
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473, ext. 213
adam@fire.org

---

[1] Mem. of Law in Supp. of Defs.' Mot. for Summ. J. and in Opp'n to Plf.'s Partial Mot. for Summ. J. and to Strike Affirmative Defenses 1, 8, *Leroy v. Livingston Manor Cent. Sch. Dist.*, No. 21-cv-6008 (NSR) (AEK) (S.D.N.Y. June 12, 2023), Dkt. No. 70, *available at* https://bit.ly/leroymsj.

[2] *Id.* at 8–9.

[3] *See id.* at 18.