UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STEPHEN KERSHNAR,

                Plaintiff,

      -vs-

                                              23-cv-525 (LJV)

STEPHEN H. KOLISON, JR., in his individual
capacity and his official capacity as the President
of the State University of New York at Fredonia, and

DAVID STARRETT, in his individual capacity and
official capacity as Executive Vice President and
Provost of the State University of New York at
Fredonia,

                Defendants.

_____


**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

LETITIA JAMES
Attorney General of the State of New York
ALYSSA JORDAN PANTZER
JENNIFER J. METZGER
Assistant Attorney Generals, of Counsel
350 Main Street, Suite 300A
Buffalo, NY 14202

**PRELIMINARY STATEMENT**

Plaintiff's motion for leave to file a first amended complaint (Dkt. 116) should be denied. Plaintiff's proposed first amended complaint (Dkt. 116-3, "FAC") eliminates Plaintiff's demand for injunctive relief but adds Section 1983 claims for money damages against individual defendants David Starrett ("Starrett") and Judith Horowitz ("Horowitz") without sufficient allegations of personal involvement and makes conclusory allegations of retaliatory retrenchment of the philosophy department. Publicly available information demonstrates that the elimination of the SUNY Fredonia philosophy department, and Plaintiff's retrenchment, was the result of an extended period of low enrollment predating the events at issue in this action, which Plaintiff himself acknowledged. Moreover, Plaintiff was aware of facts giving rise to his retrenchment-related claims for years but unduly delayed in moving to amend. Accordingly, these new allegations in Plaintiff's proposed FAC fail to state a claim, and Plaintiff's motion should therefore be denied.

**FACTUAL BACKGROUND**

On January 30, 2022, Plaintiff appeared on a podcast where he posed a thought experiment: "Imagine that an adult male wants to have sex with a twelve-year-old girl." *See* FAC ¶ 73. Almost immediately thereafter, the post went viral resulting in threats of violence directed toward Plaintiff and the SUNY Fredonia campus community. Chief of University Police at SUNY Fredonia at the time, Brent Isaacson, conducted a threat assessment on February 2, 2022, finding that, in order to preserve the safety of the SUNY Fredonia campus, it was necessary for Plaintiff to remain off campus, of which Plaintiff was advised on February 3, 2022. Subsequently, Plaintiff was given alternative work assignments, while receiving his full salary with benefits.

2

Over a year later, on June 12, 2023, Plaintiff filed his initial complaint seeking damages and injunctive relief. *See* Dkt. Nos. 1, 3. The Court scheduled an evidentiary hearing in the fall of 2023, which was narrowly focused on the safety and security threats directed towards the SUNY Fredonia campus.  Dkt. Nos. 23, 63. The hearing was not completed, and was postponed to April 16, 2026.  Dkt. 98. On April 15, 2026, Plaintiff withdrew his request for preliminary injunctive relief, and the rest of the evidentiary hearing was cancelled.  Dkt. 109. Discovery on the claims pled in the original complaint is currently underway.

Unrelated to this litigation, after years of publicly known financial strain, including facing a significant financial deficit, in or around December 2023, SUNY Fredonia announced that it made a difficult decision to cut thirteen majors from its undergraduate curriculum, including the philosophy major and minor, in a process known as retrenchment.  By Plaintiff's own words, which he wrote in a May 29, 2019 article, "SUNY Fredonia [was] a ship listing in a storm …. The college face[d] problems of enrollment, morale, and finance."[1]  As of August 31, 2026, Plaintiff will be retrenched.  *See* FAC ¶ 123.

Plaintiff now seeks leave to amend his complaint to add Horowitz as an additional defendant and change his claims against Starrett from solely official capacity claims to individual capacity claims, and seeks money damages against both.  Plaintiff also seeks to add claims alleging that the retrenchment of the philosophy department and Plaintiff is retaliatory.  For the reasons that follow, that motion should be denied.

### LEGAL STANDARD – LEAVE TO AMEND

Whether to grant leave to amend a complaint is left to the sound discretion of the Court and should be "freely given when justice so requires," but in making its determination, the Court

---

[1] Plenty of problems facing SUNY Fredonia's future, dated May 29, 2019 by Stephen Kershnar.

must consider the futility of the proposed amendment.  Fed. R. Civ. P. 15(a); *see, e.g.*, *Islamic Society of Fire Dep't Personnel v. City of New York*, 205 F. Supp. 2d 75, 80 (E.D.N.Y. 2002) (denying motion for leave to amend a complaint because the newly proposed claims would "necessarily fail.").  A court has discretion to deny leave to amend based upon "futility, bad faith, undue delay, or undue prejudice to the opposing party." *Boyd v. City of Buffalo*, No. 22-ev-00519-MAV, 2025 U.S. Dist. LEXIS 12242, at \*14 (W.D.N.Y. Jan. 22, 2025) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

The Second Circuit has found that a delay of seventeen months and a delay of two years and nine months constitute undue delay.  *Stephenson v. Dow Chem. Co. (In re Agent Orange Prod. Liab. Litig.)*, 220 F.R.D. 22, 24 (E.D.N.Y. 2004) (citing *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)).  "Following a lengthy postponement in moving to amend a complaint, the movant must offer a satisfactory explanation for the hiatus." *Id*.

"[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  An amendment to a pleading is futile if a proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. *Islamic Society*, 205 F. Supp. 2d 80. "However, Second Circuit courts have also held that, in certain circumstances, it is appropriate to deny leave to amend where the proposed amendment could not withstand a motion for summary judgment." *Id.*[2]

---

[2] *Citing Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (appropriate to deny motion for leave to amend filed in response to summary judgment motion where proposed new claims would not survive summary judgment); *Stoner v. N.Y.C. Ballet Co.*, No. 99 Civ. 0196, 2002 WL 523270, at \*14 n. 10 (S.D.N.Y. Apr.8, 2002) (denying motion for leave to amend seeking to add claim which "might survive a motion to dismiss" because "the claim would ... be subject to dismissal on a motion for summary judgment"); *131 Maine St. Assocs. v. Manko*, 179 F. Supp. 2d 339, 345 n. 5 (S.D.N.Y. 2002) ("leave to amend will be denied if the proposed amended complaint could not survive a summary judgment motion")); *see also Moore North America, Inc. v. The Standard Register Co.*, 1999 WL 33268425, at \*4 (W.D.N.Y. 1999) (denying motion for leave to amend complaint because "such an amendment would be futile in that it would be subject to a successful motion for summary judgment").

Because the amendments Plaintiff proposes are untimely and would be futile, the motion for leave to amend the complaint should be denied.

## ARGUMENT

## POINT I

## PLAINTIFF UNDULY DELAYED IN MOVING TO AMEND.

SUNY Fredonia announced that it was planning to cut thirteen programs, including the philosophy department, in December 2023.[3]  The official end dates of the impacted programs was announced shortly thereafter in March 2024.  Despite learning that the philosophy department would be eliminated in December 2023, Plaintiff waited until July 2026 to move to amend.  This amounts to delay of two years and seven months.  This length of time can qualify as undue delay.  *See Stephenson*, 220 F.R.D. at 24 (collecting cases).

This delay has prejudiced Defendants because discovery has been ongoing for months regarding the claims in Plaintiff's original complaint, which included no claims regarding the retrenchment process.  Defendants have already served answers to interrogatories and responses and objections to requests for productions.  If permitted to amend, Plaintiff will presumably seek to take discovery on the retrenchment related claims, which are entirely different than the First Amendment claims at issue in this case when it was originally filed.  Courts have found prejudice where amendment would "require the opponent to expend significant additional resources to conduct discovery."  *City of N.Y. v. Grp. Health Inc.*, 649 F.3d 151, 158 (2d Cir. 2011) (quoting *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010)).

---

[3] 'Everyone is outraged': SUNY Fredonia to cut 13 programs

5

## POINT II

## PLAINTIFF FAILS TO ALLEGE SUFFICIENT PERSONAL INVOLVEMENT AND CAUSATION BY STARRETT AND HOROWITZ.

If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a Section 1983 action against the individual defendant. *Mule v. Dep't of Edu. of City of New York*, 797 F. Supp. 3d 9, 43 (E.D.N.Y. 2025) (*quoting Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014)). "To show personal involvement, a plaintiff must plead that each Governmental-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (*quoting Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)) (other internal quotations and citations omitted). "Personal involvement may be shown by direction participation, which requires in this context intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Id.* (*quoting Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016)).

Accordingly, to plead an individual capacity claim a plaintiff must establish that each individual defendant actively participated in a constitutional violation. *Peck v. County of Onondaga*, No. 21-cv-651(DNH), 2021 WL 3710546, at *11, at *17 (N.D.N.Y. Aug. 20, 2021) (dismissing First Amendment retaliation claim against a defendant due to lack of allegations concerning personal involvement of the defendant). Deliberate indifference to information suggesting a violation is occurring is not enough. *Id.* (*citing Tangreti*, 983 F.3d at 618 for the proposition that "*Tangreti* demands more" than deliberate indifference).

"A Section 1983 plaintiff must also demonstrate that the defendant's alleged misconduct was both the 'but for' cause and the proximate cause of his injury." *Arnold v. Geary*, 582 F. App'x 42, 43 (2d Cir. 2014); *see Naumovski v. Norris,* 934 F.3d 200, 213 (2d Cir. 2019) ("As the Supreme Court has explained, a 'standard requirement of any tort claim' is that plaintiff show

'that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct.'") (*quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013)).  Because Plaintiff alleges that Defendant Kolison issued the directive barring Plaintiff from campus— calling it "Kolison's decision" (FAC, at ¶ 111)— Plaintiff cannot plausibly allege that Defendants Horowitz and Starrett, who merely sent letters reiterating ongoing safety concerns precluding Plaintiff's return to campus were a but for cause of his removal from campus.  Had those letters not been sent, based on Plaintiff's own allegations, Plaintiff still would have remained barred from campus by Kolison's order.

Notably, Plaintiff's original complaint sues Starrett solely in his official capacity. Plaintiff did not seek money damages from Starett, presumably because Plaintiff did not have sufficient allegations to make such a claim.  Instead, Plaintiff solely sought money damages against Defendant Kolison.  Now Plaintiff proposes in the FAC to add claims for money damages against both Starrett and Horowitz.

The only new allegations in the FAC as to Starrett allege that he sent Plaintiff letters in March 2024 and January 2025 regarding ongoing safety concerns.  FAC, at ¶¶ 218, 221. Notably, Starrett had sent Plaintiff substantially identical letters in 2022 (FAC, at ¶¶ 131-32, 139-140), which facts were alleged in the original complaint, yet Plaintiff sought no money damages from Starrett in his original complaint.

The FAC alleges that Horowitz's involvement began in 2025 when she was appointed "Interim Provost Vice President for Academic Affairs" and in that role "sent Kershnar a letter again removing him from teaching" in July 2025 and again in January 2026.  FAC, at ¶¶ 237, 246.  Plaintiff concedes that "Horowitz was ***delegated*** the powers, duties, and responsibilities assigned to her by President Kolison," and that Horowitz merely "enforced President Kolison's

7

directive barring Kershnar from campus." FAC at ¶ 21 (emphasis added). Indeed, the FAC (and Plaintiff's original complaint) are replete with allegations that Plaintiff was barred from campus on "Kolison's orders" and "directive" FAC, at ¶¶ 6, 19.

But there are no allegations in the FAC that Horowitz, individually, made any decision to bar Kershnar from campus as a result of, or based upon, his speech. By Plaintiff's own admission, she was delegated the task of letter writing, but she was not the decision-maker—she was the mouthpiece. Indeed, Plaintiff pleads that Horowitz and Starrett merely "enforced President Kolison's directive."[4] FAC, at ¶ 21.

These allegations are not sufficient to maintain an action against her in her individual capacity for money damages under Section 1983 as Plaintiff has failed to adequately plead personal involvement or that Horowitz was a but for cause of Plaintiff's injuries.

The same is true with respect to Starrett. Starrett merely held Horowitz's position first. The FAC alleges that he wrote the letters in the 2022-2025 time period. FAC, at ¶¶ 218, 220, 221. But just like with respect to Horowitz, there are no allegations that Starrett was at all personally involved in, or the but for cause of, the decision-making that went into Kershnar's removal from the campus.

The motion for leave to amend the complaint to add Horowitz and Starrett as Section 1983 defendants in their individual capacities (which is encompassed in Plaintiff's First Cause of Action in the FAC) should be denied.

---

[4] For the avoidance of doubt, Defendants do not concede that this was Kolison's decision; rather, Defendants take the allegations in Plaintiff's complaint as true given the current procedural posture of the case.

## POINT III

## THE CLAIM THAT THE RETRENCHMENT WAS RETALIATORY IS MERITLESS.

In the proposed FAC, Plaintiff contends that the elimination of SUNY Fredonia's philosophy department and his resultant retrenchment is about him.  Incredibly, he alleges that his removal from campus *caused* the elimination of SUNY Fredonia's philosophy major as follows: "After SUNY Fredonia shelved its star philosophy professor, student interest in its Philosophy program dwindled. Citing the decline in student interest—caused in part by its own conduct against Kershnar—SUNY Fredonia shuttered the Philosophy department and notified Kershnar his appointment would end on August 31, 2026."  *See* FAC ¶ 13.  But Plaintiff is well aware that SUNY Fredonia has been riddled with declining enrollment and a financial deficit for more than a decade prior to Plaintiff's removal from campus.  The retrenchment underway at SUNY Fredonia has nothing to do with Plaintiff and is not retaliatory.

A plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action.  *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir.  2015) (internal quotations omitted).  Nevertheless, "[b]ecause protected speech could not substantially cause an adverse action if the employer would have taken that action in any event, a defendant can rebut a *prima facie* showing of retaliation by demonstrating by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct."  *Nagle v. Marron*, 663 F.3d 100, 111-12 (2d Cir. 2011) (internal quotations omitted) (*citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977) ("The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct.")).

Plaintiff's retrenchment is wholly divorced from his alleged protected speech and comes as the result of SUNY Fredonia's years-long financial decline, which Plaintiff is and has been

aware of since at least 2019. In his May 29, 2019 opinion piece in the Fredonia Observer[5], Plaintiff acknowledged that declining enrollment was perpetuating the financial difficulty SUNY Fredonia was facing. Plaintiff even proposed that the solution "to right the ship" was to "shrink in size" by having "fewer employees (administrators, faculty and staff)", and to have "fewer programs."

And that is exactly what has come to fruition with the school's ongoing retrenchment process. As Plaintiff aptly identified, SUNY Fredonia has been riddled with declining enrollment and a financial deficit for more than a decade. Plaintiff suggested in his own 2019 opinion piece, faculty and programs were recently eliminated in an effort to remediate the institution's financial decline. Due to low enrollment, having nothing to do with Plaintiff's removal from campus[6], the philosophy major and minor were among the programs cut. The data[7] shows that the number of successful graduates from SUNY Fredonia who earned a Bachelor of Arts in Philosophy was extremely low, ranging from one graduate with a Philosophy degree in 2020 to the most of three graduates in 2023. But it is not the only departmental cut—SUNY Fredonia has also eliminated its art history, French, industrial management, sociology, Spanish, and early childhood majors[8], among several others. As of March 2025, a mere 41 students were enrolled in nine minors to be cut, one of them being the philosophy minor, and 19 of those students were set to graduate in the Spring 2025.[9] The retrenchment process underway at SUNY

---

[5] Plenty of problems facing SUNY Fredonia's future, dated May 29, 2019 by Stephen Kershnar.
[6] According to publicly-available information, the philosophy major had two graduates. SUNY Fredonia Majors & Degrees - Niche
[7] The data was derived from https://nces.ed.gov/ipeds/, which is an official government website. The data set was from the graduation years of 2020 to 2025. This Court may take judicial notice of facts contained on government websites because that information "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *Schwartz v. U.S. Drug Enforcement Admin.*, 692 Fed. Appx. 73, 72 n. 2 (2d Cir. 2017); *citing* Fed. R. Evid. 201.
[8] SUNY Fredonia to cut 13 Majors | wgrz.com
[9] Nine minors to be removed from Fredonia curriculum - The Leader

Fredonia has nothing to do with Plaintiff or his speech, and his allegation that this retrenchment process is about him, or is in any way retaliatory, is baseless, and his motion for leave to file a FAC containing those allegations should be denied.

## CONCLUSION

Because Plaintiff's proposed FAC make no allegations of personal involvement or but for causation in a constitutional violation on the parts of Horowitz and Starrett, and because the allegation that Plaintiff's retrenchment is causally related to Plaintiff's allegedly constitutionally-protected speech is meritless, the Plaintiff's motion for leave to file his proposed FAC should be denied.

DATED:  August 14, 2026                              **LETITIA JAMES**
        Buffalo, New York                   Attorney General of the State of New York
                                              Attorney for Defendants

                                  BY:  *s/ Alyssa Jordan Pantzer*
                                         ALYSSA JORDAN PANTZER
                                         JENNIFER J. METZGER
                                         Assistant Attorneys General of Counsel
                                         Main Place Tower
                                         350 Main Street, Suite 300A
                                         Buffalo, New York 14202
                                         (716) 853-8477
                                         Jennifer.Metzger@ag.ny.gov
                                         Alyssa.Pantzer@ag.ny.gov

11