UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STEPHEN KERSHNAR,

Plaintiff, **Docket No. 23-CV-525**

vs.

STEPHEN H. KOLISON, JR.; et al;

Defendants.

---

The Defendant, STEPHEN H. KOLISON, JR., by his attorney Letitia James, Attorney General of the State of New York, Jennfer J. Metzger and Alyssa J. Pantzer, Assistant Attorneys General, of counsel, responds to Plaintiff's Interrogatories dated April 22, 2026 as follows. The Defendant reserves the right to supplement his responses to these Interrogatories as may be required.

**GENERAL OBJECTIONS AND DEFINITIONS**

Defendant makes the following general objections to plaintiff's Interrogatories as follows:

1. Defendant objects to any and all interrogatories to the extent that they would require the disclosure of information which comes within attorney-client privilege.

2. Defendant objects to any and all interrogatories to the extent that they would require the disclosure of information which comes within the work-product protection, including information obtained as part of the preparation of this case, or in anticipation of defendant asserting, pursuing and/or defending against the claims in this case or any other related case, and including actions taken for the purpose of preparing the answer for defending against the claims in this case or any other related case.

3. Defendant objects to any and all interrogatories to the extent that they would require the disclosure of information which would identify the medical condition or claims, or other personal information relating to him.

4. Defendant objects to any and all interrogatories to the extent that they would require the disclosure of information which is the subject of a non-disclosure agreement and/or a confidentiality agreement with a third-party.

5. Defendant objects to each interrogatory propounded by Plaintiff to the extent that the interrogatory is neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.

6. Defendant objects to each interrogatory propounded by Plaintiff to the extent that the interrogatory is vague, overly broad, harassing, burdensome, vexatious and/or oppressive.

7. Neither the State University of New York at Fredonia ("Fredonia") nor the State University of New York ("SUNY") is a party to this suit, and any suit against Fredonia or SUNY would be barred by the Eleventh Amendment and principles of sovereign immunity. Defendant therefore objects to the Interrogatories to the extent Plaintiff seeks discovery from, or documents in the custody and control of, Fredonia or SUNY.

9. All responses are made to Plaintiff's Interrogatories without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving:

   a. All questions as to competency, relevance, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceeding or the trial of this or any other actions;

   b. The right to object on any ground to the use of any of these answers in any subsequent proceeding or the trial of this action;

c. The right to object on any ground at any time to a demand for further response to these or any other interrogatories or other discovery proceedings involving or relating to the subject matter of the interrogatories herein answered; and

d. The right to supplement and/or amend these responses based upon the recollection of persons presently available or the discovery of additional information.

All responses that may be made to the interrogatories are subject to all of the foregoing objections, and these objections are not waived by furnishing any information in response to Plaintiff's Interrogatories. Moreover, the responding party reserves the right to supplement and/or amend their response at a later date.

**INTERROGATORIES**

**INTERROGATORY NO. 1:** If you contend Kershnar's appearances on any podcast are part of his professional duties, identify every basis for that contention, including by identifying any documents supporting the contention.

**RESPONSE:** When I viewed the podcast, I saw on the bottom of the screen that Professor Kershnar was identified as a SUNY Fredonia professor. To my knowledge, I was not aware that he was acting as a private citizen. To my knowledge, the Academic Freedom section of the United University Professions ("UUP") collective bargaining agreement Section §9.3 provides, "In their role as citizens, employees have the same freedoms as other citizens." "However, in their extramural utterances employees have an obligation to indicate that they are not institutional spokespersons." and guides professors.

**INTERROGATORY NO. 2:** If you contend Kershnar violated any policy, regulation, or law, identify the policy, regulation, or law and state how Kershnar violated it.

**RESPONSE:** Defendant objects to this request to the extent it seeks to impose any obligations beyond those created by the Federal Rules of Civil Procedure and/or the Local Rules of the Western District of New York, or applicable case law. The responses provided to these interrogatories are limited to the personal knowledge of the answering party identified above, information obtained or available to them after a reasonably diligent search, and the answering party's information and belief. Additionally, Defendant objects to this interrogatory because it seeks information from SUNY and other law enforcement agencies, who are not named parties in this action, and the information sought may not be within Defendant's possession, custody, control, or personal knowledge.

Notwithstanding these objections, I have no personal knowledge if Professor Kershnar violated any policy, rule, and/or law.

**INTERROGATORY NO. 3:** Identify all investigations undertaken by SUNY, SUNY Fredonia (including the University Police Department), the New York State University Police, or by any other law enforcement agency to investigate Kershnar or any person making threats (or other hostile communications) concerning Kershnar. In identifying each investigation, state: (a) the name of the agency; (b) the name(s) of any employee, officer, or official involved in the investigation; (c) the name(s) of any employee, officer, or official supervising the investigation; (d) the date the investigation was opened; (e) the date the investigation was closed; and (f) the results or findings of the investigation.

**RESPONSE:** Defendant objects to this request to the extent it seeks to impose any obligations beyond those created by the Federal Rules of Civil Procedure and/or the Local Rules

of the Western District of New York, or applicable case law. The responses provided to these interrogatories are limited to the personal knowledge of the answering party identified above, information obtained or available to them after a reasonably diligent search, and the answering party's information and belief. Additionally, Defendant objects to this interrogatory because it seeks information from SUNY and other law enforcement agencies, who are not named parties in this action, and the information sought may not be within Defendant's possession, custody, control, or personal knowledge.

Notwithstanding these objections, I do not have personal knowledge of any investigations being conducted on behalf of Professor Kershnar. I am aware that his computer was checked for pornography and I am also aware that a student had filed a sexual harassment complaint against him. Any investigations were conducted by others and I was not directly involved.

**INTERROGATORY NO. 4:** Identify all steps or options considered (on or after February 30, 2022) by SUNY Fredonia (including the University Police Department) to allow Kershnar to continue teaching. In identifying each step or option, state: (a) the name of the agency; (b) the name(s) of any employee, officer, or official involved in considering the step or option; (d) the date any decision was made as to that step or option; and (f) all reasons that step or option was not taken.

**RESPONSE:** Defendant objects to this request to the extent it seeks to impose any obligations beyond those created by the Federal Rules of Civil Procedure and/or the Local Rules of the Western District of New York, or applicable case law. The responses provided to these interrogatories are limited to the personal knowledge of the answering party identified above, information obtained or available to them after a reasonably diligent search, and the answering

party's information and belief. Additionally, Defendant objects to this interrogatory because it seeks information from SUNY Fredonia, who is not a named party in this action, and the information sought is not within Defendant's possession, custody, control, or personal knowledge.

Notwithstanding these objections, SUNY Fredonia's Chief of Police made a recommendation to me through a threat assessment recommendation that Professor Kershnar be removed from campus. Under the UUP contract, I was told that an alternate assignment is authorized. I followed the recommendation of the Chief of Police in consultation with legal counsel. The actions taken thereafter were delegated to members of my cabinet that handle such matters.

**INTERROGATORY NO. 5:** Describe in detail your complete decision-making process in the decisions to remove (and to continue to remove) Kershnar from teaching or from contact with the campus community.

**RESPONSE:** Defendant objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work product, and/or any other applicable privilege. Defendant further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, vague, and not proportional to the needs of the case.

Notwithstanding these objections, there was not a singular decision maker and do not have unique knowledge; I relied upon the recommendations of the Chief of Police and subsequent Chief of Police, in consultation with legal counsel, that bringing Professor Kershnar back would pose a serious danger to the campus community that could not be mitigated by our police force. As the police are the experts on threat assessment and safety, I followed their recommendations.

**INTERROGATORY NO. 6:** If you contend Kershnar's speech caused any disruption, describe in detail each disruption to SUNY Fredonia operations that you contend were caused by Kershnar's speech, including: (a) the time and date; (b) the nature of the disruption; (c) the specific SUNY Fredonia personnel affected; (d) the manner in which SUNY Fredonia operations were impeded; (e) the dollar amount in terms of excess payroll costs or expenses associated with the disruption; (f) any impairment in physical access to SUNY Fredonia facilities associated with the disruption; (g) whether any additional security or law enforcement presence was required in response to Kershnar's speech and, if so, the particulars of that response (i.e., the agency involved, number of personnel involved, names of the personnel involved, and length of time the additional security presence was required).

**RESPONSE:** Defendant objects to this request to the extent it seeks to impose any obligations beyond those created by the Federal Rules of Civil Procedure and/or the Local Rules of the Western District of New York, or applicable case law. The responses provided to these interrogatories are limited to the personal knowledge of the answering party identified above, information obtained or available to them after a reasonably diligent search, and the answering party's information and belief. Additionally, Defendant objects to this interrogatory because it seeks information from SUNY Fredonia, who is not a named party in this action, and the information sought is not within Defendant's possession, custody, control, or personal knowledge.

Notwithstanding these objections, I received a written recommendation from the Chief of Police and the recommendation that he made to remove Dr. Kershnar was based on threat assessments that were conducted. I do not have any unique knowledge and was not involved in the investigations. I recall some emails and letters that were sent to campus, which included

threats that were brought to my attention by the Chief of Police. The Chief of Police recommended that I take additional security precautions as to how I came to work, where I parked my vehicle, how late I stayed in my office, and to keep my window blinds down when it was dark to avoid exposing myself to possible danger. I changed my tactics to minimize predictivity. All of these measures were commanded by the Chief of Police. The door to the President's office was changed to be a buzzer entry and it was suggested to put bars on the windows. At night, it was suggested that I sit far away from the desk and close the blinds.

There was disruption to the campus from individuals who thought we were responsible for Dr. Kershnar's statements and that I or the campus should be punished for hiring and paying Dr. Kershnar. There were a lot of emails and phone calls that the campus received that I was told about, including a lot of telephone calls regarding the campus at-large. My leadership team had to help the assistants cope with the number of telephone calls that were coming in. Every day for a period of time, my leadership team was dealing with telephone calls and staff members were crying and trying to deal with it. It was very disruptive.

We, as a leadership team, spent an entire week held up in the conference room trying to calm down the campus, and mitigate the threats that we were receiving. It was a scary time. People continued to share the interactions with me. We had to coach people on how to answer the telephone and how to respond to threats and insults. I shared everything with the police. I did nothing to personally intervene. I was afraid to answer my phone and avoided a little bit. A panic button was fixed under my desk.

I do not have personal knowledge if security was paid overtime during this time. If overtime was paid, I would not normally know. All the extra service comes to the Cabinet for discussion, but I would not be involved with overtime as these duties are delegated to members

of my cabinet and their teams. I relied on the Chief of Police and his officers for any visible or invisible security measures that UPD took. My biggest concern was, and remains, that somebody's child would be caught in a cross-fire and would be a tragedy that could destroy the institution. Safety is a top priority.

**INTERROGATORY NO. 7:** State every basis for SUNY Fredonia's decision to discontinue offering Philosophy courses, the Philosophy minor, the Philosophy major, and the Philosophy department.

**RESPONSE:** Defendant objects to this request to the extent it seeks to impose any obligations beyond those created by the Federal Rules of Civil Procedure and/or the Local Rules of the Western District of New York, or applicable case law. The responses provided to these interrogatories are limited to the personal knowledge of the answering party identified above, information obtained or available to them after a reasonably diligent search, and the answering party's information and belief. Additionally, Defendant objects to this interrogatory because it seeks information from SUNY Fredonia, who is not a named party in this action, and the information sought is not within Defendant's possession, custody, control, or personal knowledge.

Notwithstanding these objections, the decision to eliminate the Philosophy degree program, the minor and department was not a unilateral decision.

When the Philosophy degree program was eliminated, it was done so along with 12 other degree programs. Together these 13 programs enrolled 74 students, a total enrollment number that is not sustainable, especially when an institution is facing a structural financial deficit. This decision, due to our structural deficit, was made through an extensive and lengthy process based

on factors, including, but not limited to, student demand, cost of the programs, future expected growth or decline to determine the viability of programs.

Nineteen minors were also eliminated including the minor in philosophy. Again, this was not done unilaterally and was driven by our structural financial deficit. An extensive and lengthy process based on factors, including, but not limited to, student demand, cost of the programs, future expected growth or decline we used to make the decision. While the elimination of minors does not require senate approval, the cabinet and academic affairs department discussed the standards and agreed upon them. The proposals were presented to faculty for input before final decisions were made. Again, there was nothing unilateral about these decisions.

The Philosophy Department was established for the primary purpose of housing the degree program in philosophy and its minor. With the elimination of the degree and its minor, there is no need to maintain a department. With the elimination of the philosophy degree program, and its minor, it was determined that courses in philosophy were no longer required for students to complete any degree program at the university. Students have access to other courses to meet their general education requirements. It was determined that it is not in the financial interest of the university to offer courses that students do not need or are required to take.

Ultimately, the driving factor for program eliminations, including Philosophy, was the structural deficit of the University and the requirement that the University come up with a financial sustainability plan to close that deficit. Philosophy (and other programs) were not generating enough students and were losing enrollment. The University had to act to keep the University solvent. The costs of programs were exceeding revenue. The decision was a group decision by the Cabinet.

DATED: July 31, 2026

Buffalo, New York

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendant Kolison*

BY: /s/ *Jennifer J. Metzger*
JENNIFER J. METZGER
ALYSSA JORDAN PANTZER
Assistant Attorney Generals of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202
(716) 853-8477
Jennifer.Metzger@ag.ny.gov

**VERIFICATION**

STEPHEN H. KOLISON, JR. declares as follows pursuant to 28 U.S.C. § 1746:

1. I am the President of SUNY Fredonia.

2. I have read Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories, dated April 22, 2026. I verify, based upon my personal knowledge or upon information and belief, that the Responses are true.

3. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 29, 2026

STEPHEN H. KOLISON, JR.